**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION**

BURKE & HERBERT BANK & TRUST COMPANY,

      PLAINTIFF,

vs.                                                                 **CIVIL CASE NO. 26-CV-00032**

BARE ARMS LIMITED LIABILITY COMPANY;
WILLIAM H. BARE; and
CHRISTY N. BARE,

      DEFENDANTS

---

**ORDER APPOINTING RECEIVER AND GRANTING RELATED RELIEF**

---

This matter having come before the Court on the Emergency Motion for Appointment of Receiver and Related Relief (the "<u>Motion</u>")[1] filed by the Plaintiff, Burke & Herbert Bank & Trust Company, successor by merger with Summit Community Bank ("<u>B&H</u>"); and it appearing that there is just cause for the appointment of receiver and the granting of related relief in this proceeding based upon the Motion, related exhibits, other evidence in the record; and therefore,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**

1.     B&H's Motion be, and hereby is, GRANTED.

2.     This Court has jurisdiction over the parties and the Real Property generally described as:

      (a)     2134 5th Street Road, Huntington, West Virginia 25701;

      (b)     3502 Winchester Avenue, Ashland, Kentucky 41101;

      (c)     94 Private Drive 11202, Chesapeake, Ohio 45619;

---

[1] Terms not defined herein shall have the meaning given to them in the Motion.

(d)      516 Oak Street, Wurtland, Kentucky 41144; and

(e)      167 Lulu Street, Ashland, Kentucky 41102,

along with the Collateral including, but not limited to, all personal property of Bare Arms Limited Liability Company and/or wherever it may be found including cash collateral, and the Court finds that it is in the best interests of this proceeding that a Receiver be appointed for the Real Property and Collateral.

3.      Effective as of the date of the entry of this Order and ending upon termination of such appointment by further Order of the Court, Southeast Property Management, LLC and Mark A. Rubin, is hereby appointed the receiver (the "Receiver") of and for the Real Property and Collateral for the purpose of protecting and preserving the Real Property and Collateral, collecting the rents and profits thereof, and, subject to further Order(s) of this Court, if necessary, selling some or all of the Real Property and Collateral.  Receiver shall have all powers reasonably necessary to protect, preserve, manage and operate the Real Property and Collateral and collect the rents and profits thereof, during the pendency of this action, including the following:

(a)      To assume control over the Real Property and Collateral, including all fixtures, equipment, inventory, personal property of any kind, books and records, bank accounts, mail, keys, combinations for locks, passwords or other access to information and enter agreements with a reputable management company (including firms affiliated with Receiver);

(b)      To change any locks or security codes, and, if appropriate, limit access to some or all of the Property;

(c)      To retain, hire or discharge on-site employees (none of whom are, or shall be deemed to be, employees of B&H) and to establish their pay rates;

(d)      To direct Defendants, and officers, agents, employees or other representatives of any of the Defendants, to immediately turn over and deliver or cause to be delivered to the Receiver or his designee possession and/or control all of the Real Property and Collateral (tangible and intangible) wherever located;

2

(e)     To review existing worker's compensation, disability, general liability and "all risks" hazard insurance and to retain, modify, or purchase such insurance, to engage the agent of record, and name the Receivership as additional insureds or loss payees, as the Receiver deems appropriate for the preservation and protection of the Real Property and Collateral;

(f)     To enter an agreement with B&H, if any, to provide for B&H to cover the fees of the Receiver and the Receiver's professionals not otherwise covered by Income (as defined below) generated from the Real Property and Collateral;

(g)     To secure such monies as B&H may be willing to advance for the protection, preservation and/or maintenance of the Real Property and Collateral, including current costs of repairs and general maintenance, security, utilities, insurance and other necessary services, with all such monies advanced by B&H following appointment of the Receiver together with interest, deemed "protective advances" under the loan documents among the parties which shall be repaid in accordance with the terms of the subject agreements;

(h)     To execute agreements, as necessary, with terms which are reasonable and customary for the type of use involved for the benefit of the Real Property and Collateral, and such agreements shall have the same effect as if executed by Defendants;

(i)     To collect and receive all cash, cash in hand, checks, cash equivalents, credit card receipts, demand deposit accounts, bank accounts, cash management or other financial accounts, bank or other deposits and all other cash collateral (all whether now existing or later arising); current and past due earnings, revenues, rent, issues, tax returns, tax credits, profits, income, insurance, cash collateral, general intangibles, including payment intangibles, lease termination or rejection claims, and all other gross income derived with respect to the Real Property and Collateral, regardless of whether earned before or after entry of this Order (collectively, the "Income");

(j)     To employ such counsel, accountants, appraisers, brokers, temporary employees, or other professionals, as may be reasonably necessary on reasonable terms in order to carry out its duties as Receiver and to protect, preserve and/or liquidate the Real Property and Collateral;

(k)     To apply the Income as follows to pay: (1) the Receiver's reasonable fees and expenses (including the reasonable fees and expenses of the Receiver's law firms and other professionals); (2) premiums for adequate property and liability insurance; (3) real estate taxes and assessments; (4) utility bills and garbage and waste removal; (5) expenses for minor, routine and ordinary items of maintenance and repair not involving

3

capital improvements (the parties acknowledge the Receiver may specifically do all minor repairs and maintenance from time to time as may be required so as to avoid loss or damage to the Real Property and Collateral); (6) expenses to continue the day to day maintenance of the Real Property and Collateral, which may include hiring such employees and third party vendors as the Receiver deems necessary and appropriate; and (7) B&H toward the indebtedness underlying its loan(s);

(l)     To market or engage a reputable brokerage company (including firms affiliated with Receiver) to market the Real Property and Collateral for sale and/or lease and, sell the Real Property and Collateral subject to obtaining approval of the Court;

(k)     To apply to this Court for further direction and for such further powers as may be necessary to enable the Receiver to fulfill his duties;

(l)     To open new bank accounts with respect to the Receiver or his designee's management of the Real Property and Collateral, and with respect to any bank account in the name of the Defendants or otherwise maintained by the Defendants to (i) require said bank to convert the account name to such name as requested by the Receiver; (ii) modify the authorized signors on the account to those persons requested by the Receiver, (iii) delete any signors to the account as requested by the Receiver; and (iv) ensure compliance with other similar requests made by the Receiver, including, without limitation, using Defendants' FEINs while naming the account as a receivership account;

(m)     To utilize any and all of the existing sales, use, environmental, or other regulatory operating licenses or permits, or any other licenses or permits relating to the Defendants and/or the Real Property and Collateral;

(n)     To transfer and cause to be filed this Order and any judgment entered in connection with this case to any district in which the Real Property and Collateral may be located to fulfill its duties under this Order;

(o)     To utilize the (1) United States Federal Marshall(s), (2) Boyd County, Kentucky Sheriff(s), (3) Cabell County, West Virginia Sheriff(s), (4) Hager County, Ohio Sheriff(s), (5) Greenup County, Kentucky Sheriff(s), and/or (6) Lawrence County, Ohio Sheriff(s), if necessary, to assist the Receiver in enforcing this Order to protect and preserve the Real Property and Collateral;

(p)     To conduct discovery, provide notice, pursue claims, cooperate, negotiate, and otherwise take all steps necessary to recover or obtain coverage from any entity relating to matters or items that may affect the Receiver's administration of the Real Property and Collateral;

4

(q)     To commence, prosecute and settle such actions at law or in equity that the Receiver deems necessary to fulfill its duties to protect and preserve the Real Property and Collateral;

(r)     To continue, modify, terminate or abrogate any or all agreements, contracts, understandings or commitments entered into by Defendants with respect to the Real Property and Collateral, to the extent permitted by applicable law;

(s)     To compromise, settle, satisfy, or otherwise discharge violations, charges, penalties, or other claims with respect to the Real Property and Collateral or liabilities related thereto; and

(t)     To abandon any portion of the Real Property and Collateral that the Receiver determines is burdensome to preserve or operate, or not of material value, which abandonment shall immediately be effective upon the filing and service of a notice of abandonment in the above-captioned proceeding.

4.     The Receiver shall be entitled to seek and obtain instructions from the Court during the receivership. At any time during the course of this receivership, should the Receiver be uncertain as to its duties, responsibilities, or the appropriateness of any action proposed by the Receiver, the Receiver shall be permitted to request instructions from this Court, which request may be made by motion or by *ex parte* communication as appropriate. Notwithstanding the foregoing, the Court intends its Order with respect to establishing this receivership and appointing this Receiver to be broadly construed to provide the Receiver with the power and authority necessary and appropriate to fulfill its duties as set forth herein and under applicable law.

5.     Each of the Defendants, Bare Arms Limited Liability Company, William H. Bare and Christine N. Bare, and/or any property manager(s), agent(s), executive(s), owner(s), managing member(s) and/or respective employee(s) are ordered to cooperate with the Receiver in the transition of the management of the Real Property and Collateral and turn over all of the following pertaining to the Real Property and Collateral:

5

(a)     a list of all Real Property and Collateral (real and personal) wherever located;

(b)     all keys and other building entry mechanisms and resources;

(c)     all leases including all communication / correspondence files;

(d)     a current rent-roll;

(e)     contact information for all current tenants or occupants, if any;

(f)     all security deposits, security deposit accounts, and an accounting for all security deposits;

(g)     a current aged account receivable / delinquency report;

(h)     an aged listing of all trade payables and other payables;

(i)     documents identifying and summarizing all pending litigation (excluding this action);

(j)     documents pertaining to all pending new or prospective leases, renewals, amendments or modifications;

(k)     all existing and potential service or other third-party contracts;

(l)     all pending bids for contractor work;

(m)     all documents, books, records and computer files, all usernames and passwords needed to access e-mail accounts, bank records and all other records concerning the income, and operation and management of the Property, including bank account numbers and lending institutions where all accounts are located, including permissions needed to add the Receiver as a signatory to bank accounts maintained by the Borrowers;

(n)     a list of utilities and utility accounts;

(o)     an inventory of all equipment, furniture, vehicles and supplies;

(p)     the petty cash fund, if any;

(q)     year-end 2024 and 2025 operating statements and year-to-date 2026 operating statements;

(r)     any site plans, specifications, floor plans, drawings, and measurements;

(s)     all insurance policies and their declaration pages, property tax records, appraisals, deeds any evidence of any encumbrances;

(t)     all tenant and vendor insurance certificates, if any;

(u)     a list of any historical maintenance charges and operating expenses;

(v)     all computer equipment, software, management files, equipment, furniture, supplies, and all passwords needed to access all software and computer files maintained at the on-site management office(s) (and all off-site financial records) including the office located at the Property; and

(w)     such other records pertaining to the Real Property and Collateral as may be reasonably requested by the Receiver.

6.      Defendants, Bare Arms Limited Liability Company, William H. Bare and Christine N. Bare, and any property manager(s), agent(s), and/or respective employee(s) of said Defendants, and/ or the managing member of Bare Arms Limited Liability Company, are prohibited from removing any Real Property or Collateral, or diverting any income from the Real Property or Collateral, and shall fully cooperate with the Receiver in adding the Receiver as an additional insured and loss payee on all insurance relating to the operating and management of the Real Property and Collateral including, but not limited to, fire, extended coverage, auto and van coverage, property damage, liability, fidelity, errors and omissions, and workers compensation, and modifying the agent of record and the policies if deemed appropriate by the Receiver.  Notwithstanding the foregoing, should any third party obligated to make payments to any of the Defendants direct those payments to any of the Defendants rather than the Receiver, those payments shall be deemed to have been made payable to Receiver and shall be immediately turned over to the Receiver's custody and control by any person or party receiving the same.

7.      Defendants, Bare Arms Limited Liability Company, William H. Bare and Christine N. Bare, and any property manager(s), agent(s), and/or respective employee(s) of said Defendants, and/ or the managing member of Bare Arms Limited Liability Company, are all prohibited from canceling, reducing, or modifying any and all insurance coverage in existence

7

with respect to the Real Property or Collateral.  Defendants, Bare Arms Limited Liability Company, William H. Bare and Christine N. Bare, and any property manager(s), agent(s), and/or respective employee(s) of said Defendants, and/ or the managing member of Bare Arms Limited Liability Company,  shall immediately notify the agent of record of the change in management, and grant full permission for the Receiver and its agent(s) to acquire any and all policy information, loss runs and any other insurance information deemed necessary by Receiver to secure, protect, and preserve the Real Property and Collateral.

8. The Receiver shall not be responsible for the preparation and filing of any tax returns for Defendants, Bare Arms Limited Liability Company, William H. Bare and/or Christine N. Bare (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns), other than to provide Defendants, Bare Arms Limited Liability Company, William H. Bare and Christine N. Bear with information in the Receiver's possession that may be necessary for Defendants, Defendants, Bare Arms Limited Liability Company, William H. Bare and Christine N. Bare to prepare and file their own returns.

9. The Receiver is functioning as an "arm of the Court."  No person or entity shall file suit against the Receiver, take other action against the Receiver, or execute or otherwise take any against or in regards to the Real Property or Collateral, without an order of this Court permitting the suit or action provided, however, that no prior court is required to file a motion in the action to enforce the provisions of this Order or any other order of this Court in this action. For purposes of this paragraph, the filing of a voluntary or involuntary bankruptcy petition under Title 11 of the United States Code on behalf of one or more of the Defendants shall be deemed a suit against the Receiver.

10. The Receiver and its employees, agents, and attorneys shall have no personal

8

liability in connection with any liabilities, obligations, liens or amounts owed to or by any of the Defendants, Bare Arms Limited Liability Company, William H. Bare and/or Christine N. Bare because of its duties as Receiver.  Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with applicable law.  The Receiver may defend against any legal action brought against him in his capacity as a Receiver or against or pertaining to the Real Property or Collateral.  All costs and reasonable expenses arising from or in connection with such legal actions or suits shall be the operating expenses of the receivership estate.

11.    The Receiver and its employees, agents and attorneys shall have no personal liability (in particular and without limitation, no liability for environmental claims or claims under the Worker Adjustment and Retraining Notification (WARN) Act), and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts and/or the failure to comply with this Court's orders and any such claims shall be brought exclusively in this Court and only after first obtaining the Court's authority to file such claim.

12.    The Receiver's powers and authority hereunder includes, without limitation, the power and authority to (i) execute documents, instruments and resolutions in connection with a sale or finance transaction involving the Real Property and/or Collateral and (ii) have and obtain access to the Defendants' employee records, reports, communications, and other work product. The Receiver may apply to this court for further direction and for such further powers as may be necessary to enable the Receiver to fulfill his duties as provided for herein and in any subsequent order(s) of this Court.

13.    The Receiver shall recommend to the Court to perform any other such duties

9

when the Receiver reasonably believes that performance thereof is necessary to the objectives of the Receivership.

14.    The Receiver shall stay in place pending further order of this Court.

15.    Subject to prior approval of B&H, the Receiver may (i) engage an investment banker or broker ("Broker") to market some or all of the Real Property and/or Collateral for sale and/or (ii) enter into one or more transactions for the sale of some or all of the Real Property and/or Collateral subject to approval of this Court after notice to the Defendants and other lienholders of record.  In connection with the marketing and sale of the Property and subject to the prior and ongoing consent of B&H:

(a)    The Receiver is authorized and directed to cause all or part of the Real Property and/or Collateral to be listed for sale;

(b)    The Receiver is authorized and directed to assist in marketing all or part of the Real Property and/or Collateral for sale;

(c)    The Receiver shall prepare marketing reports not less than quarterly which shall be provided to B&H and Defendants;

(d)    The Receiver is authorized and directed to negotiate proposed sale terms with a buyer for all or part of the Real Property and/or Collateral;

(e)    If the Receiver reaches an agreement with a buyer of all or part of the Real Property and/or Collateral and B&H consents to the terms and conditions of such sale, the Receiver shall file a motion with the Court for the approval of such sale. For any sale of non-real estate Collateral with a fair market value of less than $100,000.00, the Receiver may sell such property with the consent of, and in concert with, B&H pursuant to Article 9 of the Uniform Commercial Code, as applicable, without the Court's approval and without further notice to Defendants. The Receiver shall be allowed to sell Real Property and/or Collateral through public or private sale(s), upon prior written approval of B&H. Such sale shall be free and clear of all liens, claims and encumbrances against the Real Property and/or Collateral, and such liens, claims and encumbrances shall be transferred by operation of law to the proceeds of such sale in the same validity, priority and extent as existed immediately prior to such sale; and

(f)    Prior to any sale of all or part of the Real Property and/or Collateral, the

10

Receiver shall have obtained the prior consent of B&H and provided notice to the Defendants (other than non-real estate Collateral with a fair market value of less than $100,000.00) as provided for in subsection (e) above) of the terms of such sale and Defendants shall not have filed an objection to the terms of such sale within ten (10) days of receipt of such sale provided that the basis for any objection by the Defendants must be: (i) that such sale is not the exercise of the sound business judgment of the Receiver; and/or (ii) that the property proposed to be sold is not Real Property and/or Collateral.

16.     The Receiver shall maintain and file with the Court on a monthly basis an accurate accounting of all such income collected and expenses incurred.  Copies of such monthly accountings shall be provided simultaneously to the parties.

17.     The Receiver shall not be required to post a bond with the Clerk of this Court and hereupon enter upon his duties

18.     The Receiver shall be compensated for his services, to be adjusted for varying level of employee and work performed, plus expenses, said fees and expenses to be deemed costs of this action.

19.     On or before April 1, 2026, or such later date as may be agreed to by B&H, the Receiver shall meet with B&H to prepare (i) a proposed budget that includes the estimated, reasonable expenses to protect and preserve the Real Property and Collateral through at least July 31, 2026, and (ii) a deadline (the "Deadline") as agreed to by B&H for preparation and presentation of the Receiver's recommendation for the ultimate disposition of all or part of the Real Property and/or Collateral (the "Plan").  On or before the Deadline, the Receiver shall provide the Plan to B&H with a courtesy copy to the Defendants, and shall file the Plan with the Court (which may be tendered with a request for seal, if warranted).  The Receiver may proceed in accordance with the Plan subject to B&H's agreement, provided that the Defendants reserve the right to file an objection to the Plan, in which event the Court will resolve any such objection.

11

20.     Subject to an agreed-upon budget between the Receiver and B&H consistent with the Plan, as the Plan may be amended and/or as may be otherwise ordered by the Court, B&H shall pay the reasonable fees and expenses of the Receiver and its professionals including counsel, if any, in furtherance of the terms and conditions hereof to the extent not otherwise covered by Income or cash flow generated from the Real Property and Collateral.  The Receiver and its professionals, including counsel, if any, shall provide monthly invoices to B&H and Defendants, and nothing herein waives the Receiver's, B&H's, Defendants' or any other parties' right to file pleadings, make arguments, or assert positions with respect to the fees and expenses of the Receiver and its professionals, including counsel.

21.     Unless otherwise expressly provided therein, any entry of a judgment on B&H's Complaint shall not operate as a termination of the Receivership. The Receiver's appointment hereunder shall be terminated upon the filing of a notice of the termination of the receivership by B&H, subject to the right of the Receiver to file an objection to such termination to permit the Receiver to complete any specific matters relating to the administration of the Receivership and to obtain payment of compensation of the Receiver and its professionals as a condition to such termination.  The Receiver shall file its final report within the later of thirty (30) days (i) of the date of filing of such notice, or (ii) if such termination is directed by the Court to occur after the filing of the notice, the date of entry of such Court order.

22.     All parties and third parties, including but not limited to the Defendants and any financial institution, in possession of assets subject to this Order, including all Real Property and Collateral, are hereby ordered to turnover such assets to the Receiver within five (5) business days of receipt of a copy of this Order, whether by mail, email, personal service, or electronic service.

23.     The Defendants, their directors, equity owners, officers, agents, employees or other representatives under this Order are hereby directed to use their diligent efforts to ensure a smooth transition of the Real Property and Collateral to the Receiver, or his designee, and Defendants shall fully cooperate with the Receiver or his designee in consummating such transition and, upon request of the Receiver, shall assist the Receiver and the Receiver's agents in protecting and preserving the Real Property and Collateral.  Defendants, their directors, equity owners, officers, agents, employees or other representatives are hereby enjoined from interfering in any manner with the Receiver or his management of the Real Property and Collateral. This decretal paragraph shall not be construed to prevent the Defendants, their directors, equity owners, officers, agents, employees or other representatives from objecting to or filing pleadings with this Court concerning the performance by the Receiver of its duties identified in this Order or to otherwise seek relief from this Court in connection with these Receivership proceedings.

24.     All persons or entities, including directors, equity owners, creditors, landlords and other persons, and all others acting on behalf of any such limited and general partner, equity owner, creditor or other persons, are enjoined from the following, unless they first obtain an order of this Court permitting the suit or action, provided, however, that no prior court order is required to file a motion in this action to enforce the provisions of this Order or any other order of this Court in this action:

> (a)     commencing, continuing or enforcing any suit or proceeding in law, equity, bankruptcy, or otherwise against or affecting the Receiver, the Defendants, or Real Property or Collateral, excluding any such claim(s) of or by B&H;
>
> (b)     using non-judicial means including self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien

13

upon any portion of the Real Property and/or Collateral, wherever situated and by whomever held;

(c)    Doing any act to interfere with the taking control, possession, or management, by the Receiver, of any portion of the Real Property and/or Collateral or to interfere in any manner with the exclusive jurisdiction of this Court over the Real Property and/or Collateral;

(d)    Engaging in any act to create, perfect, or enforce any lien against all or part of the Real Property and/or Collateral, unless specifically authorized by order of this Court;

(e)    Engaging in any act to collect, assess, or recover a claim against or on behalf of Defendants that arose before the appointment of the Receiver, unless specifically authorized by order of this Court, but excluding any such claim(s) of or by B&H; and

(f)    Exercising a set-off of any debt owing to Defendants that arose before the appointment of the Receiver against any claim against Defendants, but excluding any such claim(s) of or by B&H.

25.    The Clerk of this Court shall mail a copy of this Order Appointing Receiver and Granting Related Relief to the Plaintiff, Defendants and all parties or their counsel of record.

26.    This Order is a final order for the purpose of an appeal

_____
JUDGE, EASTERN DISTRICT OF KENTUCKY

PREPARED AND SUBMITTED BY:

DINSMORE & SHOHL LLP

/s/ Martin B. Tucker
Martin B. Tucker, Esq.
100 West Main Street, Suite 900
Lexington, Kentucky 40507
Tel.:  (859) 425-1000
Fax:  (859) 425-1099
E-mail: martin.tucker@dinsmore.com
*Attorneys for Plaintiff,*
*Burke & Herbert Bank & Trust Company*

14