# <u>EXHIBIT A</u>

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND DIVISION

BURKE & HERBERT BANK & TRUST COMPANY,

     PLAINTIFF,

vs.

                                      **CIVIL CASE NO. 0:26-cv-00032-DLB**

BARE ARMS LIMITED LIABILITY COMPANY;
WILLIAM H. BARE; and
CHRISTY N. BARE,

     DEFENDANTS

---

**AFFIDAVIT BURKE & HERBERT BANK & TRUST COMPANY IN SUPPORT OF MOTION FOR APPOINTMENT OF RECEIVER AND RELATED RELIEF**

---

The Affiant, Paul Devereaux, on behalf of Burke & Herbert Bank & Trust Company, successor to Summit Community Bank and the Plaintiff in the within action, and after being first duly sworn, states as follows:

1.    I am a Vice President, Special Assets, of Plaintiff, Burke & Herbert Bank & Trust Company ("B&H"). Unless otherwise indicated below, I make this affidavit based on my personal knowledge and my review of B&H's business records described in paragraph 2 of this affidavit.

2.    In my capacity as Vice President, Special Assets, I have access to certain of B&H's records, including B&H's records relating to the loans of Bare Arms Limited Liability Company ("Bare Arms") that are the subject matter of this action and identified in the Complaint as Loan 9376, Loan 8003 and Loan 9380 (collectively, the "Loans"). The records for the Loans, including computerized records indicating the sums advanced, and payments made on account of the Loans, are maintained by B&H in the course of its regularly conducted business activities

and were made at or near the time of the occurrence of the events they reflect, by or from information transmitted by a person with knowledge. It is the regular practice of B&H to keep such records in the ordinary course of a regularly conducted business activity. As to B&H's business records that consist of documents created by third parties, B&H relies on the accuracy of such records in conducting its business of servicing and collecting loans.

**Loan Ending 9376**

3. On or about May 5, 2022, Bare Arms executed and delivered to B&H a Commercial Promissory Note in the principal amount of $3,195,000.00 (the "Loan 9376 Note"). A true and exact copy of the Loan 9367 Note is attached hereto as Exhibit A and made a part hereof.

4. On or about May 5, 2022, Bare Arms executed and delivered to B&H a Commercial Real Estate Deed of Trust (the "Huntington Mortgage 1") on real property and associated fixtures located in Cabell County, West Virginia, as more fully described in the Huntington Mortgage 1 (collectively, the "Huntington Property").

5. The Huntington Mortgage 1 was duly signed, acknowledged and delivered to B&H and was lodged of record in the Office of the Cabell County West Virginia Clerk on May 6, 2022, in Trust Deed Book 2886, Page 508. A true and exact copy of the Huntington Mortgage 1 is attached hereto as Exhibit B and made a part hereof.

6. On or about May 5, 2022, Bare Arms executed and delivered to B&H an Assignment of Leases and Rents (the "Huntington ALR") regarding the Huntington Property.

7. The Huntington ALR was duly signed, acknowledged and delivered to B&H and was lodged of record in the Office of the Cabell County West Virginia Clerk on May 6, 2022 in

2

Assignment Book 126, Page 414. A true and exact copy of the Huntington ALR is attached hereto as Exhibit C and made a part hereof.

8. On or about May 5, 2022, Bare Arms further executed and delivered to B&H a Commercial Real Estate Mortgage (the "Ashland Mortgage 1") on real property and associated fixtures located in Boyd County, Kentucky, as more fully described in the Ashland Mortgage 1 (collectively, the "Ashland Property").

9. The Ashland Mortgage 1 was duly signed, acknowledged and delivered to B&H and was lodged of record in the Office of the Boyd County Kentucky Clerk on May 6, 2022, in Mortgage Book 1506, Page 791. A true and exact copy of the Ashland Mortgage 1 is attached hereto as Exhibit D and made a part hereof.

10. On or about May 5, 2022, Bare Arms executed and delivered to B&H an Assignment of Leases and Rents (the "Ashland ALR 1") regarding the Ashland Property.

11. The Ashland ALR 1 was duly signed, acknowledged and delivered to B&H and was lodged of record in the Office of the Boyd County Kentucky Clerk on May 6, 2022, in Mortgage Book 1507, Page 1. A true and exact copy of the Ashland ALR 1 is attached hereto as Exhibit E and made a part hereof.

12. On or about May 5, 2022, Defendant, William Bare, executed and delivered to B&H a Commercial Open-End Mortgage (the "Chesapeake Mortgage 1") on real property and associated fixtures located in Lawrence County, Ohio, as more fully described in the Chesapeake Mortgage 1 (collectively, the "Chesapeake Property").

13. The Chesapeake Mortgage 1 was duly signed, acknowledged and delivered to B&H and was lodged of record in the Office of the Lawrence County Ohio Clerk on May 6,

3

2022, as File # 2022-00002884. A true and exact copy of the Chesapeake Mortgage 1 is attached hereto as Exhibit F and made a part hereof.

14. On or about May 5, 2022, Bare Arms executed and delivered to B&H an Assignment of Leases and Rents (the "Chesapeake ALR") regarding the Chesapeake Property.

15. The Chesapeake ALR was duly signed, acknowledged and delivered to B&H and was lodged of record in the Office of the Lawrence County Ohio Clerk on May 6, 2022, as File # 2022-00002885. A true and exact copy of the Chesapeake ALR is attached hereto as Exhibit G and made a part hereof.

16. On or about May 5, 2022, Defendant, William Bare, executed and delivered to B&H a Guaranty of Specific Transaction ("Loan 9376 Guaranty 1"). A true and exact copy of the Loan 9376 Guaranty 1 is attached hereto as Exhibit H and made a part hereof.

17. On or about May 5, 2022, Defendant, Christy Bare, executed and delivered to B&H a Guaranty of Specific Transaction ("Loan 9376 Guaranty 2"). A true and exact copy of the Loan 9376 Guaranty 2 is attached hereto as Exhibit I and made a part hereof.

18. The Loan 9376 Note is in payment or non-payment default due to, among other things, (i) the fact that Bare Arms has failed and/or refused to pay all amounts required by the terms of the Loan 9376 Note and the Loan 9376 Note is currently due for April 5, 2025, and/or (ii) the filing by Bare Arms of a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code which has since been dismissed with prejudice to refiling for a period of one (1) year, and B&H has declared and does hereby declare, that the entire balance of principal and interest is presently due and owing.

19. As of January 9, 2026, Defendant Bare Arms is indebted to B&H on the Loan 9376 Note in the total amount of $2,120,388.14, which is comprised of principal in the amount

4

of $2,038,009.50, interest in the amount of $65,995.19, and late fees in the amount of $16,383.35, plus accrued and accruing attorneys' fees and expenses.

**Loan Ending 8003**

20. On or about December 23, 2024, Defendant, Bare Arms, executed and delivered to B&H a Promissory Note in the principal amount of $492,799.97 (the "Loan 8003 Note"). A true and exact copy of the Loan 8003 Note is attached hereto as Exhibit J and made a part hereof.

21. On or about December 23, 2024, Bare Arms executed and delivered to B&H a Mortgage (the "Wurtland Mortgage") on real property and associated fixtures located in Greenup County, Kentucky, as more fully described in the Wurtland Mortgage (collectively, the "Wurtland Property").

22. The Wurtland Mortgage was duly signed, acknowledged and delivered to B&H and was lodged of record in the Office of the Greenup County Kentucky Clerk on April 24, 2025 in Book M1085, Page 58. A true and exact copy of the Wurtland Mortgage is attached hereto as Exhibit K and made a part hereof.

23. On or about December 23, 2024, Defendant, Bare Arms, further executed and delivered to B&H a Deed of Trust (the "Huntington Mortgage 2") regarding the Huntington Property.

24. The Huntington Mortgage 2 was duly signed, acknowledged and delivered to B&H and was lodged of record in the Office of the Cabell County West Virginia Clerk on April 25, 2025 in Book 2993, Page 207. A true and exact copy of the Huntington Mortgage 2 is attached hereto as Exhibit L and made a part hereof.

25. On or about December 23, 2024, Bare Arms further executed and delivered to B&H a Mortgage (the "Ashland Mortgage 2") regarding the Ashland Property.

5

26.     The Ashland Mortgage 2 was duly signed, acknowledged and delivered to B&H and was lodged of record in the Office of the Boyd County Kentucky Clerk on April 25, 2025, in Mortgage Book 1585, Page 255.  A true and exact copy of the Ashland Mortgage 2 is attached hereto as Exhibit M and made a part hereof.

27.     On or about December 23, 2024, Bare Arms executed and delivered to B&H an Assignment of Rents (the "Ashland ALR 2") regarding the Ashland Property.

28.     The Ashland ALR 2 was duly signed, acknowledged and delivered to B&H and was lodged of record in the Office of the Boyd County Kentucky Clerk on April 25, 2025, in Mortgage Book 1585, Page 275.  A true and exact copy of the Ashland ALR 2 is attached hereto as Exhibit N and made a part hereof.

29.     On or about December 23, 2024, Defendant, William Bare, executed and delivered to B&H a Mortgage (the "Chesapeake Mortgage 2") regarding the Chesapeake Property.

30.     The Chesapeake Mortgage 2 was duly signed, acknowledged and delivered to B&H and was lodged of record in the Office of the Lawrence County Ohio Clerk on April 23, 2025, as File # 2025-00001943.  A true and exact copy of the Chesapeake Mortgage 2 is attached hereto as Exhibit O and made a part hereof.

31.     On or about December 23, 2024, Defendant, Bare Arms, executed and delivered to B&H a Commercial Security Agreement (the "Security Agreement"), whereby it granted to B&H a security interest in substantially all of its assets as more fully described therein (collectively, the "Collateral"). A true and exact copy of the Security Agreement is attached hereto as Exhibit P and made a part hereof.

6

32.     On April 22, 2025, a UCC Financing Statement was filed in the Office of the Kentucky Secretary of State.  A filed copy of said Financing Statement is attached hereto as Exhibit Q and made a part hereof.

33.     Upon information and belief, the Collateral is in the possession, custody or control of the Defendants, Bare Arms, William Bare, and/or Christy Bare.

34.     On or about December 23, 2024, Defendant, William Bare, executed and delivered to B&H a Commercial Guaranty ("Loan 8003 Guaranty 1").  A true and exact copy of the Loan 8003 Guaranty 1 is attached hereto as Exhibit R and made a part hereof.

35.     On or about December 23, 2024, Defendant, Christy Bare, executed and delivered to B&H a Commercial Guaranty ("Loan 8003 Guaranty 2").  A true and exact copy of the Loan 8003 Guaranty 2 is attached hereto as Exhibit S and made a part hereof.

36.     The Loan 8003 Note is in payment or non-payment default due to, among other things, (i) the fact that Bare Arms has failed and/or refused to pay all amounts required by the terms of the Loan 8003 Note and the Loan 8003 Note is currently due for May 26, 2025, and/or (ii) the filing by Bare Arms of a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code which has since been dismissed with prejudice to refiling for a period of one (1) year, and B&H has declared and does hereby declare, that the entire balance of principal and interest is presently due and owing.

37.     As of January 9, 2026, Defendant Bare Arms is indebted to B&H on the Loan 8003 Note in the total amount of $539,539.38, which is comprised of principal in the amount of $501,466.12, interest in the amount of $33,801.58, and late fees in the amount of $4,271.68, plus accrued and accruing attorneys' fees and expenses.

7

**Loan Ending 9380**

38.    On or about February 8, 2023, Defendant, Bare Arms, executed and delivered to B&H a Business Loan Agreement (the "Loan 9380 Loan Agreement"). A true and exact copy of the Loan 9380 Loan Agreement is attached hereto as Exhibit T and made a part hereof.

39.    On or about February 8, 2023, Defendant, Bare Arms, executed and delivered to B&H a Commercial Promissory Note in the principal amount of $86,700.00 (the "Loan 9380 Note"). A true and exact copy of the Loan 9380 Note is attached hereto as Exhibit U and made a part hereof.

40.    On or about February 8, 2023, Defendants, William Bare and Christy Bare, executed and delivered to B&H a Commercial Real Estate Mortgage (the "Lulu Mortgage") on real property and associated fixtures located in Boyd County, Kentucky, as more fully described in the Lulu Mortgage (collectively, the "Lulu Property").

41.    The Lulu Mortgage was duly signed, acknowledged and delivered to B&H and was lodged of record in the Office of the Boyd County Kentucky Clerk on February 9, 2023 in Book 1528, Page 679. A true and exact copy of the Lulu Mortgage is attached hereto as Exhibit V and made a part hereof.

42.    On or about February 8, 2023, Defendants, William Bare and Christy Bare, executed and delivered to B&H an Assignment of Leases and Rents (the "Lulu ALR") regarding the Lulu Property.

43.    The Lulu ALR was duly signed, acknowledged and delivered to B&H and was lodged of record in the Office of the Boyd County Kentucky Clerk on February 9, 2023, in Mortgage Book 1528, Page 688. A true and exact copy of the Lulu ALR is attached hereto as Exhibit W and made a part hereof.

8

44.     On or about February 8, 2023, Defendant, William Bare, executed and delivered to B&H a Guaranty of Specific Transaction ("Loan 9380 Guaranty 1"). A true and exact copy of the Loan 9380 Guaranty 1 is attached hereto as Exhibit X and made a part hereof.

45.     On or about February 8, 2023, Defendant, Christy Bare, executed and delivered to B&H a Guaranty of Specific Transaction ("Loan 9380 Guaranty 2"). A true and exact copy of the Loan 9380 Guaranty 2 is attached hereto as Exhibit Y and made a part hereof.

46.     The Loan 9380 Note is in payment or non-payment default due to, among other things, (i) the fact that Bare Arms has failed and/or refused to pay all amounts required by the terms of the Loan 9380 Note and the Loan 9380 Note is currently due for July 6, 2025, and/or (ii) the filing by Bare Arms of a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code which has since been dismissed with prejudice to refiling for a period of one (1) year, and B&H has declared and does hereby declare, that the entire balance of principal and interest is presently due and owing.

47.     As of January 9, 2026, Defendant Bare Arms is indebted to B&H on the Loan 9380 Note in the total amount of $88,587.95, which is comprised of principal in the amount of $84,630.18, interest in the amount of $3,711.65, and late fees in the amount of $246.12, plus accrued and accruing attorneys' fees and expenses.

48.     The value of the subject properties, the proceeds, rents and cash collateral generated therefrom and/or the going concern value thereof are decreasing and are in danger of further decreasing unless a receiver is appointed and the Huntington Property, Chesapeake Property, Wurtland Property and Lulu Property (collectively, the "Properties") and all associated collateral and cash collateral, while the same are maintained and expenses are paid and all excess proceeds, rents and cash collateral are preserved.

9

49.     I believe that a receiver on an emergency basis under these circumstances is necessary and/or appropriate to protect and preserve the Properties and B&H's interests therein. The Loans have been and continue to be in default and, it is clear that the Properties including the proceeds, rents and cash collateral generated therefrom continue to be used by the Defendants and diminish in value without any reporting or transparency to B&H and without adequate payment or security therefor.

50.     In the interest of protecting the Properties, the proceeds, rents and cash collateral generated therefrom and whatever going concern value of the business that may exist, B&H recommends Mark Rubin with Southeast Property Management as the receiver in this action given his/its expert qualifications and familiarity with acting as receiver and/or broker for similar commercial real estate properties.

*[SPACE INTENTIONALLY BLANK; SIGNATURES ON FOLLOWING PAGE(S)]*

10

Further, the Affiant sayeth naught.

By:      Paul Devereaux
Title:    Vice President, Special Assets

STATE OF MARYLAND            )

COUNTY OF __Montgomery__     )
                             )
                             )

*Paul Devereaux*

On this __ day of January, 2026, before me, the undersigned officer personally appeared Paul Devereaux on behalf of Burke & Herbert Bank & Trust Company and that he as such Vice President, Special Assets, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as Vice President, Special Assets.

In witness thereof I hereunto set my hand and official seal.

(Seal)

Signature of Notary Public
Notary Public
My Commission expires: __07/25/2027__

DIMUTHU D SENARATHNA
NOTARY PUBLIC
MONTGOMERY COUNTY
MARYLAND
MY COMMISSION EXPIRES JULY 25, 2027

#66189002v6

11

**EXHIBIT A**



## COMMERCIAL PROMISSORY NOTE



310 North Main Street Moorefield, WV 26836
Phone number (877) 376-9722

| LOAN NUMBER | NOTE DATE | PRINCIPAL AMOUNT | MATURITY DATE |
|---|---|---|---|
| █9376 | May 5, 2022 | $3,195,000.00 | May 5, 2042 |

LOAN PURPOSE: Refinance real estate secured debt

**BORROWER INFORMATION**
BARE ARMS LIMITED LIABILITY COMPANY
3502 WINCHESTER AVENUE
ASHLAND, KY 41101

NOTE. This Commercial Promissory Note will be referred to in this document as the "Note."

LENDER. "Lender" means SUMMIT COMMUNITY BANK, INC whose address is 1000 ASHLAND DRIVE, SUITE 501, Ashland, Kentucky 41101, its successors and assigns.

BORROWER. "Borrower" means each person or legal entity who signs this Note.

PROMISE TO PAY. For value received, receipt of which is hereby acknowledged, on or before the Maturity Date, the Borrower promises to pay the principal amount of Three Million One Hundred Ninety-five Thousand and 00/100 Dollars ($3,195,000.00) and all interest on the outstanding principal balance and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.

PAYMENT SCHEDULE. This Note will be paid according to the following schedule: 240 consecutive payments of principal and interest beginning on June 5, 2022 and continuing on the same day of each month thereafter. The initial payment will be in the amount of $20,770.41. This amount may change on June 5, 2025 and every 3 YEARS thereafter. The unpaid principal balance of this Note, together with all accrued interest and charges owing in connection therewith, shall be due and payable on the Maturity Date. All payments received by the Lender from the Borrower for application to this Note may be applied to the Borrower's obligations under this Note in such order as determined by the Lender.

INTEREST RATE AND SCHEDULED PAYMENT CHANGES. Interest will begin to accrue on May 5, 2022. The initial variable interest rate on this Note will be 4.750% per annum. This interest rate may change on May 5, 2025, and every 3 YEARS thereafter. Each date on which the interest rate may change is called the "Change Date." Prior to each Change Date, Lender will calculate the new interest rate based on 3-year Federal Home Loan Bank of Boston Classic Advance Rate in effect on the Change Date (the "Index") plus 3.250 percentage points (the "Margin"). The interest rate will never be less than 4.750%.

If the Index is not available at the time of the Change Date, Lender will choose a new Index which is based on comparable information. The Index is used solely to establish a base from which the actual rate of interest payable under the Note will be calculated, and is not a reference to any actual rate of interest charged by any lender to any particular borrower.

Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law. An increase in the interest rate will result in a higher payment amount. Interest on this Note is calculated on an Actual/360 day basis. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

LATE PAYMENT CHARGE. If any required payment is more than 10 days late, then at Lender's option, Lender will assess a late payment charge of 5.000% of the amount of the regularly scheduled payment then past due, subject to a maximum charge of $1,000.00 and a minimum charge of $30.00.

PREPAYMENT PENALTY. This Note may be prepaid, in full or in part, at any time without penalty.

SECURITY TO NOTE. Security (the "Collateral") for this Note is granted pursuant to the following security document(s).

- Assignment of Leases and Rents dated May 5, 2022 evidencing an assignment of leases and rents on the property located at 1624 Carter Ave, Ashland KY 41101.
- Assignment of Leases and Rents dated May 5, 2022 evidencing an assignment of leases and rents on the property located at 2134 5th St, Huntington WV 25701.
- Assignment of Leases and Rents dated May 5, 2022 evidencing an assignment of leases and rents on the property located at 3502 Winchester Ave, Ashland KY 41101.
- Assignment of Leases and Rents dated May 5, 2022 evidencing an assignment of leases and rents on the property located at 94 PRIVATE DRIVE 11202, Chesapeake OH 45619.
- Assignment of Leases and Rents dated May 5, 2022 evidencing an assignment of leases and rents on the property located at 739 Carter Ave, Ashland KY 41101.

CSi

- Security Instrument (Mortgage/Deed of Trust/Security Deed) in the amount of $3,195,000.00, dated May 5, 2022 evidencing a lien on the property located at 1624 Carter Ave, Ashland KY 41101.
- Security Instrument (Mortgage/Deed of Trust/Security Deed) in the amount of $3,195,000.00, dated May 5, 2022 evidencing a lien on the property located at 2134 5th St, Huntington WV 25701.
- Security Instrument (Mortgage/Deed of Trust/Security Deed) in the amount of $3,195,000.00, dated May 5, 2022 evidencing a lien on the property located at 3502 Winchester Ave, Ashland KY 41101.
- Security Instrument (Mortgage/Deed of Trust/Security Deed) in the amount of $3,195,000.00, dated May 5, 2022 evidencing a lien on the property located at 94 PRIVATE DRIVE 11202, Chesapeake OH 45619.
- Security Instrument (Mortgage/Deed of Trust/Security Deed) in the amount of $3,195,000.00, dated May 5, 2022 evidencing a lien on the property located at 739 Carter Ave, Ashland KY 41101.

**GUARANTY.** In support of this transaction, a Guaranty dated May 5, 2022 has been executed by WILLIAM H BARE; a Guaranty dated May 5, 2022 has been executed by CHRISTY N BARE; a Guaranty dated May 5, 2022 has been executed by BARE PROPERTIES KY LLC; and a Guaranty dated May 5, 2022 has been executed by BOMBSHELLS AND ALES LLC.

**RIGHT OF SET-OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set-off any amount due and payable under this Note, whether matured or unmatured, against any amount owing by Lender to Borrower including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of set-off may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower or such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set-off has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or of notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant. Lender will not be liable for the dishonor of any check when the dishonor occurs because Lender set-off a debt against Borrower's account. Borrower agrees to hold Lender harmless from any claim arising as a result of Lender exercising Lender's right to set-off.

**DISHONORED ITEM FEE.** If Borrower makes a payment on the loan with a check or preauthorized charge which is later dishonored, a fee in the amount of $32.00 will be charged.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments, and any other documents or agreements executed in connection with the indebtedness evidenced hereby this Note whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Note by reference thereto, with the same force and effect as if fully set forth herein.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Lender's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Note immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Note or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by Borrower under the terms of this Note or any other Related Documents; (c) any default by Borrower under the terms of any other agreement between Lender and Borrower; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Related Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any Related Documents terminates, attempts to terminate or defaults under any such Related Documents; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower. Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest, and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** If permitted by law, each Borrower executing this Note is jointly and severally bound.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Note is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Note without invalidating the remainder of either the affected provision or this Note.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Note shall be binding on all heirs, executors, administrators, assigns, and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Note or any of its rights and powers under this Note without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Note or any benefit accruing to it hereunder without the express written consent of the Lender.

**CSi**

**DUTY TO NOTIFY.** Borrower agrees to notify Lender if there is any change in the beneficial ownership information provided to Lender. Additionally, Borrower agrees to provide Lender with updated beneficial ownership information in the event there is any change in the beneficial ownership information provided to Lender.

**ORAL AGREEMENTS DISCLAIMER.** This Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**GOVERNING LAW.** This Note is governed by the laws of the state of Kentucky except to the extent that federal law controls.

**HEADING AND GENDER.** The headings preceding text in this Note are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Note shall be construed to be of such gender or number as the circumstances require.

**ATTORNEYS' FEES AND OTHER COSTS.** Borrower agrees to pay all of Lender's costs and expenses in connection with the enforcement of this Note including, without limitation, reasonable attorneys' fees, to the extent permitted by law.

**ADDITIONAL PROVISIONS.**

**AUTOMATIC PAYMENT.** If your account is paid by automatic payment the following will apply. You understand that should regular scheduled debit or transfer date fall on a non-processing date (weekend or federal holiday), the debit or transfer will be made on the first processing day after the scheduled debit or transfer date. I understand that for an adjustable rate mortgage loan, the payment will adjust when the rate changes and that I will be notified of the rate change 30 days in advance. I understand that for a loan that includes escrow that my payment will change as my insurances and taxes increase or decrease. I will be notified of the change 15 days in advance.

**DIFFERENCE BETWEEN ANY COMMITMENT LETTER AND NOTE** For commercial loans, shall there be any conflict in the terms and conditions of the term sheet (if any) and the terms and conditions of this note and related documents, then the terms and conditions of this note and related documents shall prevail.

**DELINQUENT REAL ESTATE TAXES FOR COMMERCIAL LOANS ONLY** If the bank has to pay real estate taxes at any point in time to protect its collateral position, Borrower acknowledges and accepts that the Bank shall charge an administrative fee of $500 per tax ticket and add that charge to the balance of the loan. This only applies to Commercial Real Estate loans.

**WAIVER OF JURY TRIAL.** All parties to this Note hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Note or any other instrument, document or agreement executed or delivered in connection with this Note or the Related Documents.

By signing this Note, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt hereof.

BARE ARMS LIMITED LIABILITY COMPANY

By: WILLIAM H BARE    5/5/22
Its: Managing Member    Date

By: CHRISTYN BARE    5/5/22
Its: Member    Date

© 2004-2020 Compliance Systems, Inc. bc30625c-93a4fc9a - 2019.202.1.3
Commercial Promissory Note - DL4006    Page 3 of 3    www.compliancesystems.com

CSi

## EXHIBIT B

Cabell County
Phyllis Smith, Clerk
Instrument 6132967
05/06/2022 @ 02:21:32 PM
TRUST DEED
Book 2886 @ Page 508
Pages Recorded 7
Recording Cost $     29.00

(Space Above This Line For Recording Data)

## COMMERCIAL REAL ESTATE DEED OF TRUST

This COMMERCIAL REAL ESTATE DEED OF TRUST ("Security Instrument") is made on May 5, 2022 by the grantor(s) BARE ARMS LIMITED LIABILITY COMPANY, a Kentucky Limited Liability Company, whose address is 3502 WINCHESTER AVENUE, ASHLAND, Kentucky 41101 ("Grantor"). The trustee is MARK H WRIGHT &/OR BRAD RITCHIE, whose address is 310 NORTH MAIN ST, MOOREFIELD, WV 26836 ("Trustee"). The beneficiary is SUMMIT COMMUNITY BANK, INC whose address is 1000 ASHLAND DRIVE, SUITE 501, Ashland, Kentucky 41101 ("Lender"), which is organized and existing under the laws of the State of West Virginia. Grantor owes Lender the principal sum of Three Million One Hundred Ninety-five Thousand and 00/100 Dollars (U.S. $3,195,000.00), which is evidenced by the promissory note dated May 5, 2022. Grantor in consideration of this loan and any future loans extended by Lender up to a maximum principal amount of Three Million One Hundred Ninety-five Thousand and 00/100 Dollars (U.S. $3,195,000.00) ("Maximum Principal Indebtedness"), and for other valuable consideration, the receipt of which is acknowledged, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the County of Cabell, State of West Virginia:

Address: 2134 5th St, Huntington, West Virginia 25701
Legal Description: See attached Exhibit A for further description

Together with all easements, appurtenances abutting streets and alleys, improvements, buildings, fixtures, tenements, hereditaments, equipment, rents, income, profits and royalties, personal goods of whatever description and all other rights and privileges including all minerals, oil, gas, water (whether groundwater, subterranean or otherwise), water rights (whether riparian, appropriate or otherwise, and whether or not appurtenant to the above-described real property), wells, well permits, ditches, ditch rights, reservoirs, reservoir rights, reservoir sites, storage rights, dams and water stock that may now, or at any time in the future, be located on and/or used in connection with the above-described real property, payment awards, amounts received from eminent domain, amounts received from any and all insurance payments, and timber which may now or later be located, situated, or affixed on and used in connection therewith (hereinafter called the "Property").

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, prior mortgages, prior deeds of trust, prior deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with this Indebtedness and Security Instrument, whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Security Instrument by reference thereto, with the same force and effect as if fully set forth herein.

**INDEBTEDNESS.** This Security Instrument secures the principal amount shown above as may be evidenced by a promissory note or notes of even, prior or subsequent date hereto, including future advances and every other indebtedness of any and every kind now or hereafter owing from BARE ARMS LIMITED LIABILITY COMPANY to SUMMIT COMMUNITY BANK, INC, howsoever created or arising, whether primary, secondary

© 2004-2022 Compliance Systems, Inc. 4317c3ae-81386092 - 2019302.1.5
Commercial Real Estate Security Instrument - DL4007                    Page 1 of 6                    www.compliancesystems.com

ARLIE
VANANTWERP ATTORNEYS
PO BOX 1111
ASHLAND KY 41105-1111

or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the agreements and covenants of this Security Instrument and all Related Documents (hereinafter all referred to as the "Indebtedness").

**FUTURE ADVANCES.** To the extent permitted by law, this Security Instrument will secure future advances as if such advances were made on the date of this Security Instrument regardless of the fact that from time to time there may be no balance due under the note. All future advances made pursuant to the Note are intended to be obligatory in nature.

**WARRANTIES.** Grantor, for itself, its heirs, personal representatives, successors, and assigns, represents, warrants, covenants and agrees with Lender, its successors and assigns, as follows:

Performance of Obligations. Grantor promises to perform all terms, conditions, and covenants of this Security Instrument and Related Documents in accordance with the terms contained therein.

Defense and Title to Property. At the time of execution and delivery of this instrument, Grantor is lawfully seised of the estate hereby conveyed and has the exclusive right to mortgage, grant, convey and assign the Property. Grantor covenants that the Property is unencumbered and free of all liens, except for encumbrances of record acceptable to Lender. Further, Grantor covenants that Grantor will warrant and defend generally the title to the Property against any and all claims and demands whatsoever, subject to the easements, restrictions, or other encumbrances of record acceptable to Lender, as may be listed in the schedule of exceptions to coverage in any abstract of title or title insurance policy insuring Lender's interest in the Property.

Condition of Property. Grantor promises at all times to preserve and to maintain the Property and every part thereof in good repair, working order, and condition and will from time to time, make all needful and proper repairs so that the value of the Property shall not in any way be impaired.

Removal of any Part of the Property. Grantor promises not to remove any part of the Property from its present location, except for replacement, maintenance and relocation in the ordinary course of business.

Alterations to the Property. Grantor promises to abstain from the commission of any waste on or in connection with the Property. Further, Grantor shall make no material alterations, additions, or improvements of any type whatsoever to the Property, regardless of whether such alterations, additions, or improvements would increase the value of the Property, nor permit anyone to do so except for tenant improvements and completion of items pursuant to approved plans and specifications, without Lender's prior written consent, which consent may be withheld by Lender in its sole discretion. Grantor will comply with all laws and regulations of all public authorities having jurisdiction over the Property including, without limitation, those relating to the use, occupancy and maintenance thereof and shall upon request promptly submit to Lender evidence of such compliance.

Due on Sale - Lender's Consent. Grantor shall not sell, further encumber or otherwise dispose of, except as herein provided, any or all of its interest in any part of or all of the Property without first obtaining the written consent of Lender. If any encumbrance, lien, transfer or sale or agreement for these is created, Lender may declare immediately due and payable, the entire balance of the Indebtedness.

Insurance. Grantor promises to keep the Property insured against such risks and in such form as may within the sole discretion of Lender be acceptable, causing Lender to be named as loss payee or if requested by Lender, as mortgagee. The insurance company shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. All insurance policies must provide that Lender will get a minimum of 10 days notice prior to cancellation. At Lender's discretion, Grantor may be required to produce receipts of paid premiums and renewal policies. If Grantor fails to obtain the required coverage, Lender may do so at Grantor's expense. Grantor hereby directs each and every insurer of the Property to make payment of loss to Lender with the proceeds to be applied, only at Lender's option, to the repair and replacement of the damage or loss or to be applied to the Indebtedness with the surplus, if any, to be paid by Lender to Grantor.

**Payment of Taxes and Other Applicable Charges.** Grantor promises to pay and to discharge liens, encumbrances, taxes, assessments, lease payments and any other charges relating to the Property when levied or assessed against Grantor or the Property.

**Environmental Laws and Hazardous or Toxic Materials.** Grantor and every tenant have been, are presently and shall continue to be in strict compliance with any applicable local, state and federal environmental laws and regulations. Further, neither Grantor nor any tenant shall manufacture, store, handle, discharge or dispose of hazardous or toxic materials as may be defined by any state or federal law on the Property, except to the extent the existence of such materials has been presently disclosed in writing to Lender. Grantor will immediately notify Lender in writing of any assertion or claim made by any party as to the possible violation of applicable state and federal environmental laws including the location of any hazardous or toxic materials on or about the Property. Grantor indemnifies and holds Lender harmless from, without limitation, any liability or expense of whatsoever nature incurred directly or indirectly out of or in connection with: (a) any environmental laws affecting all or any part of the Property or Grantor; (b) the past, present or future existence of any hazardous materials in, on, under, about, or emanating from or passing through the Property or any part thereof or any property adjacent thereto; (c) any past, present or future hazardous activity at or in connection with the Property or any part thereof; and (d) the noncompliance by Grantor or Grantor's failure to comply fully and timely with environmental laws.

**Financial Information.** Grantor agrees to supply Lender such financial and other information concerning its affairs and the status of any of its assets as Lender, from time to time, may reasonably request. Grantor further agrees to permit Lender to verify accounts as well as to inspect, copy and to examine the books, records, and files of Grantor.

**Lender's Right to Enter.** Lender or Lender's agents shall have the right and access to inspect the Property at all reasonable times in order to attend to Lender's interests and ensure compliance with the terms of this Security Instrument. If the Property, or any part thereof, shall require inspection, repair or maintenance which Grantor has failed to provide, Lender, after reasonable notice, may enter upon the Property to effect such obligation; and the cost thereof shall be added to the Indebtedness and paid on Lender's demand by Grantor.

**CONDEMNATION.** Grantor shall give Lender notice of any action taken or threatened to be taken by private or public entities to appropriate the Property or any part thereof, through condemnation, eminent domain or any other action. Further, Lender shall be permitted to participate or intervene in any of the above described proceedings in any manner it shall at its sole discretion determine. Lender is hereby given full power, right and authority to receive and receipt for any and all damages awarded as a result of the full or partial taking or appropriation and in its sole discretion, to apply said awards to the Indebtedness, whether or not then due or otherwise in accordance with applicable law. Unless Lender otherwise agrees in writing, any application of proceeds to the Indebtedness shall not extend or postpone the due date of the payments due under the Indebtedness or change the amount of such payments.

**GRANTOR'S ASSURANCES.** At any time, upon a request of Lender, Grantor will execute and deliver to Lender, and if appropriate, cause to be recorded, such further mortgages, assignments, assignments of leases and rents, security agreements, pledges, financing statements, or such other document as Lender may require, in Lender's sole discretion, to effectuate, complete and to perfect as well as to continue to preserve the Indebtedness, or the lien or security interest created by this Security Instrument.

**ATTORNEY-IN-FACT.** Grantor appoints Lender as attorney-in-fact on behalf of Grantor. If Grantor fails to fulfill any of Grantor's obligations under this Security Instrument or any Related Documents, including those obligations mentioned in the preceding paragraph, Lender as attorney-in-fact may fulfill the obligations without notice to Grantor. This power of attorney shall not be affected by the disability of the Grantor.

**EVENTS OF DEFAULT.** The following events shall constitute default under this Security Instrument (each an "Event of Default"):

    (a)   Failure to make required payments when due under Indebtedness;

    (b)   Failure to perform or keep any of the covenants of this Security Instrument or a default under any of the Related Documents;

(c) The making of any oral or written statement or assertion to Lender that is false or misleading in any material respect by Grantor or any person obligated on the Indebtedness;

(d) The death, dissolution, insolvency, bankruptcy or receivership proceeding of Grantor or of any person or entity obligated on the Indebtedness;

(e) Any assignment by Grantor for the benefit of Grantor's creditors;

(f) A material adverse change occurs in the financial condition, ownership, or management of Grantor or any person obligated on the Indebtedness; or

(g) Lender deems itself insecure for any reason whatsoever.

**REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, Lender may, without demand or notice, pay any or all taxes, assessments, premiums, and liens required to be paid by Grantor, effect any insurance provided for herein, make such repairs, cause the abstracts of title or title insurance policy and tax histories of the Property to be certified to date, or procure new abstracts of title or title insurance and tax histories in case none were furnished to it, and procure title reports covering the Property, including surveys. The amounts paid for any such purposes will be added to the Indebtedness and will bear interest at the rate of interest otherwise accruing on the Indebtedness until paid. In the event of foreclosure, the abstracts of title or title insurance shall become the property of Lender. All abstracts of title, title insurance, tax histories, surveys, and other documents pertaining to the Indebtedness will remain in Lender's possession until the Indebtedness is paid in full.

IN THE EVENT OF THE SALE OF THIS PROPERTY UNDER THE PROCEDURE FOR FORECLOSURE OF A SECURITY INSTRUMENT BY ADVERTISEMENT, AS PROVIDED BY APPLICABLE LAW, OR IN THE EVENT LENDER EXERCISES ITS RIGHTS UNDER THE ASSIGNMENT OF LEASES AND RENTS, THE GRANTOR HEREBY WAIVES ANY RIGHT TO ANY NOTICE OTHER THAN THAT PROVIDED FOR SPECIFICALLY BY STATUTE, OR TO ANY JUDICIAL HEARING PRIOR TO SUCH SALE OR OTHER EXERCISE OF RIGHTS.

Upon the occurrence of an Event of Default, Lender may, without notice unless required by law, and at its option, declare the entire Indebtedness due and payable, as it may elect, regardless of the date or dates of maturity thereof and, if permitted by state law, is authorized and empowered to cause the Property to be sold at public auction, and to execute and deliver to the purchaser or purchasers at such sale any deeds of conveyance good and sufficient at law, pursuant to the statute in such case made and provided, and out of the proceeds of the sale to retain the sums then due hereunder and all costs and charges of the sale, including attorneys' fees, rendering any surplus to the party or parties entitled to it. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made in it. If Lender chooses to invoke the power of sale, Lender or Trustee will provide notice of sale pursuant to applicable law. Any such sale or a sale made pursuant to a judgment or a decree for the foreclosure hereof may, at the option of Lender, be made en masse. The commencement of proceedings to foreclose this Security Instrument in any manner authorized by law shall be deemed as exercise of the above option.

Upon the occurrence of an Event of Default, Lender shall immediately be entitled to make application for and obtain the appointment of a receiver for the Property and of the earnings, income, issue and profits of it, with the powers as the court making the appointments confers. Grantor hereby irrevocably consents to such appointment and waives notice of any application therefor.

**NO WAIVER.** No delay or failure of Lender to exercise any right, remedy, power or privilege hereunder shall affect that right, remedy, power or privilege nor shall any single or partial exercise thereof preclude the exercise of any right, remedy, power or privilege. No Lender delay or failure to demand strict adherence to the terms of this Security Instrument shall be deemed to constitute a course of conduct inconsistent with Lender's right at any time, before or after an event of default, to demand strict adherence to the terms of this Security Instrument and the Related Documents.

**TRUSTEES AND SUBSTITUTION OF TRUSTEES.** It is hereby expressly covenanted and agreed to by all parties hereto that Lender may, at any time and from time to time hereafter, without notice, appoint and substitute another Trustee or Trustees, corporations or person, in place of the Trustee herein named to execute the trust herein created. Upon such appointment, either with or without a conveyance to said substituted Trustee or Trustees by the Trustees herein named, or by any substituted Trustee in case the said right of appointment is exercised more than once, the new and substituted Trustee or Trustees in each instance shall be vested with all the rights, titles, interests, powers, duties and trusts in the premises which are vested in and conferred upon the

© 2004-2010 Compliance Systems, Inc. 4317d3a0-8f53f092 - 2019502.1.3
Commercial Real Estate Security Instrument - DL4007                Page 4 of 6                www.compliancesystems.com

Trustees herein named; and such new and substituted Trustee or Trustees shall be considered the successors and assigns of the Trustees who are named herein within the meaning of this Security Instrument, and substituted in their place and stead. Each such appointment and substitution shall be evidenced by an instrument in writing which shall recite the parties to, and the book and page of record of, this Security Instrument, and the description of the real property herein described, which instrument, executed and acknowledged by Lender and recorded in the office of the Clerk of the County Commission of the County wherein the Property is situated, shall be conclusive proof of the proper substitution and appointment of such successor Trustee or Trustees, and notice of such proper substitution and appointment to all parties in interest.

The Trustees, or either of them or the survivor thereof, may act in the execution of this trust and in the event either of the Trustees shall act alone, the authority and power of the Trustee so acting shall be as full and complete as if the powers and authority granted to the Trustees herein jointly had been granted to such Trustee alone. Either or both of the Trustees are hereby authorized to act by agent or attorney in the execution of this trust, and it shall not be necessary for any Trustee to be present in person at any foreclosure sale.

**JOINT AND SEVERAL LIABILITY.** If this Security Instrument should be signed by more than one person, all persons executing this Security Instrument agree that they shall be jointly and severally bound, where permitted by law.

**SURVIVAL.** Lender's rights in this Security Instrument will continue in its successors and assigns. This Security Instrument is binding on all heirs, executors, administrators, assigns, and successors of Grantor.

**NOTICES AND WAIVER OF NOTICE.** Unless otherwise required by applicable law, any notice or demand given by Lender to any party is considered effective: (i) when it is deposited in the United States Mail with the appropriate postage; (ii) when it is sent via electronic mail; (iii) when it is sent via facsimile; (iv) when it is deposited with a nationally recognized overnight courier service; (v) on the day of personal delivery; or (vi) any other commercially reasonable means. Any such notice shall be addressed to the party given at the beginning of this Security Instrument unless an alternative address has been provided to Lender in writing. To the extent permitted by law, Grantor waives notice of Lender's acceptance of this Security Instrument, defenses based on suretyship, any defense arising from any election by Lender under the United States Bankruptcy Code, Uniform Commercial Code, as enacted in the state where Lender is located or other applicable law or in equity, demand, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor and any other notice.

**TO THE EXTENT PERMITTED BY LAW, GRANTOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO LENDER EXERCISING ITS RIGHTS UNDER THIS SECURITY INSTRUMENT.**

**WAIVER OF APPRAISEMENT RIGHTS.** Grantor waives all appraisement rights relating to the Property to the extent permitted by law.

**LENDER'S EXPENSES.** Grantor agrees to pay all expenses incurred by Lender in connection with enforcement of its rights under the Indebtedness, this Security Instrument or in the event Lender is made party to any litigation because of the existence of the Indebtedness or this Security Instrument, as well as court costs, collection charges and reasonable attorneys' fees and disbursements.

**ASSIGNABILITY.** Lender may assign or otherwise transfer this Security Instrument or any of Lender's rights under this Security Instrument without notice to Grantor. Grantor may not assign this Security Instrument or any part of the Security Instrument without the express written consent of Lender.

**GOVERNING LAW.** This Security Instrument will be governed by the laws of the State of West Virginia including all proceedings arising from this Security Instrument.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Security Instrument is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest

of the Security Instrument without invalidating the remainder of either the affected provision or this Security Instrument.

**WAIVER OF JURY TRIAL.** All parties to this Security Instrument hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Security Instrument or any other instrument, document or. agreement executed or delivered in connection with this Security Instrument or the Related Documents.

**ORAL AGREEMENTS DISCLAIMER.** This Security Instrument represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

By signing this Security Instrument, each Grantor acknowledges that all provisions have been read and understood.

**BARE ARMS LIMITED LIABILITY COMPANY**

By: WILLIAM H BARE            Date 5/5/22
Its: Managing Member

By: CHRISTY N BARE            Date 5/5/22
Its: Member

---

**BUSINESS ACKNOWLEDGMENT**

STATE OF    KENTUCKY    )
                       )
COUNTY OF   GREENUP     )

This instrument was acknowledged on the 5th day of May, 2022, by WILLIAM H BARE, Managing Member and CHRISTY N BARE, Member on behalf of BARE ARMS LIMITED LIABILITY COMPANY, a Kentucky Limited Liability Company, who personally appeared before me.

In witness whereof, I hereunto set my hand and, if applicable, official seal.

My commission expires: 8/24/24

GREENUP County.        residing in

Identification Number   10823

(Official Seal)

Sharon Blum
NOTARY PUBLIC
STATE AT LARGE
KENTUCKY
ID. # 10823
MY COMMISSION EXPIRES 08-24-2024

---

THIS INSTRUMENT PREPARED BY:
SUMMIT COMMUNITY BANK, INC
1000 ASHLAND DRIVE, SUITE 501
Ashland, KY 41101-0000

AFTER RECORDING RETURN TO:
SUMMIT COMMUNITY BANK, INC
310 North Main Street
Moorefield, WV 26836-0000

© 2004-2020 Compliance Systems, Inc. 4317e3ae-81386092 - 2019.302.1.3
Commercial Real Estate Security Instrument - DL4037

Page 6 of 6

www.compliancesystems.com

## EXHIBIT A

A piece or parcel of land situated in Guyandotte District, Cabell County, West Virginia, and described as follows, to-wit:

Beginning at an iron pipe in the eastern line of U.S. Route No. 52, said pipe bears N. 43°00' E. 102.00 feet from a concrete monument, and being in an old fence line, and being a corner to the Aaron Wood property and of record in the Cabell County Clerk's Office in Deed Book 280 at Page 391. Thence leaving said fence and said Wood property and with said road N. 43°00' E. 70.10 feet to a concrete monument. Thence with said road N. 18°16' E. 235.70 feet to an iron pipe, said pipe being at the junction of U.S. Route No. 52 and Local Service Route No. 52/2. Thence leaving said U.S. Route 52, and with said Local Service Route No. 52/2 S. 57°00' E 60.00 feet to an iron pipe; Thence with said road S. 45°58' E. 153.00 feet to an iron pipe in the center of Hisey Fork. Thence leaving said road and with the center of said creek S. 35°36' W. 54.20 feet to an iron pipe in the northern line of the Lighthouse Tabernacle Church Property. Thence leaving said creek and with said Church line N. 85°46' W. 20.60 feet to a corner fence post. Thence with said fence S. 68°03' W. 248.70 feet to the beginning containing 0.713 acres, more or less.

Being the same real estate conveyed to Bare Arms Limited Liability Company from Trademark Properties, Inc. by Deed dated August 9, 2017, and appearing of record in Deed Book 1373, Page 85, in the Office of the Cabell County Clerk of County Commission of West Virginia.

1

(00054849-1)

# EXHIBIT C

(illegible recording stamp text)

(Space Above This Line For Recording Data)

**LOAN NUMBER:** ███9376

# ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT OF LEASES AND RENTS ("Assignment") is made on May 5, 2022, between BARE ARMS LIMITED LIABILITY COMPANY, a Kentucky Limited Liability Company, whose address is 3502 WINCHESTER AVENUE, ASHLAND, Kentucky 41101 ("Assignor") and SUMMIT COMMUNITY BANK, INC whose address is 1000 ASHLAND DRIVE, SUITE 501, Ashland, Kentucky 41101 ("Assignee"), which is organized and existing under the laws of the State of West Virginia. Assignor, in consideration of loans extended by Assignee up to a maximum principal amount of Three Million One Hundred Ninety-five Thousand and 00/100 Dollars ($3,195,000.00) and for other valuable consideration, the receipt of which is acknowledged, hereby grants, transfers, assigns and sets over to Assignee all right, title and interest in and to all rents, issues, profits and privileges (now due or which may hereafter become due) of the following described real property:

Address: 2134 5th St, Huntington, West Virginia 25701
Legal Description: See attached Exhibit A for further description

("Property") which secures the following:

- Loan with a principal amount of $3,195,000.00

Assignor further grants Assignee all leases now or hereafter existing on all or any part of the Property, whether written or oral, or any letting or any agreement for the use of occupancy of any part of the Property which may have been or which may hereafter be made or agreed to between Assignor and any other present, prior, or subsequent owner of the Property, or any interest therein, or which may be made or agreed to by Assignee, its successors or assigns, under the powers herein granted, and any tenant or occupant of all or any part of the Property (collectively, the "Leases" and each, a "Lease").

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, prior mortgages, prior deeds of trust, prior deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with this Assignment whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Assignment by reference thereto, with the same force and effect as if fully set forth herein.

**INDEBTEDNESS.** This Assignment secures the principal amount shown above as may be evidenced by a promissory note or notes of even, prior or subsequent date hereto, including future advances and every other indebtedness of any and every kind now or hereafter owing from BARE ARMS LIMITED LIABILITY COMPANY to SUMMIT COMMUNITY BANK, INC, howsoever created or arising, whether primary, secondary or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the

© 2004-2020 Compliance Systems, Inc. c15b14c1-b76d4fdf - 2019.302.1.3
Assignment of Leases and Rents - DL4001          Page 1 of 3          www.compliancesystems.com

**CSi**

agreements and covenants of this Assignment and all Related Documents (hereinafter all referred to as the "Indebtedness").

**AMENDMENT OR MODIFICATION OF LEASES.** With respect to any Leases executed upon the Property after the creation of this Assignment and so long as the Indebtedness remains unpaid, Assignor shall not, without the written consent of Assignee: (a) cancel any Leases: (b) accept the surrender of any Leases; (c) modify or alter any Leases in any way, either orally or in writing; (d) reduce the rental set forth in any Leases; (e) consent to the assignment of any lessee's interest under any Leases, or to any subletting thereunder; or (f) make any other assignment, pledge, encumbrance, or any other disposition of any Leases, or of the rents, issues and profits derived from the use of the Property. Any of the above acts, if done without the written consent of Assignee, shall be null and void, and shall constitute a default under the Assignment and the Related Documents.

**REPRESENTATIONS OF ASSIGNOR.** Assignor hereby represents: (a) there are currently no leases, subleases or agreements to lease or sublease all of or any part of the Property other than any existing leases, subleases or agreements to lease or sublease all of or any part of the Property, which Assignor has disclosed in writing to Assignee (b) the Leases are valid and enforceable and no default exists under the Leases; (c) Assignor is entitled to receive all the rents, issues and profits and to enjoy all the rents and benefits mentioned herein and assigned hereby; (d) said rents, issues and profits have not been sold, assigned, transferred, or set over by any instrument now in force and shall not at any time during the life of this Assignment be sold, assigned, transferred, or set over by Assignor, or any other person taking under or through Assignor except as pursuant to this Assignment; and (e) Assignor has the sole right to sell, assign, transfer, and set over the same and to grant and confer upon Assignee the rights, interests, powers, and authorities herein granted and conferred.

**COLLECTION OF RENTS.** Provided no Event of Default exists under the Indebtedness or any of the Related Documents, Assignee agrees not to demand from any lessor or lessee under the Leases or from any other persons liable therefor, any of the rents, issues or profits hereby assigned, but shall permit Assignor to collect all such rents, issues and profits from the Property and the Leases, so long as not collected more than one (1) month in advance of their due date.

**EVENTS OF DEFAULT.** The following events shall constitute default under this Assignment (each an "Event of Default"):

(a) Failure to make required payments when due under Indebtedness;
(b) Failure to perform or keep any of the covenants of this Assignment or a default under any of the Related Documents;
(c) The making of any oral or written statement or assertion to Assignee that is false or misleading in any material respect by Assignor or any person obligated on the Indebtedness;
(d) The death, dissolution, insolvency, bankruptcy or receivership proceeding of Assignor or of any person or entity obligated on the Indebtedness;
(e) Any assignment by Assignor for the benefit of Assignor's creditors;
(f) A material adverse change occurs in the financial condition, ownership, or management of Borrower or any person obligated on the Indebtedness; or
(g) Assignee deems itself insecure for any reason whatsoever.

**REMEDIES.** Upon the occurrence of an Event of Default under this Assignment, the Indebtedness or the Related Documents, Assignee may declare all sums secured hereby immediately due and payable and may, at Assignee's option, without notice, either in Assignee's person or by agent and with or without bringing any action or proceeding, or by any receiver appointed by the court, enter upon, take possession of, and manage and operate the Property, and each and every part thereof, and in connection therewith, Assignee may make, enforce, and modify any of the Leases; fix or modify rents; repair, maintain and improve the Property; employ contractors, subcontractors, and workmen in and about the Property; obtain and evict tenants; in its own name, sue for and otherwise collect or reserve any and all rents, issues and profits, including those past due and unpaid; employ leasing agents, managing agents, attorneys, and accountants in connection with the enforcement of Assignee's rights hereunder and pay the reasonable fees and expenses thereof; and otherwise do and perform any and all acts which Assignee may deem necessary and appropriate in and about the Property for the protection thereof and of Assignee's rights hereunder and under the Related Documents, and any and all amounts expended by Assignee in connection with the foregoing shall constitute additional Indebtedness secured hereby to the extent permitted by

CSi

law. Assignee shall apply any moneys collected, as aforesaid, less costs and expenses incurred, upon any Indebtedness secured hereby in such order and manner as Assignee may determine and to the extent permitted by law.

**NOTICES AND WAIVER OF NOTICE.** Unless otherwise required by applicable law, any notice or demand given by Assignee to any party is considered effective when: (i) it is deposited in the United States Mail with the appropriate postage; (ii) when it is sent via electronic mail; (iii) when it is sent via facsimile; (iv) when it is deposited with a nationally recognized overnight courier service; (v) on the day of personal delivery; or (vi) any other commercially reasonable means addressed to the party given at the beginning of this Assignment unless an alternative address has been provided to Assignee in writing. To the extent permitted by law, Assignor waives notice of Assignee's acceptance of this Assignment, defenses based on suretyship, any defense arising from any election by Assignee under the United States Bankruptcy Code, Uniform Commercial Code, as enacted in the state where Assignee is located or other applicable law or in equity, demand, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor and any other notice.

**TO THE EXTENT PERMITTED BY LAW, ASSIGNOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO THE ASSIGNEE EXERCISING ITS RIGHTS UNDER THIS ASSIGNMENT.**

**PAYMENT OF RENTS TO ASSIGNEE.** All tenants or occupants of any part of the Property (including without limitation, all persons claiming any interest as lessor or lessee under any Leases) are hereby authorized to recognize the claims and demands of Assignee without investigation as to the reason for any action taken by Assignee or the validity of the amount of indebtedness owing to or the existence of any default hereunder or under the Related Documents, or the application of payments made by Assignee, of any amounts to be paid to Assignee. Assignee's sole signature shall be sufficient for the exercise of any right under this Assignment and Assignee's sole receipt given for any sums received shall be a full discharge and release therefor to any such tenant or occupant of the Property. Checks for all or any part of the rental collected under this Assignment shall be made to the exclusive order of Assignee.

**ASSIGNABILITY.** Assignee may assign or otherwise transfer this Assignment or any of Assignee's rights under this Assignment without notice to Assignor. Assignor may not assign this Assignment or any part of the Assignment without the express written consent of Assignee.

**ASSIGNEE'S RIGHTS AND REMEDIES.** The rights and remedies of the Assignee under this Assignment are cumulative, and are not in lieu of, but are in addition to all other rights and remedies which Assignee has under this Assignment and the Related Documents.

**SUCCESSORS AND ASSIGNS.** All covenants and agreements contained in this Assignment shall bind, and the rights hereunder shall inure to the respective successors and assigns of the Assignor and the Assignee.

**ENTIRE AGREEMENT; MODIFICATIONS; SEVERABILITY.** This Assignment shall constitute the entire agreement between Assignee and Assignor. Any modification of this Assignment shall be binding only if placed in writing and signed by the Assignee and Assignor. The invalidity of any provision of this Assignment shall not affect the validity of any other provision.

**PARAGRAPH HEADINGS; SINGULAR AND PLURAL TERMS.** The titles to the paragraphs of this Assignment are solely for the convenience of the parties and shall not be used to interpret this Assignment. Whenever used, the singular shall include the plural, the plural shall include the singular, and the use of any gender shall be applicable to all genders.

**ATTORNEYS' FEES AND OTHER COSTS.** Assignor agrees to pay all of Lender's costs and expenses incurred in connection with the enforcement of this Assignment, including without limitation, reasonable attorneys' fees, to the extent permitted by law.

**GOVERNING LAW.** This Assignment will be governed by the laws of the State of West Virginia including all proceedings arising from this Assignment.

© 2004-2020 Compliance Systems, Inc. c1Jh14e1-b76daBdf - 2019.J02.1.5
Assignment of Leases and Rents - DL4001                    Page 3 of 4                    www.compliancesystems.com

CSi

**WAIVER OF JURY TRIAL.** All parties to this Assignment hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Assignment or any other instrument, document or agreement executed or delivered in connection with this Assignment or the Related Documents.

**ORAL AGREEMENTS DISCLAIMER.** This Assignment represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

By signing this Assignment, Assignor acknowledges reading, understanding, and agreeing to all its provisions.

BARE ARMS LIMITED LIABILITY COMPANY

By: WILLIAM H BARE          5/5/22          By: CHRISTY N BARE          5/5/22
Its: Managing Member        Date            Its: Member                  Date

## BUSINESS ACKNOWLEDGMENT

STATE OF     KENTUCKY        )
                            )
COUNTY OF    GREENUP         )

This instrument was acknowledged on the 5th day of May, 2022, by WILLIAM H BARE, Managing Member and CHRISTY N BARE, Member on behalf of BARE ARMS LIMITED LIABILITY COMPANY, a Kentucky Limited Liability Company, who personally appeared before me.

In witness whereof, I hereunto set my hand and, if applicable, official seal.

My commission expires: 8/24/24

GREENUP County.         residing in

                        Identification Number  10823

(Official Seal)

Sharon Blum
NOTARY PUBLIC
STATE AT LARGE
KENTUCKY
ID. # 10823
MY COMMISSION EXPIRES 08-24-2024

THIS INSTRUMENT PREPARED BY:                AFTER RECORDING RETURN TO:
SUMMIT COMMUNITY BANK, INC                  SUMMIT COMMUNITY BANK, INC
1000 ASHLAND DRIVE, SUITE 501               310 North Main Street
Ashland, KY 41101-0000                      Moorefield, WV 26836-0000

C 2004-2020 Compliance Systems, Inc. c15b14e1-b76da8df- 2019.302.1.5
Assignment of Leases and Rents - DL4001          Page 4 of 4          www.compliancesystems.com

CSi

## EXHIBIT A

A piece or parcel of land situated in Guyandotte District, Cabell County, West Virginia, and described as follows, to-wit:

Beginning at an iron pipe in the eastern line of U.S. Route No. 52, said pipe bears N. 43°00' E. 102.00 feet from a concrete monument, and being in an old fence line, and being a corner to the Aaron Wood property and of record in the Cabell County Clerk's Office in Deed Book 280 at Page 391. Thence leaving said fence and said Wood property and with said road N. 43°00' E. 70.10 feet to a concrete monument. Thence with said road N. 18°16' E. 235.70 feet to an iron pipe, said pipe being at the junction of U.S. Route No. 52 and Local Service Route No. 52/2. Thence leaving said U.S. Route 52, and with said Local Service Route No. 52/2 S. 57°00' E 60.00 feet to an iron pipe; Thence with said road S. 45°58' E. 153.00 feet to an iron pipe in the center of Hisey Fork. Thence leaving said road and with the center of said creek S. 35°36' W. 54.20 feet to an iron pipe in the northern line of the Lighthouse Tabernacle Church Property. Thence leaving said creek and with said Church line N. 85°46' W. 20.60 feet to a corner fence post. Thence with said fence S. 68°03' W. 248.70 feet to the beginning containing 0.713 acres, more or less.

Being the same real estate conveyed to Bare Arms Limited Liability Company from Trademark Properties, Inc. by Deed dated August 9, 2017, and appearing of record in Deed Book 1373, Page 85, in the Office of the Cabell County Clerk of County Commission of West Virginia.

1

{00954549-1}

# **EXHIBIT D**

*(Space Above This Line For Recording Data)*

# COMMERCIAL REAL ESTATE MORTGAGE
## FUTURE ADVANCES AND FUTURE OBLIGATIONS ARE SECURED BY THIS REAL ESTATE MORTGAGE

This COMMERCIAL REAL ESTATE MORTGAGE ("Security Instrument") is made on May 5, 2022 between the mortgagor(s) BARE ARMS LIMITED LIABILITY COMPANY, a Kentucky Limited Liability Company, whose address is 3502 WINCHESTER AVENUE, ASHLAND, Kentucky 41101 ("Mortgagor"), and SUMMIT COMMUNITY BANK, INC whose mailing address is 1000 ASHLAND DRIVE, SUITE 501, Ashland, County of GREENUP, Kentucky 41101-0000 ("Lender"), which is organized and existing under the laws of the State of West Virginia. Mortgagor owes Lender the principal sum of Three Million One Hundred Ninety-five Thousand and 00/100 Dollars (U.S. $3,195,000.00), which is evidenced by the promissory note dated May 5, 2022. Mortgagor in consideration of this loan and any future loans extended by Lender up to a maximum principal amount of Three Million One Hundred Ninety-five Thousand and 00/100 Dollars (U.S. $3,195,000.00) ("Maximum Principal Indebtedness"), and for other valuable consideration, the receipt of which is acknowledged, hereby mortgages, grants and conveys to Lender, its successors and assigns, forever, the following described property located in the County of Boyd, State of Kentucky:

Address: 3502 Winchester Ave, Ashland, Kentucky 41101
Legal Description: See attached Exhibit A for further description

Together with all easements, appurtenances abutting streets and alleys, improvements, buildings, fixtures, tenements, hereditaments, equipment, rents, income, profits and royalties, personal goods of whatever description and all other rights and privileges including all minerals, oil, gas, water (whether groundwater, subterranean or otherwise), water rights (whether riparian, appropriate or otherwise, and whether or not appurtenant to the above-described real property), wells, well permits, ditches, ditch rights, reservoirs, reservoir rights, reservoir sites, storage rights, dams and water stock that may now, or at any time in the future, be located on and/or used in connection with the above-described real property, payment awards, amounts received from eminent domain, amounts received from any and all insurance payments, and timber which may now or later be located, situated, or affixed on and used in connection therewith (hereinafter called the "Property").

Being the same property conveyed to Mortgagor by deed dated January 1, 2000, of record in Deed Book _____, page _____, Boyd County Clerk's office.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, prior mortgages, prior deeds of trust, prior deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with this Indebtedness and Security Instrument, whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Security Instrument by reference thereto, with the same force and effect as if fully set forth herein.

© 2004-2020 Compliance Systems, Inc. 4217e5ac-db7555 - 2019.302.1.5
Commercial Real Estate Security Instrument - DL4007          Page 1 of 7          www.compliancesystems.com

Doc No:     10011075          DocType MTG
Recorded. 05/06/2022 02 58:57 PM          Fee Amt $80.00

Boyd County Kentucky
Kevin Johnston, Clerk          By: KATHY FISHER
BK **1506**   PG **791 - 798 (8)**

**INDEBTEDNESS.** This Security Instrument secures the principal amount shown above as may be evidenced by a promissory note or notes of even, prior or subsequent date hereto, including future advances and every other indebtedness of any and every kind now or hereafter owing from BARE ARMS LIMITED LIABILITY COMPANY to SUMMIT COMMUNITY BANK, INC, howsoever created or arising, whether primary, secondary or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the agreements and covenants of this Security Instrument and all Related Documents (hereinafter all referred to as the "Indebtedness").

**MATURITY DATE.** The Indebtedness, if not paid earlier, shall be due on May 5, 2042.

**FUTURE ADVANCES.** To the extent permitted by law, this Security Instrument will secure future advances as if such advances were made on the date of this Security Instrument regardless of the fact that from time to time there may be no balance due under the note and regardless of whether Lender is obligated to make such future advances.

**WARRANTIES.** Mortgagor, for itself, its heirs, personal representatives, successors, and assigns, represents, warrants, covenants and agrees with Lender, its successors and assigns, as follows:

**Performance of Obligations.** Mortgagor promises to perform all terms, conditions, and covenants of this Security Instrument and Related Documents in accordance with the terms contained therein.

**Defense and Title to Property.** At the time of execution and delivery of this instrument, Mortgagor is lawfully seised of the estate hereby conveyed and has the exclusive right to mortgage, grant, convey and assign the Property. Mortgagor covenants that the Property is unencumbered and free of all liens, except for encumbrances of record acceptable to Lender. Further, Mortgagor covenants that Mortgagor will warrant and defend generally the title to the Property against any and all claims and demands whatsoever, subject to the easements, restrictions, or other encumbrances of record acceptable to Lender, as may be listed in the schedule of exceptions to coverage in any abstract of title or title insurance policy insuring Lender's interest in the Property.

**Condition of Property.** Mortgagor promises at all times to preserve and to maintain the Property and every part thereof in good repair, working order, and condition and will from time to time, make all needful and proper repairs so that the value of the Property shall not in any way be impaired.

**Removal of any Part of the Property.** Mortgagor promises not to remove any part of the Property from its present location, except for replacement, maintenance and relocation in the ordinary course of business.

**Alterations to the Property.** Mortgagor promises to abstain from the commission of any waste on or in connection with the Property. Further, Mortgagor shall make no material alterations, additions, or improvements of any type whatsoever to the Property, regardless of whether such alterations, additions, or improvements would increase the value of the Property, nor permit anyone to do so except for tenant improvements and completion of items pursuant to approved plans and specifications, without Lender's prior written consent, which consent may be withheld by Lender in its sole discretion. Mortgagor will comply with all laws and regulations of all public authorities having jurisdiction over the Property including, without limitation, those relating to the use, occupancy and maintenance thereof and shall upon request promptly submit to Lender evidence of such compliance.

**Due on Sale - Lender's Consent.** Mortgagor shall not sell, further encumber or otherwise dispose of, except as herein provided, any or all of its interest in any part of or all of the Property without first obtaining the written consent of Lender. If any encumbrance, lien, transfer or sale or agreement for these is created, Lender may declare immediately due and payable, the entire balance of the Indebtedness.

**Insurance.** Mortgagor promises to keep the Property insured against such risks and in such form as may within the sole discretion of Lender be acceptable, causing Lender to be named as loss payee or if requested by Lender, as mortgagee. The insurance company shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. All insurance policies must provide that Lender will get a minimum of 10 days notice prior to cancellation. At Lender's discretion, Mortgagor may be required to produce receipts of paid premiums and renewal policies. If Mortgagor fails to obtain the required coverage, Lender may do so at Mortgagor's expense. Mortgagor hereby directs each and every insurer of the Property

to make payment of loss to Lender with the proceeds to be applied, only at Lender's option, to the repair and replacement of the damage or loss or to be applied to the Indebtedness with the surplus, if any, to be paid by Lender to Mortgagor.

**Payment of Taxes and Other Applicable Charges.** Mortgagor promises to pay and to discharge liens, encumbrances, taxes, assessments, lease payments and any other charges relating to the Property when levied or assessed against Mortgagor or the Property.

**Environmental Laws and Hazardous or Toxic Materials.** Mortgagor and every tenant have been, are presently and shall continue to be in strict compliance with any applicable local, state and federal environmental laws and regulations. Further, neither Mortgagor nor any tenant shall manufacture, store, handle, discharge or dispose of hazardous or toxic materials as may be defined by any state or federal law on the Property, except to the extent the existence of such materials has been presently disclosed in writing to Lender. Mortgagor will immediately notify Lender in writing of any assertion or claim made by any party as to the possible violation of applicable state and federal environmental laws including the location of any hazardous or toxic materials on or about the Property. Mortgagor indemnifies and holds Lender harmless from, without limitation, any liability or expense of whatsoever nature incurred directly or indirectly out of or in connection with: (a) any environmental laws affecting all or any part of the Property or Mortgagor; (b) the past, present or future existence of any hazardous materials in, on, under, about, or emanating from or passing through the Property or any part thereof or any property adjacent thereto; (c) any past, present or future hazardous activity at or in connection with the Property or any part thereof; and (d) the noncompliance by Mortgagor or Mortgagor's failure to comply fully and timely with environmental laws.

**Financial Information.** Mortgagor agrees to supply Lender such financial and other information concerning its affairs and the status of any of its assets as Lender, from time to time, may reasonably request. Mortgagor further agrees to permit Lender to verify accounts as well as to inspect, copy and to examine the books, records, and files of Mortgagor.

**Lender's Right to Enter.** Lender or Lender's agents shall have the right and access to inspect the Property at all reasonable times in order to attend to Lender's interests and ensure compliance with the terms of this Security Instrument. If the Property, or any part thereof, shall require inspection, repair or maintenance which Mortgagor has failed to provide, Lender, after reasonable notice, may enter upon the Property to effect such obligation; and the cost thereof shall be added to the Indebtedness and paid on Lender's demand by Mortgagor.

**CONDEMNATION.** Mortgagor shall give Lender notice of any action taken or threatened to be taken by private or public entities to appropriate the Property or any part thereof, through condemnation, eminent domain or any other action. Further, Lender shall be permitted to participate or intervene in any of the above described proceedings in any manner it shall at its sole discretion determine. Lender is hereby given full power, right and authority to receive and receipt for any and all damages awarded as a result of the full or partial taking or appropriation and in its sole discretion, to apply said awards to the Indebtedness, whether or not then due or otherwise in accordance with applicable law. Unless Lender otherwise agrees in writing, any application of proceeds to the Indebtedness shall not extend or postpone the due date of the payments due under the Indebtedness or change the amount of such payments.

**MORTGAGOR'S ASSURANCES.** At any time, upon a request of Lender, Mortgagor will execute and deliver to Lender, and if appropriate, cause to be recorded, such further mortgages, assignments, assignments of leases and rents, security agreements, pledges, financing statements, or such other document as Lender may require, in Lender's sole discretion, to effectuate, complete and to perfect as well as to continue to preserve the Indebtedness, or the lien or security interest created by this Security Instrument.

**ATTORNEY-IN-FACT.** Mortgagor appoints Lender as attorney-in-fact on behalf of Mortgagor. If Mortgagor fails to fulfill any of Mortgagor's obligations under this Security Instrument or any Related Documents, including those obligations mentioned in the preceding paragraph. Lender as attorney-in-fact may fulfill the obligations without notice to Mortgagor. This power of attorney shall not be affected by the disability of the Mortgagor.

**EVENTS OF DEFAULT.** The following events shall constitute default under this Security Instrument (each an "Event of Default"):

(a)   Failure to make required payments when due under Indebtedness;

(b)   Failure to perform or keep any of the covenants of this Security Instrument or a default under any of the Related Documents:

(c)   The making of any oral or written statement or assertion to Lender that is false or misleading in any material respect by Mortgagor or any person obligated on the Indebtedness:

(d)   The death, dissolution, insolvency, bankruptcy or receivership proceeding of Mortgagor or of any person or entity obligated on the Indebtedness:

(e)   Any assignment by Mortgagor for the benefit of Mortgagor's creditors:

(f)   A material adverse change occurs in the financial condition, ownership, or management of Mortgagor or any person obligated on the Indebtedness: or

(g)   Lender deems itself insecure for any reason whatsoever.

**REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, Lender may, without demand or notice, pay any or all taxes, assessments, premiums, and liens required to be paid by Mortgagor, effect any insurance provided for herein, make such repairs, cause the abstracts of title or title insurance policy and tax histories of the Property to be certified to date, or procure new abstracts of title or title insurance and tax histories in case none were furnished to it, and procure title reports covering the Property, including surveys. The amounts paid for any such purposes will be added to the Indebtedness and will bear interest at the rate of interest otherwise accruing on the Indebtedness until paid. In the event of foreclosure, the abstracts of title or title insurance shall become the property of Lender. All abstracts of title, title insurance, tax histories, surveys, and other documents pertaining to the Indebtedness will remain in Lender's possession until the Indebtedness is paid in full.

IN THE EVENT OF THE SALE OF THIS PROPERTY UNDER THE PROCEDURE FOR FORECLOSURE OF A SECURITY INSTRUMENT BY ADVERTISEMENT, AS PROVIDED BY APPLICABLE LAW, OR IN THE EVENT LENDER EXERCISES ITS RIGHTS UNDER THE ASSIGNMENT OF LEASES AND RENTS, THE MORTGAGOR HEREBY WAIVES ANY RIGHT TO ANY NOTICE OTHER THAN THAT PROVIDED FOR SPECIFICALLY BY STATUTE, OR TO ANY JUDICIAL HEARING PRIOR TO SUCH SALE OR OTHER EXERCISE OF RIGHTS.

Upon the occurrence of an Event of Default, Lender may, without notice unless required by law, and at its option, declare the entire Indebtedness due and payable, as it may elect, regardless of the date or dates of maturity thereof and, if permitted by state law, is authorized and empowered to cause the Property to be sold at public auction, and to execute and deliver to the purchaser or purchasers at such sale any deeds of conveyance good and sufficient at law, pursuant to the statute in such case made and provided, and out of the proceeds of the sale to retain the sums then due hereunder and all costs and charges of the sale, including attorneys' fees, rendering any surplus to the party or parties entitled to it. Any such sale or a sale made pursuant to a judgment or a decree for the foreclosure hereof may, at the option of Lender, be made en masse. The commencement of proceedings to foreclose this Security Instrument in any manner authorized by law shall be deemed as exercise of the above option.

Upon the occurrence of an Event of Default, Lender shall immediately be entitled to make application for and obtain the appointment of a receiver for the Property and of the earnings, income, issue and profits of it, with the powers as the court making the appointments confers. Mortgagor hereby irrevocably consents to such appointment and waives notice of any application therefor.

**NO WAIVER.** No delay or failure of Lender to exercise any right, remedy, power or privilege hereunder shall affect that right, remedy, power or privilege nor shall any single or partial exercise thereof preclude the exercise of any right, remedy, power or privilege. No Lender delay or failure to demand strict adherence to the terms of this Security Instrument shall be deemed to constitute a course of conduct inconsistent with Lender's right at any time, before or after an event of default, to demand strict adherence to the terms of this Security Instrument and the Related Documents.

**JOINT AND SEVERAL LIABILITY.** If this Security Instrument should be signed by more than one person, all persons executing this Security Instrument agree that they shall be jointly and severally bound, where permitted by law.

**SURVIVAL.** Lender's rights in this Security Instrument will continue in its successors and assigns. This Security Instrument is binding on all heirs, executors, administrators, assigns, and successors of Mortgagor.

**NOTICES AND WAIVER OF NOTICE.** Unless otherwise required by applicable law, any notice or demand given by Lender to any party is considered effective: (i) when it is deposited in the United States Mail with the appropriate postage; (ii) when it is sent via electronic mail; (iii) when it is sent via facsimile; (iv) when it is deposited with a nationally recognized overnight courier service; (v) on the day of personal delivery; or (vi) any other commercially reasonable means. Any such notice shall be addressed to the party given at the beginning of this Security Instrument unless an alternative address has been provided to Lender in writing. To the extent permitted by law, Mortgagor waives notice of Lender's acceptance of this Security Instrument, defenses based on suretyship, any defense arising from any election by Lender under the United States Bankruptcy Code, Uniform Commercial Code, as enacted in the state where Lender is located or other applicable law or in equity, demand, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor and any other notice.

**TO THE EXTENT PERMITTED BY LAW, MORTGAGOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO LENDER EXERCISING ITS RIGHTS UNDER THIS SECURITY INSTRUMENT.**

**WAIVER OF APPRAISEMENT RIGHTS.** Mortgagor waives all appraisement rights relating to the Property to the extent permitted by law.

**LENDER'S EXPENSES.** Mortgagor agrees to pay all expenses incurred by Lender in connection with enforcement of its rights under the Indebtedness, this Security Instrument or in the event Lender is made party to any litigation because of the existence of the Indebtedness or this Security Instrument, as well as court costs, collection charges and reasonable attorneys' fees and disbursements.

**ASSIGNABILITY.** Lender may assign or otherwise transfer this Security Instrument or any of Lender's rights under this Security Instrument without notice to Mortgagor. Mortgagor may not assign this Security Instrument or any part of the Security Instrument without the express written consent of Lender.

**GOVERNING LAW.** This Security Instrument will be governed by the laws of the State of Kentucky including all proceedings arising from this Security Instrument.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Security Instrument is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of the Security Instrument without invalidating the remainder of either the affected provision or this Security Instrument.

**WAIVER OF JURY TRIAL. All parties to this Security Instrument hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Security Instrument or any other instrument, document or agreement executed or delivered in connection with this Security Instrument or the Related Documents.**

**ORAL AGREEMENTS DISCLAIMER.** This Security Instrument represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

© 2004-2020 Compliance Systems, Inc. 421feaca8c7459 - 2019.302.1.7
Commercial Real Estate Security Instrument - DL2047                    Page 5 of 7                    www.compliancesystems.com

**By signing this Security Instrument, each Mortgagor acknowledges that all provisions have been read and understood.**

BARE ARMS LIMITED LIABILITY COMPANY

By: WILLIAM H BARE                Date

Its: Managing Member

By: CHRISTY N BARE               Date

Its: Member

© 2004-2020 Compliance Systems, Inc. 42f7c3acedfc7555 - 2019 302.1.5
Commercial Real Estate Security Instrument - DL4zcf                Page 6 of 7                www.compliancesystems.com

## BUSINESS ACKNOWLEDGMENT

STATE OF    KENTUCKY        )
                           )
COUNTY OF   GREENUP         )

This instrument was acknowledged on the 5th day of May, 2022, by WILLIAM H BARE, Managing Member and CHRISTY N BARE, Member on behalf of BARE ARMS LIMITED LIABILITY COMPANY, a Kentucky Limited Liability Company, who personally appeared before me.

In witness whereof, I hereunto set my hand and, if applicable, official seal.

My commission expires:  8/24/24

GREENUP County.

residing in

_Sharon Blum_

Identification Number  JD823

(Official Seal)

```
          Sharon Blum
        NOTARY PUBLIC
       STATE AT LARGE
          KENTUCKY
          ID. # 10823
 MY COMMISSION EXPIRES 08-24-2024
```

THIS INSTRUMENT WAS PREPARED BY:
SUMMIT COMMUNITY BANK, INC
1000 ASHLAND DRIVE, SUITE 501
Ashland, KY 41101-0000

AFTER RECORDING RETURN TO:
SUMMIT COMMUNITY BANK, INC
310 North Main Street
Moorefield, WV 26836-0000

_Sharon Blum_    5-5-22
Sharon Blum          Date
Commerical Lending Asst for SUMMIT
COMMUNITY BANK, INC

© 2004-2020 Compliance Systems, Inc. 4217c3ace-f0c7359 - 2019.302.1.5
Commercial Real Estate Security Instrument - DL4007                    Page 7 of 7                    www.compliancesystems.com

## EXHIBIT A

### PARCEL I:

Lying, being and situated in Ashland, Boyd County, Kentucky, and being a tract of land fronting on the Ashland-Catlettsburg Turnpike (now known as Winchester Avenue) and bounded as follows:

Beginning at a stake two hundred (200) feet from Henderson's northeast corner; thence east with line of said Winchester Avenue fifty-one (51) feet to the northwest corner of the property of John Weinfurtner; thence south two hundred and seven (207) feet along the line of said Weinfurtner's property to line of Chesapeake and Ohio Railway's right-of-way; thence west along said Chesapeake and Ohio Railway fifty-one (51) feet to a stake; thence north two hundred and thirty (230) feet to the Beginning.

### PARCEL II:

Situated in Ashland, Boyd County, Kentucky, and being more particularly described as follows:

Beginning at a point in the southwesterly line of Winchester Avenue, which point is S. 38-42 E., a distance of 150 feet along said line of Winchester Avenue from an iron pipe, which iron pipe is a common corner to property of Humble Oil & Refining Company and the Kroger Company; thence leaving Winchester Avenue and with lines of property of Humble Oil & Refining Company, (2 calls), S 49-45 W., a distance of 165 feet, and thence N. 38-42 W., a distance of 72.65 feet to the line of property of Harlan Mullins; thence with the rear line of the Harlan Mullins' property, and such line extended, southwesterly a distance of 111 feet, more or less, to the right-of-way line of the Chesapeake and Ohio Railway Company; thence with the northeasterly line of said right-of-way line, southeasterly a distance of 125 feet, more or less, to a point, corner to property of Charles C. Ruggles; thence with the northwesterly property line of the Charles C. Ruggles property N. 50-48 E., a distance of 230 feet to Winchester Avenue; thence with the southwesterly line of Winchester Avenue, N 38-42 W., a distance of 50 feet to the point of beginning, but subject to a right-of-way and easement granted by Rex Real Estate Exchange and Development Company to Humble Oil & Refining Company in Deed of record in Deed Book 388, Page 310, in the Office of the Clerk of the Boyd County Court of Kentucky.

Being the same real estate conveyed to Bare Arms Limited Liability Company, a Kentucky limited liability company, from Dale L. Hensley and Patricia Hensley, husband and wife, by deed dated June 22, 2016, and appearing of record in Deed Book 782, Page 313 in the Office of the Boyd County Court Clerk of Kentucky.

**EXHIBIT E**

  

 

(Space Above This Line For Recording Data)

LOAN NUMBER: ███9376

# ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT OF LEASES AND RENTS ("Assignment") is made on May 5, 2022, between BARE ARMS LIMITED LIABILITY COMPANY, a Kentucky Limited Liability Company, whose address is 3502 WINCHESTER AVENUE, ASHLAND, Kentucky 41101 ("Assignor") and SUMMIT COMMUNITY BANK, INC whose address is 1000 ASHLAND DRIVE, SUITE 501, Ashland, Kentucky 41101 ("Assignee"), which is organized and existing under the laws of the State of West Virginia. Assignor, in consideration of loans extended by Assignee up to a maximum principal amount of Three Million One Hundred Ninety-five Thousand and 00/100 Dollars ($3,195,000.00) and for other valuable consideration, the receipt of which is acknowledged, hereby grants, transfers, assigns and sets over to Assignee all right, title and interest in and to all rents, issues, profits and privileges (now due or which may hereafter become due) of the following described real property:

Address: 3502 Winchester Ave, Ashland, Kentucky 41101
Legal Description: See attached Exhibit A for further description

("Property") which secures the following:

- Loan with a principal amount of $3,195,000.00

Assignor further grants Assignee all leases now or hereafter existing on all or any part of the Property, whether written or oral, or any letting or any agreement for the use of occupancy of any part of the Property which may have been or which may hereafter be made or agreed to between Assignor and any other present, prior, or subsequent owner of the Property, or any interest therein, or which may be made or agreed to by Assignee, its successors or assigns, under the powers herein granted, and any tenant or occupant of all or any part of the Property (collectively, the "Leases" and each, a "Lease").

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, prior mortgages, prior deeds of trust, prior deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with this Assignment whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Assignment by reference thereto, with the same force and effect as if fully set forth herein.

**INDEBTEDNESS.** This Assignment secures the principal amount shown above as may be evidenced by a promissory note or notes of even, prior or subsequent date hereto, including future advances and every other indebtedness of any and every kind now or hereafter owing from BARE ARMS LIMITED LIABILITY COMPANY to SUMMIT COMMUNITY BANK, INC, howsoever created or arising, whether primary, secondary or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the

• 2004-2020 Compliance Systems, Inc. c15b14e1-c4b72c40 - 2019.302.1.5
Assignment of Leases and Rents - DL4001                    Page 1 of 5                    www.compliancesystems.com

Doc No:    10011076        DocType: RENT
Recorded:  05/06/2022 02:58:58 PM        Fee Amt. $53.00

Boyd County Kentucky
Kevin Johnston, Clerk        By: KATHY FISHER
BK 1507    PG 1 - 6 (6)

CSi

agreements and covenants of this Assignment and all Related Documents (hereinafter all referred to as the "Indebtedness").

**MATURITY DATE.** The Indebtedness, if not paid earlier, shall be due on May 5, 2042.

**AMENDMENT OR MODIFICATION OF LEASES.** With respect to any Leases executed upon the Property after the creation of this Assignment and so long as the Indebtedness remains unpaid, Assignor shall not, without the written consent of Assignee: (a) cancel any Leases; (b) accept the surrender of any Leases; (c) modify or alter any Leases in any way, either orally or in writing; (d) reduce the rental set forth in any Leases; (e) consent to the assignment of any lessee's interest under any Leases, or to any subletting thereunder; or (f) make any other assignment, pledge, encumbrance, or any other disposition of any Leases, or of the rents, issues and profits derived from the use of the Property. Any of the above acts, if done without the written consent of Assignee, shall be null and void, and shall constitute a default under the Assignment and the Related Documents.

**REPRESENTATIONS OF ASSIGNOR.** Assignor hereby represents: (a) there are currently no leases, subleases or agreements to lease or sublease all of or any part of the Property other than any existing leases, subleases or agreements to lease or sublease all of or any part of the Property, which Assignor has disclosed in writing to Assignee (b) the Leases are valid and enforceable and no default exists under the Leases; (c) Assignor is entitled to receive all the rents, issues and profits and to enjoy all the rents and benefits mentioned herein and assigned hereby; (d) said rents, issues and profits have not been sold, assigned, transferred, or set over by any instrument now in force and shall not at any time during the life of this Assignment be sold, assigned, transferred, or set over by Assignor, or any other person taking under or through Assignor except as pursuant to this Assignment; and (e) Assignor has the sole right to sell, assign, transfer, and set over the same and to grant and confer upon Assignee the rights, interests, powers, and authorities herein granted and conferred.

**COLLECTION OF RENTS.** Provided no Event of Default exists under the Indebtedness or any of the Related Documents, Assignee agrees not to demand from any lessor or lessee under the Leases or from any other persons liable therefor, any of the rents, issues or profits hereby assigned, but shall permit Assignor to collect all such rents, issues and profits from the Property and the Leases, so long as not collected more than one (1) month in advance of their due date.

**EVENTS OF DEFAULT.** The following events shall constitute default under this Assignment (each an "Event of Default"):

(a)  Failure to make required payments when due under Indebtedness;

(b)  Failure to perform or keep any of the covenants of this Assignment or a default under any of the Related Documents;

(c)  The making of any oral or written statement or assertion to Assignee that is false or misleading in any material respect by Assignor or any person obligated on the Indebtedness;

(d)  The death, dissolution, insolvency, bankruptcy or receivership proceeding of Assignor or of any person or entity obligated on the Indebtedness;

(e)  Any assignment by Assignor for the benefit of Assignor's creditors;

(f)  A material adverse change occurs in the financial condition, ownership, or management of Borrower or any person obligated on the Indebtedness; or

(g)  Assignee deems itself insecure for any reason whatsoever.

**REMEDIES.** Upon the occurrence of an Event of Default under this Assignment, the Indebtedness or the Related Documents, Assignee may declare all sums secured hereby immediately due and payable and may, at Assignee's option, without notice, either in Assignee's person or by agent and with or without bringing any action or proceeding, or by any receiver appointed by the court, enter upon, take possession of, and manage and operate the Property, and each and every part thereof, and in connection therewith, Assignee may make, enforce, and modify any of the Leases; fix or modify rents; repair, maintain and improve the Property; employ contractors, subcontractors, and workmen in and about the Property; obtain and evict tenants; in its own name, sue for and otherwise collect or reserve any and all rents, issues and profits, including those past due and unpaid; employ leasing agents, managing agents, attorneys, and accountants in connection with the enforcement of Assignee's rights hereunder and pay the reasonable fees and expenses thereof; and otherwise do and perform any and all acts which Assignee may deem necessary and appropriate in and about the Property for the protection thereof and of

**CSi**

Assignee's rights hereunder and under the Related Documents, and any and all amounts expended by Assignee in connection with the foregoing shall constitute additional Indebtedness secured hereby to the extent permitted by law. Assignee shall apply any moneys collected, as aforesaid, less costs and expenses incurred, upon any Indebtedness secured hereby in such order and manner as Assignee may determine and to the extent permitted by law.

**NOTICES AND WAIVER OF NOTICE.** Unless otherwise required by applicable law, any notice or demand given by Assignee to any party is considered effective when: (i) it is deposited in the United States Mail with the appropriate postage; (ii) when it is sent via electronic mail; (iii) when it is sent via facsimile; (iv) when it is deposited with a nationally recognized overnight courier service; (v) on the day of personal delivery; or (vi) any other commercially reasonable means addressed to the party given at the beginning of this Assignment unless an alternative address has been provided to Assignee in writing. To the extent permitted by law, Assignor waives notice of Assignee's acceptance of this Assignment, defenses based on suretyship, any defense arising from any election by Assignee under the United States Bankruptcy Code, Uniform Commercial Code, as enacted in the state where Assignee is located or other applicable law or in equity, demand, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor and any other notice.

**TO THE EXTENT PERMITTED BY LAW, ASSIGNOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO THE ASSIGNEE EXERCISING ITS RIGHTS UNDER THIS ASSIGNMENT.**

**PAYMENT OF RENTS TO ASSIGNEE.** All tenants or occupants of any part of the Property (including without limitation, all persons claiming any interest as lessor or lessee under any Leases) are hereby authorized to recognize the claims and demands of Assignee without investigation as to the reason for any action taken by Assignee or the validity of the amount of indebtedness owing to or the existence of any default hereunder or under the Related Documents, or the application of payments made by Assignee, of any amounts to be paid to Assignee. Assignee's sole signature shall be sufficient for the exercise of any right under this Assignment and Assignee's sole receipt given for any sums received shall be a full discharge and release therefor to any such tenant or occupant of the Property. Checks for all or any part of the rental collected under this Assignment shall be made to the exclusive order of Assignee.

**ASSIGNABILITY.** Assignee may assign or otherwise transfer this Assignment or any of Assignee's rights under this Assignment without notice to Assignor. Assignor may not assign this Assignment or any part of the Assignment without the express written consent of Assignee.

**ASSIGNEE'S RIGHTS AND REMEDIES.** The rights and remedies of the Assignee under this Assignment are cumulative, and are not in lieu of, but are in addition to all other rights and remedies which Assignee has under this Assignment and the Related Documents.

**SUCCESSORS AND ASSIGNS.** All covenants and agreements contained in this Assignment shall bind, and the rights hereunder shall inure to the respective successors and assigns of the Assignor and the Assignee.

**ENTIRE AGREEMENT; MODIFICATIONS; SEVERABILITY.** This Assignment shall constitute the entire agreement between Assignee and Assignor. Any modification of this Assignment shall be binding only if placed in writing and signed by the Assignee and Assignor. The invalidity of any provision of this Assignment shall not affect the validity of any other provision.

**PARAGRAPH HEADINGS; SINGULAR AND PLURAL TERMS.** The titles to the paragraphs of this Assignment are solely for the convenience of the parties and shall not be used to interpret this Assignment. Whenever used, the singular shall include the plural, the plural shall include the singular, and the use of any gender shall be applicable to all genders.

**ATTORNEYS' FEES AND OTHER COSTS.** Assignor agrees to pay all of Lender's costs and expenses incurred in connection with the enforcement of this Assignment, including without limitation, reasonable attorneys' fees, to the extent permitted by law.

**GOVERNING LAW.** This Assignment will be governed by the laws of the State of Kentucky including all proceedings arising from this Assignment.

© 2004-2020 Compliance Systems, Inc. c15b14c1-c4b72c46 - 2019.302.1.5
Assignment of Leases and Rents - DL4001                    Page 3 of 4                    www.compliancesystems.com

CSi

**WAIVER OF JURY TRIAL.** All parties to this Assignment hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Assignment or any other instrument, document or agreement executed or delivered in connection with this Assignment or the Related Documents.

**ORAL AGREEMENTS DISCLAIMER.** This Assignment represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

By signing this Assignment, Assignor acknowledges reading, understanding, and agreeing to all its provisions.

BARE ARMS LIMITED LIABILITY COMPANY

By: WILLIAM H BARE          Date
Its: Managing Member

By: CHRISTY N BARE          Date
Its: Member

### BUSINESS ACKNOWLEDGMENT

STATE OF      KENTUCKY      )
                           )
COUNTY OF    GREENUP       )

This instrument was acknowledged on the 5th day of May, 2022, by WILLIAM H BARE, Managing Member and CHRISTY N BARE, Member on behalf of BARE ARMS LIMITED LIABILITY COMPANY, a Kentucky Limited Liability Company, who personally appeared before me.

In witness whereof, I hereunto set my hand and, if applicable, official seal.

My commission expires: 8/24/24

residing in
GREENUP County.

Identification Number  10823

(Official Seal)

Sharon Blum
NOTARY PUBLIC
STATE AT LARGE
KENTUCKY
ID. # 10823
MY COMMISSION EXPIRES 08-24-2024

CSi

THIS INSTRUMENT WAS PREPARED BY:
SUMMIT COMMUNITY BANK. INC
1000 ASHLAND DRIVE, SUITE 501
Ashland, KY 41101-0000

AFTER RECORDING RETURN TO:
SUMMIT COMMUNITY BANK. INC
310 North Main Street
Moorefield. WV 26836-0000

*Sharon Blum*    5.5.22
Sharon Blum                     Date
Commerical Lending Asst for SUMMIT
COMMUNITY BANK. INC

2004-2020 Compliance Systems, Inc. c15b14c1-c4b72c4u - 2019.302.1.5
Assignment of Leases and Rents - DL4001

Page 5 of 5

www.compliancesystems.com

CSi

## EXHIBIT A

### PARCEL I:

Lying, being and situated in Ashland, Boyd County, Kentucky, and being a tract of land fronting on the Ashland-Catlettsburg Turnpike (now known as Winchester Avenue) and bounded as follows:

Beginning at a stake two hundred (200) feet from Henderson's northeast corner; thence east with line of said Winchester Avenue fifty-one (51) feet to the northwest corner of the property of John Weinfurtner; thence south two hundred and seven (207) feet along the line of said Weinfurtner's property to line of Chesapeake and Ohio Railway's right-of-way; thence west along said Chesapeake and Ohio Railway fifty-one (51) feet to a stake; thence north two hundred and thirty (230) feet to the Beginning.

### PARCEL II:

Situated in Ashland, Boyd County, Kentucky, and being more particularly described as follows:

Beginning at a point in the southwesterly line of Winchester Avenue, which point is S. 38-42 E., a distance of 150 feet along said line of Winchester Avenue from an iron pipe, which iron pipe is a common corner to property of Humble Oil & Refining Company and the Kroger Company; thence leaving Winchester Avenue and with lines of property of Humble Oil & Refining Company, (2 calls), S 49-45 W., a distance of 165 feet, and thence N. 38-42 W., a distance of 72.65 feet to the line of property of Harlan Mullins; thence with the rear line of the Harlan Mullins' property, and such line extended, southwesterly a distance of 111 feet, more or less, to the right-of-way line of the Chesapeake and Ohio Railway Company; thence with the northeasterly line of said right-of-way line, southeasterly a distance of 125 feet, more or less, to a point, corner to property of Charles C. Ruggles; thence with the northwesterly property line of the Charles C. Ruggles property N. 50-48 E., a distance of 230 feet to Winchester Avenue; thence with the southwesterly line of Winchester Avenue, N 38-42 W., a distance of 50 feet to the point of beginning, but subject to a right-of-way and easement granted by Rex Real Estate Exchange and Development Company to Humble Oil & Refining Company in Deed of record in Deed Book 388, Page 310, in the Office of the Clerk of the Boyd County Court of Kentucky.

Being the same real estate conveyed to Bare Arms Limited Liability Company, a Kentucky limited liability company, from Dale L. Hensley and Patricia Hensley, husband and wife, by deed dated June 22, 2016, and appearing of record in Deed Book 782, Page 313 in the Office of the Boyd County Court Clerk of Kentucky.

# **EXHIBIT F**

 



Doc ID: 004537550011 Type: MTG
Recorded: 05/06/2022 at 02:25:48 PM
Fee Amt: $106.00 Page 1 of 11
Lawrence County, OH
SHARON GOSSETT HAGER COUNTY RECORDER
File# 2022-00002884

BK**1137**PG**771-781**



(Space Above This Line For Recording Data)

## COMMERCIAL OPEN-END MORTGAGE
### FUTURE ADVANCES AND FUTURE OBLIGATIONS ARE SECURED BY THIS REAL ESTATE MORTGAGE

This COMMERCIAL REAL ESTATE MORTGAGE ("Security Instrument") is made on May 5, 2022 between the mortgagor(s) WILLIAM H BARE, whose address is 111 LOST CANYON DRIVE, RACELAND, Kentucky 41169 ("Mortgagor"), and SUMMIT COMMUNITY BANK, INC whose address is 1000 ASHLAND DRIVE, SUITE 501, Ashland, Kentucky 41101 ("Lender"), which is organized and existing under the laws of the State of West Virginia. BARE ARMS LIMITED LIABILITY COMPANY ("Borrower") owes Lender the principal sum of Three Million One Hundred Ninety-five Thousand and 00/100 Dollars (U.S. $3,195,000.00), which is evidenced by the promissory note dated May 5, 2022. Mortgagor in consideration of this loan and any future loans extended by Lender up to a maximum principal amount of Three Million One Hundred Ninety-five Thousand and 00/100 Dollars (U.S. $3,195,000.00) ("Maximum Principal Indebtedness"), and for other valuable consideration, the receipt of which is acknowledged, hereby mortgages, grants and conveys to Lender, its successors and assigns, forever, the following described property located in the County of Lawrence, State of Ohio:

Address: 94 PRIVATE DRIVE 11202, Chesapeake, Ohio 45619
Legal Description: See attached Exhibit A for further description

Together with all easements, appurtenances abutting streets and alleys, improvements, buildings, fixtures, tenements, hereditaments, equipment, rents, income, profits and royalties, personal goods of whatever description and all other rights and privileges including all minerals, oil, gas, water (whether groundwater, subterranean or otherwise), water rights (whether riparian, appropriate or otherwise, and whether or not appurtenant to the above-described real property), wells, well permits, ditches, ditch rights, reservoirs, reservoir rights, reservoir sites, storage rights, dams and water stock that may now, or at any time in the future, be located on and/or used in connection with the above-described real property, payment awards, amounts received from eminent domain, amounts received from any and all insurance payments, and timber which may now or later be located, situated, or affixed on and used in connection therewith (hereinafter called the "Property").

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, prior mortgages, prior deeds of trust, prior deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with this Indebtedness and Security Instrument, whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Security Instrument by reference thereto, with the same force and effect as if fully set forth herein.

© 2004-2020 Compliance Systems, Inc.
4217c3ac-95eb6c8b - 2019.302.1.5
Commercial Real Estate Security Instrument -       Page 1 of 7                    www.compliancesystems.com
DL4007

**INDEBTEDNESS.** This Security Instrument secures the principal amount shown above as may be evidenced by a promissory note or notes of even, prior or subsequent date hereto, including future advances and every other indebtedness of any and every kind now or hereafter owing from Borrower to SUMMIT COMMUNITY BANK, INC. howsoever created or arising, whether primary, secondary or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the agreements and covenants of this Security Instrument and all Related Documents (hereinafter all referred to as the "Indebtedness").

**FUTURE ADVANCES.** To the extent permitted by law, this Security Instrument will secure future advances as if such advances were made on the date of this Security Instrument regardless of the fact that from time to time there may be no balance due under the note and regardless of whether Lender is obligated to make such future advances.

**WARRANTIES.** Mortgagor, for itself, its heirs, personal representatives, successors, and assigns, represents, warrants, covenants and agrees with Lender, its successors and assigns, as follows:

**Performance of Obligations.** Mortgagor promises to perform all terms, conditions, and covenants of this Security Instrument and Related Documents in accordance with the terms contained therein.

**Defense and Title to Property.** At the time of execution and delivery of this instrument, Mortgagor is lawfully seised of the estate hereby conveyed and has the exclusive right to mortgage, grant, convey and assign the Property. Mortgagor covenants that the Property is unencumbered and free of all liens, except for encumbrances of record acceptable to Lender. Further, Mortgagor covenants that Mortgagor will warrant and defend generally the title to the Property against any and all claims and demands whatsoever, subject to the easements, restrictions, or other encumbrances of record acceptable to Lender, as may be listed in the schedule of exceptions to coverage in any abstract of title or title insurance policy insuring Lender's interest in the Property.

**Condition of Property.** Mortgagor promises at all times to preserve and to maintain the Property and every part thereof in good repair, working order, and condition and will from time to time, make all needful and proper repairs so that the value of the Property shall not in any way be impaired.

**Removal of any Part of the Property.** Mortgagor promises not to remove any part of the Property from its present location, except for replacement, maintenance and relocation in the ordinary course of business.

**Alterations to the Property.** Mortgagor promises to abstain from the commission of any waste on or in connection with the Property. Further, Mortgagor shall make no material alterations, additions, or improvements of any type whatsoever to the Property, regardless of whether such alterations, additions, or improvements would increase the value of the Property, nor permit anyone to do so except for tenant improvements and completion of items pursuant to approved plans and specifications, without Lender's prior written consent, which consent may be withheld by Lender in its sole discretion. Mortgagor will comply with all laws and regulations of all public authorities having jurisdiction over the Property including, without limitation, those relating to the use, occupancy and maintenance thereof and shall upon request promptly submit to Lender evidence of such compliance.

**Due on Sale - Lender's Consent.** Mortgagor shall not sell, further encumber or otherwise dispose of, except as herein provided, any or all of its interest in any part of or all of the Property without first obtaining the written consent of Lender. If any encumbrance, lien, transfer or sale or agreement for these is created, Lender may declare immediately due and payable, the entire balance of the Indebtedness.

**Insurance.** Mortgagor promises to keep the Property insured against such risks and in such form as may within the sole discretion of Lender be acceptable, causing Lender to be named as loss payee or if requested by Lender, as mortgagee. The insurance company shall be chosen by Mortgagor subject to Lender's

© 2004-2020 Compliance Systems, Inc.
4217c3ac-95eb6c8b - 2019.302.1.5
Commercial Real Estate Security Instrument -      Page 2 of 7                    www.compliancesystems.com
DL4007

approval, which shall not be unreasonably withheld. All insurance policies must provide that Lender will get a minimum of 10 days notice prior to cancellation. At Lender's discretion, Mortgagor may be required to produce receipts of paid premiums and renewal policies. If Mortgagor fails to obtain the required coverage, Lender may do so at Mortgagor's expense. Mortgagor hereby directs each and every insurer of the Property to make payment of loss to Lender with the proceeds to be applied, only at Lender's option, to the repair and replacement of the damage or loss or to be applied to the Indebtedness with the surplus, if any, to be paid by Lender to Mortgagor.

**Payment of Taxes and Other Applicable Charges.** Mortgagor promises to pay and to discharge liens, encumbrances, taxes, assessments, lease payments and any other charges relating to the Property when levied or assessed against Mortgagor or the Property.

**Environmental Laws and Hazardous or Toxic Materials.** Mortgagor and every tenant have been, are presently and shall continue to be in strict compliance with any applicable local, state and federal environmental laws and regulations. Further, neither Mortgagor nor any tenant shall manufacture, store, handle, discharge or dispose of hazardous or toxic materials as may be defined by any state or federal law on the Property, except to the extent the existence of such materials has been presently disclosed in writing to Lender. Mortgagor will immediately notify Lender in writing of any assertion or claim made by any party as to the possible violation of applicable state and federal environmental laws including the location of any hazardous or toxic materials on or about the Property. Mortgagor indemnifies and holds Lender harmless from, without limitation, any liability or expense of whatsoever nature incurred directly or indirectly out of or in connection with: (a) any environmental laws affecting all or any part of the Property or Mortgagor; (b) the past, present or future existence of any hazardous materials in, on, under, about, or emanating from or passing through the Property or any part thereof or any property adjacent thereto; (c) any past, present or future hazardous activity at or in connection with the Property or any part thereof; and (d) the noncompliance by Mortgagor or Mortgagor's failure to comply fully and timely with environmental laws.

**Financial Information.** Mortgagor agrees to supply Lender such financial and other information concerning its affairs and the status of any of its assets as Lender, from time to time, may reasonably request. Mortgagor further agrees to permit Lender to verify accounts as well as to inspect, copy and to examine the books, records, and files of Mortgagor.

**Lender's Right to Enter.** Lender or Lender's agents shall have the right and access to inspect the Property at all reasonable times in order to attend to Lender's interests and ensure compliance with the terms of this Security Instrument. If the Property, or any part thereof, shall require inspection, repair or maintenance which Mortgagor has failed to provide, Lender, after reasonable notice, may enter upon the Property to effect such obligation; and the cost thereof shall be added to the Indebtedness and paid on Lender's demand by Mortgagor.

**CONDEMNATION.** Mortgagor shall give Lender notice of any action taken or threatened to be taken by private or public entities to appropriate the Property or any part thereof, through condemnation, eminent domain or any other action. Further, Lender shall be permitted to participate or intervene in any of the above described proceedings in any manner it shall at its sole discretion determine. Lender is hereby given full power, right and authority to receive and receipt for any and all damages awarded as a result of the full or partial taking or appropriation and in its sole discretion, to apply said awards to the Indebtedness, whether or not then due or otherwise in accordance with applicable law. Unless Lender otherwise agrees in writing, any application of proceeds to the Indebtedness shall not extend or postpone the due date of the payments due under the Indebtedness or change the amount of such payments.

**MORTGAGOR'S ASSURANCES.** At any time, upon a request of Lender, Mortgagor will execute and deliver to Lender, and if appropriate, cause to be recorded, such further mortgages, assignments, assignments of leases

© 2004-2020 Compliance Systems, Inc.
4217c3ac-95eb6c8b - 2019.302.1.5
Commercial Real Estate Security Instrument -     Page 3 of 7                www.compliancesystems.com
DL4007

and rents, security agreements, pledges, financing statements, or such other document as Lender may require, in Lender's sole discretion, to effectuate, complete and to perfect as well as to continue to preserve the Indebtedness, or the lien or security interest created by this Security Instrument.

**ATTORNEY-IN-FACT.** Mortgagor appoints Lender as attorney-in-fact on behalf of Mortgagor. If Mortgagor fails to fulfill any of Mortgagor's obligations under this Security Instrument or any Related Documents, including those obligations mentioned in the preceding paragraph, Lender as attorney-in-fact may fulfill the obligations without notice to Mortgagor. This power of attorney shall not be affected by the disability of the Mortgagor.

**EVENTS OF DEFAULT.** The following events shall constitute default under this Security Instrument (each an "Event of Default"):

(a) Failure to make required payments when due under Indebtedness;

(b) Failure to perform or keep any of the covenants of this Security Instrument or a default under any of the Related Documents;

(c) The making of any oral or written statement or assertion to Lender that is false or misleading in any material respect by Mortgagor or any person obligated on the Indebtedness;

(d) The death, dissolution, insolvency, bankruptcy or receivership proceeding of Mortgagor or of any person or entity obligated on the Indebtedness;

(e) Any assignment by Mortgagor for the benefit of Mortgagor's creditors:

(f) A material adverse change occurs in the financial condition, ownership, or management of Mortgagor or any person obligated on the Indebtedness: or

(g) Lender deems itself insecure for any reason whatsoever.

**REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, Lender may, without demand or notice, pay any or all taxes, assessments, premiums, and liens required to be paid by Mortgagor, effect any insurance provided for herein, make such repairs, cause the abstracts of title or title insurance policy and tax histories of the Property to be certified to date, or procure new abstracts of title or title insurance and tax histories in case none were furnished to it, and procure title reports covering the Property, including surveys. The amounts paid for any such purposes will be added to the Indebtedness and will bear interest at the rate of interest otherwise accruing on the Indebtedness until paid. In the event of foreclosure, the abstracts of title or title insurance shall become the property of Lender. All abstracts of title, title insurance, tax histories, surveys, and other documents pertaining to the Indebtedness will remain in Lender's possession until the Indebtedness is paid in full.

IN THE EVENT OF THE SALE OF THIS PROPERTY UNDER THE PROCEDURE FOR FORECLOSURE OF A SECURITY INSTRUMENT BY ADVERTISEMENT. AS PROVIDED BY APPLICABLE LAW, OR IN THE EVENT LENDER EXERCISES ITS RIGHTS UNDER THE ASSIGNMENT OF LEASES AND RENTS, THE MORTGAGOR HEREBY WAIVES ANY RIGHT TO ANY NOTICE OTHER THAN THAT PROVIDED FOR SPECIFICALLY BY STATUTE. OR TO ANY JUDICIAL HEARING PRIOR TO SUCH SALE OR OTHER EXERCISE OF RIGHTS.

Upon the occurrence of an Event of Default, Lender may, without notice unless required by law, and at its option, declare the entire Indebtedness due and payable, as it may elect, regardless of the date or dates of maturity thereof and, if permitted by state law, is authorized and empowered to cause the Property to be sold at public auction, and to execute and deliver to the purchaser or purchasers at such sale any deeds of conveyance good and sufficient at law, pursuant to the statute in such case made and provided, and out of the proceeds of the sale to retain the sums then due hereunder and all costs and charges of the sale, including attorneys' fees, rendering any surplus to the party or parties entitled to it. Any such sale or a sale made pursuant to a judgment or a decree for the foreclosure hereof may, at the option of Lender, be made en masse. The commencement of proceedings to foreclose this Security Instrument in any manner authorized by law shall be deemed as exercise of the above option.

© 2004-2020 Compliance Systems. Inc.
4217c3ac-95eb6c8b - 2019.302.1.5
Commercial Real Estate Security Instrument -     Page 4 of 7                    www.compliancesystems.com
DL4007

Upon the occurrence of an Event of Default, Lender shall immediately be entitled to make application for and obtain the appointment of a receiver for the Property and of the earnings, income, issue and profits of it, with the powers as the court making the appointments confers. Mortgagor hereby irrevocably consents to such appointment and waives notice of any application therefor.

**NO WAIVER.** No delay or failure of Lender to exercise any right, remedy, power or privilege hereunder shall affect that right, remedy, power or privilege nor shall any single or partial exercise thereof preclude the exercise of any right, remedy, power or privilege. No Lender delay or failure to demand strict adherence to the terms of this Security Instrument shall be deemed to constitute a course of conduct inconsistent with Lender's right at any time, before or after an event of default, to demand strict adherence to the terms of this Security Instrument and the Related Documents.

**JOINT AND SEVERAL LIABILITY.** If this Security Instrument should be signed by more than one person, all persons executing this Security Instrument agree that they shall be jointly and severally bound, where permitted by law.

**SURVIVAL.** Lender's rights in this Security Instrument will continue in its successors and assigns. This Security Instrument is binding on all heirs, executors, administrators, assigns, and successors of Mortgagor.

**NOTICES AND WAIVER OF NOTICE.** Unless otherwise required by applicable law, any notice or demand given by Lender to any party is considered effective: (i) when it is deposited in the United States Mail with the appropriate postage; (ii) when it is sent via electronic mail; (iii) when it is sent via facsimile; (iv) when it is deposited with a nationally recognized overnight courier service; (v) on the day of personal delivery; or (vi) any other commercially reasonable means. Any such notice shall be addressed to the party given at the beginning of this Security Instrument unless an alternative address has been provided to Lender in writing. To the extent permitted by law, Mortgagor waives notice of Lender's acceptance of this Security Instrument, defenses based on suretyship, any defense arising from any election by Lender under the United States Bankruptcy Code, Uniform Commercial Code, as enacted in the state where Lender is located or other applicable law or in equity, demand, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor and any other notice.

**TO THE EXTENT PERMITTED BY LAW, MORTGAGOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO LENDER EXERCISING ITS RIGHTS UNDER THIS SECURITY INSTRUMENT.**

**WAIVER OF APPRAISEMENT RIGHTS.** Mortgagor waives all appraisement rights relating to the Property to the extent permitted by law.

**LENDER'S EXPENSES.** Mortgagor agrees to pay all expenses incurred by Lender in connection with enforcement of its rights under the Indebtedness, this Security Instrument or in the event Lender is made party to any litigation because of the existence of the Indebtedness or this Security Instrument, as well as court costs, collection charges and reasonable attorneys' fees and disbursements.

**ASSIGNABILITY.** Lender may assign or otherwise transfer this Security Instrument or any of Lender's rights under this Security Instrument without notice to Mortgagor. Mortgagor may not assign this Security Instrument or any part of the Security Instrument without the express written consent of Lender.

**GOVERNING LAW.** This Security Instrument will be governed by the laws of the State of Ohio including all proceedings arising from this Security Instrument.

© 2004-2020 Compliance Systems, Inc.
4217c3ac-95eb6c8b - 2019.302.1.5
Commercial Real Estate Security Instrument -     Page 5 of 7                    www.compliancesystems.com
DL4007

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Security Instrument is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of the Security Instrument without invalidating the remainder of either the affected provision or this Security Instrument.

**WAIVER OF JURY TRIAL. All parties to this Security Instrument hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Security Instrument or any other instrument, document or agreement executed or delivered in connection with this Security Instrument or the Related Documents.**

**ORAL AGREEMENTS DISCLAIMER.** This Security Instrument represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**DEFEASANCE.** If Mortgagor keeps, observes and performs all of the covenants and conditions of this Security Instrument and pays, or causes to be paid, to Lender all of the Indebtedness owing pursuant to the Related Documents, then this Security Instrument will be void, otherwise it will remain in effect.

**By signing this Security Instrument, each Mortgagor acknowledges that all provisions have been read and understood.**

WILLIAM H BARE                    Date
Individually

© 2004-2020 Compliance Systems, Inc.
4217e3ae-95eb6e8b - 2019.302.1.5
Commercial Real Estate Security Instrument -    Page 6 of 7         www.compliancesystems.com
DL4007

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF    KENTUCKY             )
                                )
COUNTY OF   GREENUP             )

The foregoing instrument was acknowledged by WILLIAM H BARE, before me on May 5, 2022. In witness whereof, I hereunto set my hand and, if applicable, my official seal.

My commission expires: 8/24/24

_Sharon Blum_

residing in

GREENUP County.

Identification Number  10823

(Official Seal)

```
           Sharon Blum
          NOTARY PUBLIC
         STATE AT LARGE
            KENTUCKY
           ID # 10823
 MY COMMISSION EXPIRES 08-24-2024
```

THIS INSTRUMENT PREPARED BY:
SUMMIT COMMUNITY BANK, INC
1000 ASHLAND DRIVE, SUITE 501
Ashland, KY 41101-0000

AFTER RECORDING RETURN TO:
SUMMIT COMMUNITY BANK, INC
310 North Main Street
Moorefield, WV 26836-0000

© 2004-2020 Compliance Systems, Inc.
4217c3ae-95eb6c8b - 2019.302.1.5
Commercial Real Estate Security Instrument -       Page 7 of 7          www.compliancesystems.com
DL4007

## EXHIBIT A

### TRACT ONE

**PARCEL ONE:**

The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio, being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 1, more particularly described as follows:

BEGINNING at an Iron Rod (found) on the Lot line between Lots 4 and 5 of the Joseph Brown Estate, said Iron Rod bearing S 9° 28' E a distance of 596.63 feet from a R.R. Spike (found) on the South right of way line of the said County Road, thence S. 9° 30' E passing an iron rod (set) at 165.78 feet, continuing 295.42 feet, in all 461.20 feet to the low water mark of the Ohio River; thence S 77° 01' 38" W with the low water mark 87.16 feet; thence N. 9° 30' W a distance of 466.40 feet; thence N. 80° 27' E a distance of 87.00 feet to the point of BEGINNING, containing 0.93 acres, more or less.

PARCEL NO.: 23-175-0100.002

**PARCEL TWO:**

The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 2, more particularly described as follows:

BEGINNING at a point on the Lot line between Lots 4 and 5 of the said Joseph Brown Estate, said point bearing S 9° 28' E distance of 576.63 feet and S 80° 27' W a distance of 87.00 feet from a R.R. Spike (found) on the South right of way line of the said County Road, thence S 9° 30' E a distance of 486.40 feet to the low water mark of the Ohio River, thence S 77° 01' 38" W with the low water mark 87.15 feet to a point; thence N 9° 30' W a distance of 491.61 feet to the North line of a 20 foot road right of way, thence N. 80° 27' E distance of 87.00 feet to the point of BEGINNING, containing 0.98 acres, more or less.

PARCEL NO.: 23-175-0100.003

**PARCEL THREE:**

The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 3, more particularly described as follows:

BEGINNING at a point on the Lot line between Lots 4 and 5 of the said Joseph Brown Estate, said point bearing S 9° 28' E a distance of 567 .63 feet and S 80° 27' W a distance of 174.00 feet from a R.R. Spike (found) on the South right of way line of the said County Road. thence S 9° 30' E a distance of 491.61 feet to the low water mark of the Ohio River; thence S 77° 01' 38" W with the low water mark of the Ohio River 87.16 feet to a point; thence N 9° 30' W a distance of 496.81 feet to the North line of a 20 foot road right of way; thence N 80° 27' E distance of 87.00 feet to the point of BEGINNING, containing 0.99 acres, more or less.

PARCEL NO.: 23-175-0100.004

**PARCEL FOUR:**
The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 4, more particularly described as follows:

BEGINNING at a point on the Lot line between Lots 4 and 5 of the said Joseph Brown Estate, said point bearing S 9° 28' E a distance of 576.63 feet and S 80° 27' W a distance of 261 feet from a R.R. Spike (found) on the South right-of-way of the said County Road, thence S 9° 30' E a distance of 496.81 feet to the low water mark of the Ohio River; thence S 77° 01' 38" W with the low water mark of the Ohio River 87.15 feet to a point thence N 9° 30' W a distance of 502.01 feet to the North line of a 20 foot road right of way; thence N 80° 27' E a distance of 87.00 feet to the point of BEGINNING, containing 1.00 acre, more or less.

PARCEL NO.: 23-175-0100.005

**PARCEL FIVE:**
The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 5, more particularly described as follows:

BEGINNING at a point on the Lot line between Lots 4 and 5 of the said Joseph Brown Estate, said point bearing S 9° 28' E a distance of 576.63 feet and S 80° 27' W a distance of 348.00 feet from R.R. Spike (found) on the South right of way of the said County Road, thence S 9° 30' E a distance of 502.01 feet to the low water mark of the Ohio River, thence S 77° 01' 38" W with the low water mark of the Ohio River 41.66 feet to a point; thence N 81° 01' W a distance of 510.06 feet to the North line of a 20 foot road right of way, thence N 80° 27' E a distance of 117.12 feet to the point of BEGINNING, containing 0.907 acres, more or less carried on Auditor's duplicate as 0.90 acres.

PARCEL NO.: 23-175-0100.000

[00954546-1]

**PARCEL SIX:**

Situate in the Township of Union, County of Lawrence and State of Ohio.

Being in Section 32, T1, R16. Being on 0.33 acre tract of land and part of 0.85 acre tract of land which same was recorded by plat in Vol. 466, Page 191. The above real estate was transferred on the 1980 Auditor's Duplicate on Page 339, Line 10, and Page 340, Line 7, into what is now known as Riverside Condominiums and shown and delineated in Nat Book 8, Page 16, and real estate being shown as follows:

BEGINNING at NW corner of 0.33 acre tract; thence N 78° 55' E 94 feet to NE corner of tract; thence S 11° 05' E 30.14 feet to NW corner of 0.85 acre tract; thence N 80° 27' E 104.46 feet to point on north line of 0.85 acre tract; thence S 8° 10' E passing between condominiums numbered 5-6-7-8 and 9-10-11-12, 127.49 feet to point on south line of 0.85 acre tract; thence S 80° 27' N 192 feet to SW corner of 0.33 acre tract, and 0.30 acre of 0.85 acre tract.

The described real estate being formerly listed as follows:

| | | |
|---|---|---|
| Unit 9  - 23-174-1410 | Unit 13 - 23-174-1414 | Unit 16 - 23-174-1417 |
| Unit 10 - 23-174-1411 | Unit 14 - 23-174-1415 | Unit 17 - 23-174-1418 |
| Unit 11 - 23-174-1412 | Unit 15 - 23-174-1416 | Unit 18 - 23-174-1419 |
| Unit 12 - 23-174-1413 | | |

This real estate was formerly Riverside Condominiums 9 through 18, but is now vacated to 0.63 acres.

PARCEL NO.: 23-174-1410

**TRACT TWO**

**PARCEL ONE:**

Situated in Range 16, Township 1, Section 32, Union Township, Lawrence County, Ohio, and being described as follows:

BEGINNING at a stake 230 feet South 11 deg. 05' East from the southerly right-of-way line of State Highway 7 and in the Mary Brown line, thence with Brown line South 11 deg. 05' East 223 feet, thence South 78 deg. 55' West 94 feet, thence South 11 deg. 05' East 155 feet, thence, South 78 deg. 55' West 109 feet, thence South 11 deg. 05' East 69 feet, thence South 78 deg. 55' West 253 feet to 20 foot county road, thence with county road North 17 deg. 13' West 442 feet, thence North 74 deg. 25' East 512 feet to the point of beginning, containing 4.27 acres. Being part of *Tract* 4. EXCEPTING AND RESERVING that certain 0.57 acre parcel of real estate conveyed to Andrew Williamson by The Lawrence County Recreation Center for Crippled Children, Inc., by deed dated July 20, 2005 and recorded in the Office of the Clerk of the County Commission of Cabell County, West Virginia, In Deed Book 600 at page 547. EXCEPTING AND RESERVING that certain parcel containing .14 Ac. Conveyed in Deed Book 597, at page 521.

PARCEL NO.: 23-175-0401.000

**PARCEL TWO:**

Situate in Section 32. T1, R16, Union Township, Lawrence County, Ohio, lying West of a 20 foot road right of way South of County Road No. C-1, being a part of Tract 5 of the Joseph Brown Estates and more particularly described as follows:

1. Beginning at an Iron Rod (set) in a drainage ditch on the West line of a 20 foot road right of way, said Iron Rod bearing S 9 degrees 41' E. a distance of 112.14 feet from an Iron Pin (found) on the 20 foot road right of way West line at the SE corner of a Cemetery lot, thence S 9 degrees 41' E. with the said West line 60 feet to an Iron Rod (set);

2. Thence S 70 degrees 50' W a distance of 100 feet to an Iron Rod (set);

3. Thence N 9 degrees 41' W a distance of 60 feet to an Iron Rod (set) in a Drainage Ditch'

4. Thence N 70 degrees 50' E a distance of 100 feet to the point of BEGINNING, containing 0.14 acres, more or less.

Also: the right to use the 20 foot road right of way lying along the East line if the said Tract-5.

PARCEL NO.: 23-175-0401.001

Being the same real estate conveyed to William Bare, married, from MVB Bank, Inc., a West Virginia Banking corporation, by Deed dated July 27, 2021, and appearing of record in Official Record Book 1097, Page 159, in the Office of the Lawrence County Recorder of Ohio. Tract Two more particularly described in that certain deed dated September 24, 2021, from Kelly Marcum, married, to William Bare, married, and appearing of record in Official Record Book 1107, Page 228, in the Office of the Lawrence County Recorder of Ohio.

K0954546 1

**EXHIBIT G**





Doc ID: 004537560009 Type: LEA
Recorded: 05/06/2022 at 02:26:29 PM
Fee Amt: $90.00 Page 1 of 9
Lawrence County, OH
SHARON GOSSETT HAGER COUNTY RECORDER
File# 2022-00002885

BK 1137 PG 782-790



(Space Above This Line For Recording Data)

LOAN NUMBER: ███9376

# ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT OF LEASES AND RENTS ("Assignment") is made on May 5, 2022, between WILLIAM H BARE, whose address is 111 LOST CANYON DRIVE, RACELAND, Kentucky 41169 ("Assignor") and SUMMIT COMMUNITY BANK, INC whose address is 1000 ASHLAND DRIVE, SUITE 501, Ashland, Kentucky 41101 ("Assignee"), which is organized and existing under the laws of the State of West Virginia. Assignor, in consideration of loans extended by Assignee up to a maximum principal amount of Three Million One Hundred Ninety-five Thousand and 00/100 Dollars ($3,195,000.00) and for other valuable consideration, the receipt of which is acknowledged, hereby grants, transfers, assigns and sets over to Assignee all right, title and interest in and to all rents, issues, profits and privileges (now due or which may hereafter become due) of the following described real property:

> Address: 94 PRIVATE DRIVE 11202, Chesapeake, Ohio 45619
> Legal Description: See attached Exhibit A for further description

("Property") which secures the following:

- Loan with a principal amount of $3,195,000.00

Assignor further grants Assignee all leases now or hereafter existing on all or any part of the Property, whether written or oral, or any letting or any agreement for the use of occupancy of any part of the Property which may have been or which may hereafter be made or agreed to between Assignor and any other present, prior, or subsequent owner of the Property, or any interest therein, or which may be made or agreed to by Assignee, its successors or assigns, under the powers herein granted, and any tenant or occupant of all or any part of the Property (collectively, the "Leases" and each, a "Lease").

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, prior mortgages, prior deeds of trust, prior deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with this Assignment whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Assignment by reference thereto, with the same force and effect as if fully set forth herein.

**INDEBTEDNESS.** This Assignment secures the principal amount shown above as may be evidenced by a promissory note or notes of even, prior or subsequent date hereto, including future advances and every other indebtedness of any and every kind now or hereafter owing from BARE ARMS LIMITED LIABILITY COMPANY to SUMMIT COMMUNITY BANK, INC, howsoever created or arising, whether primary, secondary

© 2004-2020 Compliance Systems, Inc.
c15b14c1-4dcd70cc - 2019.302.1.5
Assignment of Leases and Rents - DL4001          Page 1 of 5          www.compliancesystems.com

or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the agreements and covenants of this Assignment and all Related Documents (hereinafter all referred to as the "Indebtedness").

**AMENDMENT OR MODIFICATION OF LEASES.** With respect to any Leases executed upon the Property after the creation of this Assignment and so long as the Indebtedness remains unpaid, Assignor shall not, without the written consent of Assignee: (a) cancel any Leases; (b) accept the surrender of any Leases; (c) modify or alter any Leases in any way, either orally or in writing; (d) reduce the rental set forth in any Leases; (e) consent to the assignment of any lessee's interest under any Leases, or to any subletting thereunder; or (f) make any other assignment, pledge, encumbrance, or any other disposition of any Leases, or of the rents, issues and profits derived from the use of the Property. Any of the above acts, if done without the written consent of Assignee, shall be null and void, and shall constitute a default under the Assignment and the Related Documents.

**REPRESENTATIONS OF ASSIGNOR.** Assignor hereby represents: (a) there are currently no leases, subleases or agreements to lease or sublease all of or any part of the Property other than any existing leases, subleases or agreements to lease or sublease all of or any part of the Property, which Assignor has disclosed in writing to Assignee (b) the Leases are valid and enforceable and no default exists under the Leases; (c) Assignor is entitled to receive all the rents, issues and profits and to enjoy all the rents and benefits mentioned herein and assigned hereby; (d) said rents, issues and profits have not been sold, assigned, transferred, or set over by any instrument now in force and shall not at any time during the life of this Assignment be sold, assigned, transferred, or set over by Assignor, or any other person taking under or through Assignor except as pursuant to this Assignment; and (e) Assignor has the sole right to sell, assign, transfer, and set over the same and to grant and confer upon Assignee the rights, interests, powers, and authorities herein granted and conferred.

**COLLECTION OF RENTS.** Provided no Event of Default exists under the Indebtedness or any of the Related Documents, Assignee agrees not to demand from any lessor or lessee under the Leases or from any other persons liable therefor, any of the rents, issues or profits hereby assigned, but shall permit Assignor to collect all such rents, issues and profits from the Property and the Leases, so long as not collected more than one (1) month in advance of their due date.

**EVENTS OF DEFAULT.** The following events shall constitute default under this Assignment (each an "Event of Default"):

    (a)   Failure to make required payments when due under Indebtedness;

    (b)   Failure to perform or keep any of the covenants of this Assignment or a default under any of the Related Documents;

    (c)   The making of any oral or written statement or assertion to Assignee that is false or misleading in any material respect by Assignor or any person obligated on the Indebtedness;

    (d)   The death, dissolution, insolvency, bankruptcy or receivership proceeding of Assignor or of any person or entity obligated on the Indebtedness;

    (e)   Any assignment by Assignor for the benefit of Assignor's creditors;

    (f)   A material adverse change occurs in the financial condition, ownership, or management of Borrower or any person obligated on the Indebtedness; or

    (g)   Assignee deems itself insecure for any reason whatsoever.

**REMEDIES.** Upon the occurrence of an Event of Default under this Assignment, the Indebtedness or the Related Documents, Assignee may declare all sums secured hereby immediately due and payable and may, at Assignee's option, without notice, either in Assignee's person or by agent and with or without bringing any action or proceeding, or by any receiver appointed by the court, enter upon, take possession of, and manage and operate the Property, and each and every part thereof, and in connection therewith, Assignee may make, enforce, and modify any of the Leases; fix or modify rents; repair, maintain and improve the Property; employ contractors, subcontractors, and workmen in and about the Property; obtain and evict tenants; in its own name, sue for and

© 2004-2020 Compliance Systems, Inc.

c15b14c1-4dcd70ce - 2019.302.1.5

Assignment of Leases and Rents - DL4001       Page 2 of 5       www.compliancesystems.com

CSi

otherwise collect or reserve any and all rents, issues and profits, including those past due and unpaid; employ leasing agents, managing agents, attorneys, and accountants in connection with the enforcement of Assignee's rights hereunder and pay the reasonable fees and expenses thereof; and otherwise do and perform any and all acts which Assignee may deem necessary and appropriate in and about the Property for the protection thereof and of Assignee's rights hereunder and under the Related Documents, and any and all amounts expended by Assignee in connection with the foregoing shall constitute additional Indebtedness secured hereby to the extent permitted by law. Assignee shall apply any moneys collected, as aforesaid, less costs and expenses incurred, upon any Indebtedness secured hereby in such order and manner as Assignee may determine and to the extent permitted by law.

**NOTICES AND WAIVER OF NOTICE.** Unless otherwise required by applicable law, any notice or demand given by Assignee to any party is considered effective when: (i) it is deposited in the United States Mail with the appropriate postage; (ii) when it is sent via electronic mail; (iii) when it is sent via facsimile; (iv) when it is deposited with a nationally recognized overnight courier service; (v) on the day of personal delivery; or (vi) any other commercially reasonable means addressed to the party given at the beginning of this Assignment unless an alternative address has been provided to Assignee in writing. To the extent permitted by law, Assignor waives notice of Assignee's acceptance of this Assignment, defenses based on suretyship, any defense arising from any election by Assignee under the United States Bankruptcy Code, Uniform Commercial Code, as enacted in the state where Assignee is located or other applicable law or in equity, demand, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor and any other notice.

**TO THE EXTENT PERMITTED BY LAW, ASSIGNOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO THE ASSIGNEE EXERCISING ITS RIGHTS UNDER THIS ASSIGNMENT.**

**PAYMENT OF RENTS TO ASSIGNEE.** All tenants or occupants of any part of the Property (including without limitation, all persons claiming any interest as lessor or lessee under any Leases) are hereby authorized to recognize the claims and demands of Assignee without investigation as to the reason for any action taken by Assignee or the validity of the amount of indebtedness owing to or the existence of any default hereunder or under the Related Documents, or the application of payments made by Assignee, of any amounts to be paid to Assignee. Assignee's sole signature shall be sufficient for the exercise of any right under this Assignment and Assignee's sole receipt given for any sums received shall be a full discharge and release therefor to any such tenant or occupant of the Property. Checks for all or any part of the rental collected under this Assignment shall be made to the exclusive order of Assignee.

**ASSIGNABILITY.** Assignee may assign or otherwise transfer this Assignment or any of Assignee's rights under this Assignment without notice to Assignor. Assignor may not assign this Assignment or any part of the Assignment without the express written consent of Assignee.

**ASSIGNEE'S RIGHTS AND REMEDIES.** The rights and remedies of the Assignee under this Assignment are cumulative, and are not in lieu of, but are in addition to all other rights and remedies which Assignee has under this Assignment and the Related Documents.

**SUCCESSORS AND ASSIGNS.** All covenants and agreements contained in this Assignment shall bind, and the rights hereunder shall inure to the respective successors and assigns of the Assignor and the Assignee.

**ENTIRE AGREEMENT; MODIFICATIONS; SEVERABILITY.** This Assignment shall constitute the entire agreement between Assignee and Assignor. Any modification of this Assignment shall be binding only if placed in writing and signed by the Assignee and Assignor. The invalidity of any provision of this Assignment shall not affect the validity of any other provision.

© 2004-2020 Compliance Systems, Inc.
c15b14c1-4dcd70ce - 2019.302.1.5
Assignment of Leases and Rents - DL4001          Page 3 of 5                     www.compliancesystems.com

CSi

**PARAGRAPH HEADINGS; SINGULAR AND PLURAL TERMS.** The titles to the paragraphs of this Assignment are solely for the convenience of the parties and shall not be used to interpret this Assignment. Whenever used, the singular shall include the plural, the plural shall include the singular, and the use of any gender shall be applicable to all genders.

**ATTORNEYS' FEES AND OTHER COSTS.** Assignor agrees to pay all of Lender's costs and expenses incurred in connection with the enforcement of this Assignment, including without limitation, reasonable attorneys' fees, to the extent permitted by law.

**GOVERNING LAW.** This Assignment will be governed by the laws of the State of Ohio including all proceedings arising from this Assignment.

**WAIVER OF JURY TRIAL. All parties to this Assignment hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Assignment or any other instrument, document or agreement executed or delivered in connection with this Assignment or the Related Documents.**

**ORAL AGREEMENTS DISCLAIMER.** This Assignment represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**By signing this Assignment, Assignor acknowledges reading, understanding, and agreeing to all its provisions.**

WILLIAM H BARE                  Date
Individually

© 2004-2020 Compliance Systems, Inc.
e15b14c1-4dcd70ce - 2019.302.1.5
Assignment of Leases and Rents - DL4001          Page 4 of 5          www.compliancesystems.com

CSi

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF    KENTUCKY          )
                             )
COUNTY OF   GREENUP          )

The foregoing instrument was acknowledged by WILLIAM H BARE before me on May 5, 2022. In witness whereof, I hereunto set my hand and, if applicable, my official seal.

My commission expires: 8/24/24

residing in

GREENUP County.                    Identification Number 10823

(Official Seal)

> Sharon Blum
> NOTARY PUBLIC
> STATE AT LARGE
> KENTUCKY
> ID. # 10823
> MY COMMISSION EXPIRES 08-24-2024

THIS INSTRUMENT PREPARED BY:
SUMMIT COMMUNITY BANK, INC
1000 ASHLAND DRIVE, SUITE 501
Ashland, KY 41101-0000

© 2004-2020 Compliance Systems, Inc.
e15b14c1-4dcd70ce - 2019.302.1.5
Assignment of Leases and Rents - DL4001

AFTER RECORDING RETURN TO:
SUMMIT COMMUNITY BANK, INC
310 North Main Street
Moorefield, WV 26836-0000

Page 5 of 5          www.compliancesystems.com

CSi

## EXHIBIT A

### TRACT ONE

**PARCEL ONE:**

The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio, being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 1, more particularly described as follows:

BEGINNING at an Iron Rod (found) on the Lot line between Lots 4 and 5 of the Joseph Brown Estate, said Iron Rod bearing S 9° 28' E a distance of 596.63 feet from a R.R. Spike (found) on the South right of way line of the said County Road, thence S. 9° 30' E passing an iron rod (set) at 165.78 feet, continuing 295.42 feet, in all 461.20 feet to the low water mark of the Ohio River; thence S 77° 01' 38" W with the low water mark 87.16 feet; thence N. 9° 30' W a distance of 466.40 feet; thence N. 80° 27' E a distance of 87.00 feet to the point of BEGINNING, containing 0.93 acres, more or less.

PARCEL NO.: 23-175-0100.002

**PARCEL TWO:**

The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 2, more particularly described as follows:

BEGINNING at a point on the Lot line between Lots 4 and 5 of the said Joseph Brown Estate, said point bearing S 9° 28' E distance of 576.63 feet and S 80° 27' W a distance of 87.00 feet from a R.R. Spike (found) on the South right of way line of the said County Road, thence S 9° 30' E a distance of 486.40 feet to the low water mark of the Ohio River, thence S 77° 01' 38" W with the low water mark 87.15 feet to a point; thence N 9° 30' W a distance of 491.61 feet to the North line of a 20 foot road right of way, thence N. 80° 27' E distance of 87.00 feet to the point of BEGINNING, containing 0.98 acres, more or less.

PARCEL NO.: 23-175-0100.003

**PARCEL THREE:**

The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 3, more particularly described as follows:

{00954546-1 }

BEGINNING at a point on the Lot line between Lots 4 and 5 of the said Joseph Brown Estate, said point bearing S 9° 28' E a distance of 567 .63 feet and S 80° 27' W a distance of 174.00 feet from a R.R. Spike (found) on the South right of way line of the said County Road, thence S 9° 30' E a distance of 491.61 feet to the low water mark of the Ohio River; thence S 77° 01' 38" W with the low water mark of the Ohio River 87.16 feet to a point; thence N 9° 30' W a distance of 496.81 feet to the North line of a 20 foot road right of way; thence N 80° 27' E distance of 87.00 feet to the point of BEGINNING, containing 0.99 acres, more or less.

PARCEL NO.: 23-175-0100.004

**PARCEL FOUR:**
The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 4, more particularly described as follows:

BEGINNING at a point on the Lot line between Lots 4 and 5 of the said Joseph Brown Estate, said point bearing S 9° 28' E a distance of 576.63 feet and S 80° 27' W a distance of 261 feet from a R.R. Spike (found) on the South right-of-way of the said County Road, thence S 9° 30' E a distance of 496.81 feet to the low water mark of the Ohio River; thence S 77° 01' 38" W with the low water mark of the Ohio River 87.15 feet to a point thence N 9° 30' W a distance of 502.01 feet to the North line of a 20 foot road right of way; thence N 80° 27' E a distance of 87.00 feet to the point of BEGINNING, containing 1.00 acre, more or less.

PARCEL NO.: 23-175-0100.005

**PARCEL FIVE:**
The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 5, more particularly described as follows:

BEGINNING at a point on the Lot line between Lots 4 and 5 of the said Joseph Brown Estate, said point bearing S 9° 28' E a distance of 576.63 feet and S 80° 27' W a distance of 348.00 feet from R.R. Spike (found) on the South right of way of the said County Road, thence S 9° 30' E a distance of 502.01 feet to the low water mark of the Ohio River, thence S 77° 01' 38" W with the low water mark of the Ohio River 41.66 feet to a point; thence N 81° 01' W a distance of 510.06 feet to the North line of a 20 foot road right of way, thence N 80° 27' E a distance of 117.12 feet to the point of BEGINNING, containing 0.907 acres, more or less carried on Auditor's duplicate as 0.90 acres.

PARCEL NO.: 23-175-0100.000

**PARCEL SIX:**

Situate in the Township of Union, County of Lawrence and State of Ohio.

Being in Section 32, T1, R16. Being on 0.33 acre tract of land and part of 0.85 acre tract of land which same was recorded by plat in Vol. 466, Page 191. The above real estate was transferred on the 1980 Auditor's Duplicate on Page 339, Line 10, and Page 340, Line 7, into what is now known as Riverside Condominiums and shown and delineated in Nat Book 8, Page 16, and real estate being shown as follows:

BEGINNING at NW corner of 0.33 acre tract; thence N 78° 55' E 94 feet to NE corner of tract; thence S 11° 05' E 30.14 feet to NW corner of 0.85 acre tract; thence N 80° 27' E 104.46 feet to point on north line of 0.85 acre tract; thence S 8° 10' E passing between condominiums numbered 5-6-7-8 and 9-10-11-12, 127.49 feet to point on south line of 0.85 acre tract; thence S 80° 27' N 192 feet to SW corner of 0.33 acre tract, and 0.30 acre of 0.85 acre tract.

The described real estate being formerly listed as follows:

| | | |
|---|---|---|
| Unit 9  - 23-174-1410 | Unit 13 - 23-174-1414 | Unit 16 - 23-174-1417 |
| Unit 10 - 23-174-1411 | Unit 14 - 23-174-1415 | Unit 17 - 23-174-1418 |
| Unit 11 - 23-174-1412 | Unit 15 - 23-174-1416 | Unit 18 - 23-174-1419 |
| Unit 12 - 23-174-1413 | | |

This real estate was formerly Riverside Condominiums 9 through 18, but is now vacated to 0.63 acres.

PARCEL NO.: 23-174-1410

**TRACT TWO**

**PARCEL ONE:**

Situated in Range 16, Township 1, Section 32, Union Township, Lawrence County, Ohio, and being described as follows:

BEGINNING at a stake 230 feet South 11 deg. 05' East from the southerly right-of-way line of State Highway 7 and in the Mary Brown line, thence with Brown line South 11 deg. 05' East 223 feet, thence South 78 deg. 55' West 94 feet, thence South 11 deg. 05' East 155 feet, thence, South 78 deg. 55' West 109 feet, thence South 11 deg. 05' East 69 feet, thence South 78 deg. 55' West 253 feet to 20 foot county road, thence with county road North 17 deg. 13' West 442 feet, thence North 74 deg. 25' East 512 feet to the point of beginning, containing 4.27 acres. Being part of *Tract* 4. EXCEPTING AND RESERVING that certain 0.57 acre parcel of real estate conveyed to Andrew Williamson by The Lawrence County Recreation Center for Crippled Children, Inc., by deed dated July 20, 2005 and recorded in the Office of the Clerk of the County Commission of Cabell County, West Virginia, In Deed Book 600 at page 547. EXCEPTING AND RESERVING that certain parcel containing .14 Ac. Conveyed in Deed Book 597, at page 521.

PARCEL NO.: 23-175-0401.000

{00954546-1}

**PARCEL TWO:**
Situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio, lying West of a 20 foot road right of way South of County Road No. C-1, being a part of Tract 5 of the Joseph Brown Estates and more particularly described as follows:
1. Beginning at an Iron Rod (set) in a drainage ditch on the West line of a 20 foot road right of way, said Iron Rod bearing S 9 degrees 41' E. a distance of 112.14 feet from an Iron Pin (found) on the 20 foot road right of way West line at the SE corner of a Cemetery lot, thence S 9 degrees 41' E. with the said West line 60 feet to an Iron Rod (set);
2. Thence S 70 degrees 50' W a distance of 100 feet to an Iron Rod (set);
3. Thence N 9 degrees 41' W a distance of 60 feet to an Iron Rod (set) in a Drainage Ditch'
4. Thence N 70 degrees 50' E a distance of 100 feet to the point of BEGINNING, containing 0.14 acres, more or less.
Also: the right to use the 20 foot road right of way lying along the East line if the said Tract-5.

PARCEL NO.: 23-175-0401.001

Being the same real estate conveyed to William Bare, married, from MVB Bank, Inc., a West Virginia Banking corporation, by Deed dated July 27, 2021, and appearing of record in Official Record Book 1097, Page 159, in the Office of the Lawrence County Recorder of Ohio. Tract Two more particularly described in that certain deed dated September 24, 2021, from Kelly Marcum, married, to William Bare, married, and appearing of record in Official Record Book 1107, Page 228, in the Office of the Lawrence County Recorder of Ohio.

{00954546 1 }

## **EXHIBIT H**



## GUARANTY OF SPECIFIC TRANSACTION



310 North Main Street Moorefield, WV 26836
Phone number: (877) 776-9722

| LOAN NUMBER | GUARANTY DATE | |
|---|---|---|
| ■9376 | May 5, 2022 | |

**GUARANTOR INFORMATION**
WILLIAM H BARE
111 LOST CANYON DRIVE
RACELAND, KY 41169

Type of Entity: Individual
State of Residence: Kentucky

**BORROWER INFORMATION**
BARE ARMS LIMITED LIABILITY COMPANY
3502 WINCHESTER AVENUE
ASHLAND, KY 41101

Type of Business Entity: Limited Liability Company
State of Organization/Formation: Kentucky

**GUARANTY OF SPECIFIC TRANSACTION.** This Guaranty Of Specific Transaction will be referred to in this document as the "Guaranty."

**LENDER.** "Lender" means SUMMIT COMMUNITY BANK, INC whose address is 1000 ASHLAND DRIVE, SUITE 501, Ashland, Kentucky 41101 , its successors and assigns.

**BORROWER.** "Borrower" means each party identified above to whom Lender has extended credit and financial accommodations.

**GUARANTOR.** "Guarantor" means the party identified above that is undertaking certain liabilities to the Lender, as specified herein.

**OBLIGATIONS.** "Obligations" means any and all indebtedness, obligations, undertakings, covenants, agreements, and liabilities of the Borrower to the Lender, and all claims of the Lender against the Borrower, now existing or hereafter arising, direct or indirect (including participations or any interest of the Lender in indebtedness of the Borrower to others), acquired outright, conditionally, or as collateral security from another, absolute or contingent, joint or several, secured or unsecured, matured or not matured, monetary or nonmonetary, arising out of contract or tort, liquidated or unliquidated, arising by operation of law or otherwise and all extensions, renewals, refundings, replacements, and modifications of any of the foregoing.

**NOTICE TO GUARANTOR.** Lender has agreed to extend credit and financial accommodations to Borrower pursuant to a promissory note executed on even date herewith (the "Note"), and all agreements, instruments, and documents executed or delivered in connection with the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "Related Documents").

Guarantor is affiliated with Borrower, and as such, shall be benefited directly by the transaction contemplated by the Related Documents, and shall execute this Guaranty in order to induce Lender to enter the transaction.

In consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby guarantees, promises and undertakes, both jointly and severally, as follows:

**GUARANTY OF SPECIFIC TRANSACTION.** Guarantor hereby unconditionally, absolutely, and irrevocably guarantees to Lender the full and prompt payment and performance when due (whether at the maturity date or by required prepayment, acceleration, or otherwise) of an Obligation of the Borrower to the Lender as evidenced by a note or agreement dated May 5, 2022, in the principal amount of $3,195,000.00, plus interest, charges, and fees as provided for, including all extensions and renewals thereof, until the Obligation of Borrower is fully paid. Guarantor's liability for future obligations ends on May 5, 2042 ("Termination Date"). After the Termination Date, Guarantor remains liable with respect to an Obligation of Borrower created or incurred prior to the Termination Date or extensions or renewals of, interest accruing on, or fees, costs or expenses incurred with respect to, such Obligation of Borrower on or after the Termination Date.

This is a guaranty of payment and not of collection.

**EXPENSES.** Guarantor hereby agrees, to the extent permitted by law, to pay any and all expenses incurred in enforcing any rights under this Guaranty. Without limiting the foregoing, Guarantor agrees that whenever any attorney is used by the Lender to obtain payment hereunder, to enforce this Guaranty, to adjudicate the rights of the parties hereunder, or to advise the Lender of its rights, the Lender shall be entitled to recover reasonable attorneys' fees, all court costs, and expenses attributable thereto (the "Expenses").

**CONSENT.** The Guarantor consents to all extensions, renewals, and modifications made by the Lender for, or on account of, any indebtedness of Borrower to Lender. Lender may proceed directly against Guarantor in the event of any default by Borrower without resorting to any other persons, to the assets of Borrower, to any collateral security granted by Borrower to Lender, or the liquidation of any collateral security given hereunder to secure this Guaranty. Furthermore, to the extent permitted by law, Guarantor hereby agrees and consents that the Lender may from time to time without notice to Guarantor and without affecting the liability of Guarantor (a) release, impair, sell or otherwise dispose of any security or collateral, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the obligations of Borrower or to proceed against Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest, (g) accept additional security or collateral, (h) determine the allocation

© 2004-2020 Compliance Systems, Inc. 1e363538-561a768c - 2019.302.1.5
Guaranty Of Specific Transaction - DL4011

www.compliancesystems.com

CSi

and application of payments and credits and accept partial payments. (i) determine what, if anything, may at any time be done with reference to any security or collateral, and (j) settle or compromise the amount due or owing or claimed to be due or owing from any Borrower, guarantor, or surety, which settlement or compromise shall not affect the undersigned's liability for the full amount of the guaranteed obligations. To the extent permitted by law, Guarantor expressly consents to and waives notice of all of the above.

**REPRESENTATIONS.** Guarantor represents and warrants that Guarantor has established adequate means of obtaining from sources other than Lender, on a continuing basis, financial and other information pertaining to Borrower's financial condition, and the status of Borrower's performance of obligations imposed by the loan documents, and Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and Lender has made no representation to Guarantor as far as any such matters. Guarantor further represents and warrants that (i) neither this Guaranty nor any other Related Document to which Guarantor is a party will violate any provision of law, rule, or regulation, or any order of any court or other governmental agency to which Guarantor is subject, any provision of any agreement or instrument to which the Guarantor is a party or by which the Guarantor or any of the Guarantor's assets are bound, or be in conflict with, result in a breach of, or constitute a default under any such agreement or instrument; and (ii) no action, approval, filing, or registration with any governmental public body or authority, nor the consent of any other person or entity, nor any other legal formality, is required in connection with the entering into, performance, or enforcement of this Guaranty, except such as have already been obtained or taken and with respect to which a copy or other satisfactory evidence has been provided to Lender.

**SUBROGATION.** If the Guarantor shall make payment to the Lender of all or any part of the Obligations and all the Obligations shall be paid in full, the Lender will, at the Guarantor's request, execute and deliver to the Guarantor appropriate documents, without recourse and without representation or warranty, necessary to evidence the transfer by subrogation to the Guarantor of an interest in the Obligations resulting from such payment by the Guarantor. Notwithstanding any payment or payments made by the Guarantor hereunder, the Guarantor will not exercise any rights of the Lender against the Borrower, nor shall the Guarantor seek contribution from any other Guarantor until all the Obligations shall have been paid and performed in full. If any amount shall be paid to the Guarantor on account of such subrogation rights at any time when all the Obligations will not have been paid in full, such amount shall be held in trust for the benefit of the Lender and shall forthwith be paid to the Lender to be credited and applied to the Obligations, whether matured or unmatured.

**GENERAL WAIVERS.** Guarantor, to the extent permitted by law, hereby waives (a) notice of acceptance of this Guaranty and all notice of the creation, extension or accrual of any of the Obligations, (b) diligence, presentment, protest, demand for payment, notice of dishonor, notice of intent to accelerate, and notice of acceleration, (c) notice of any other nature whatsoever to the extent permitted by law, (d) any requirement that the Lender take any action whatsoever against the Borrower or any other party or file any claim in the event of the bankruptcy of the Borrower, or (e) failure to protect, preserve, or resort to any collateral, and (f) any and all defenses that could be asserted by Borrower or Guarantor, including, but not limited to, any defenses arising out of failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of capacity, statute of limitations, lender liability, unenforceability of any loan document, accord and satisfaction, or usury.

Guarantor, to the extent permitted by law, further waives and agrees not to assert any and all rights, benefits, and defenses that might otherwise be available under the provisions of the governing law that might operate, contrary to Guarantor's agreements in this Guaranty, to limit Guarantor's liability under, or the enforcement of, this Guaranty, including all defenses of suretyship.

**LENDER'S RIGHTS.** Any delay, failure, omission, or lack on the part of the Lender to enforce, assert, or exercise any provision or take any action pursuant to the Related Documents, including any right, power, or remedy conferred on Lender in any of the Related Documents or any action on the part of Lender granting indulgence or extension in any form Guaranty or any Related Documents does not operate as a waiver of the Lender's ability to exercise all of its rights. The Lender may choose to partially exercise rights under this Guaranty and any Related Documents, but that does not prevent the Lender from fully exercising these rights.

**SURVIVAL.** This Guaranty is binding on all heirs, executors, personal representatives, administrators, assigns, and successors of the Guarantor.

**ASSIGNABILITY.** The Lender may, without notice, assign the Obligations, in whole or in part, and each successive assignee of the Obligations so assigned may enforce this Guaranty for its own benefit with respect to the Obligations so assigned. In the event that any person other than the Lender shall become a holder of any of the Obligations, the reference to the Lender shall be construed to refer to each such holder.

**RIGHT OF SET-OFF.** To the extent permitted by law, Guarantor gives Lender the right to set-off any of Guarantor's accounts or property which may be in Lender's possession against any amount owed under this Guaranty. This right of set-off does not extend to any Keogh account, IRA, or similar tax deferred deposit. Further, the Lender shall have available all remedies under applicable state and federal laws, including the garnishment of wages, to the extent permitted by law.

**WAIVER OF JURY TRIAL.** All parties to this Guaranty hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Guaranty or any other instrument, document or agreement executed or delivered in connection with this Guaranty or the Related Documents.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Guaranty is invalid or prohibited by applicable law, that term or provision will be ineffective, but only to the extent required to make it lawful. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Guaranty without invalidating the remainder of the provisions of this Guaranty.

**GOVERNING LAW.** This Guaranty shall be governed by and construed in accordance with the laws of the State of Kentucky except to the extent that federal law controls.

**HEADINGS AND GENDER.** The headings in this Guaranty are for convenience in identifying subject matter. The headings have no limiting effect on the text that follows any particular heading. As the context herein requires, the singular shall include the plural and one gender shall include one or both other genders.

**CSi**

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**ACKNOWLEDGMENT.** Guarantor hereby acknowledges that: (a) the Obligations hereunder shall be joint and several; (b) the liabilities undertaken by Guarantor in this Guaranty are complex in nature; and (c) numerous possible defenses to the enforceability of these liabilities may presently exist and/or may arise hereafter. As part of Lender's consideration for entering into this transaction, Lender has specifically bargained for the waiver and relinquishment by Guarantor of all such defenses, and Guarantor has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type contemplated herein. Given all of the above, Guarantor does hereby represent and confirm to Lender that Guarantor is fully informed regarding, and that Guarantor does thoroughly understand: (i) the nature of all such possible defenses, and (ii) the circumstances under which such defenses may arise, and (iii) the benefits which such defenses might confer upon Guarantor, and (iv) the legal consequences to Guarantor of waiving such defenses. Guarantor acknowledges that Guarantor makes this Guaranty with the intent that this Guaranty and all of the informed waivers herein shall each and all be fully enforceable by Lender, and that Lender is induced to enter into this transaction in material reliance upon the presumed full enforceability thereof.

**By signing this Guaranty, Guarantor acknowledges reading, understanding, and agreeing to all its provisions.**

William H Bare                    5/5/22

WILLIAM H BARE                    Date
Individually

CSi

# EXHIBIT I



## GUARANTY OF SPECIFIC TRANSACTION



310 North Main Street Moorefield, WV 26836
Phone number: (877) 776-9722

| LOAN NUMBER | GUARANTY DATE | |
|---|---|---|
| ▇9376 | May 5, 2022 | |

**GUARANTOR INFORMATION**
CHRISTY N BARE
111 LOST CANYON DRIVE
RACELAND, KY 41169

**Type of Entity:** Individual
**State of Residence:** Kentucky

**BORROWER INFORMATION**
BARE ARMS LIMITED LIABILITY COMPANY
3502 WINCHESTER AVENUE
ASHLAND, KY 41101

**Type of Business Entity:** Limited Liability Company
**State of Organization/Formation:** Kentucky

**GUARANTY OF SPECIFIC TRANSACTION.** This Guaranty Of Specific Transaction will be referred to in this document as the "Guaranty."

**LENDER.** "Lender" means SUMMIT COMMUNITY BANK, INC whose address is 1000 ASHLAND DRIVE, SUITE 501, Ashland, Kentucky 41101 , its successors and assigns.

**BORROWER.** "Borrower" means each party identified above to whom Lender has extended credit and financial accommodations.

**GUARANTOR.** "Guarantor" means the party identified above that is undertaking certain liabilities to the Lender, as specified herein.

**OBLIGATIONS.** "Obligations" means any and all indebtedness, obligations, undertakings, covenants, agreements, and liabilities of the Borrower to the Lender, and all claims of the Lender against the Borrower, now existing or hereafter arising, direct or indirect (including participations or any interest of the Lender in indebtedness of the Borrower to others), acquired outright, conditionally, or as collateral security from another, absolute or contingent, joint or several, secured or unsecured, matured or not matured, monetary or nonmonetary, arising out of contract or tort, liquidated or unliquidated, arising by operation of law or otherwise and all extensions, renewals, refundings, replacements, and modifications of any of the foregoing.

**NOTICE TO GUARANTOR.** Lender has agreed to extend credit and financial accommodations to Borrower pursuant to a promissory note executed on even date herewith (the "Note"), and all agreements, instruments, and documents executed or delivered in connection with the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "Related Documents").

Guarantor is affiliated with Borrower, and as such, shall be benefited directly by the transaction contemplated by the Related Documents, and shall execute this Guaranty in order to induce Lender to enter the transaction.

In consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby guarantees, promises and undertakes, both jointly and severally, as follows:

**GUARANTY OF SPECIFIC TRANSACTION.** Guarantor hereby unconditionally, absolutely, and irrevocably guarantees to Lender the full and prompt payment and performance when due (whether at the maturity date or by required prepayment, acceleration, or otherwise) of an Obligation of the Borrower to the Lender as evidenced by a note or agreement dated May 5, 2022, in the principal amount of $3,195,000.00, plus interest, charges, and fees as provided for, including all extensions and renewals thereof, until the Obligation of Borrower is fully paid. Guarantor's liability for future obligations ends on May 5, 2042 ("Termination Date"). After the Termination Date, Guarantor remains liable with respect to an Obligation of Borrower created or incurred prior to the Termination Date or extensions or renewals of, interest accruing on, or fees, costs or expenses incurred with respect to, such Obligation of Borrower on or after the Termination Date.

This is a guaranty of payment and not of collection.

**EXPENSES.** Guarantor hereby agrees, to the extent permitted by law, to pay any and all expenses incurred in enforcing any rights under this Guaranty. Without limiting the foregoing, Guarantor agrees that whenever any attorney is used by the Lender to obtain payment hereunder, to enforce this Guaranty, to adjudicate the rights of the parties hereunder, or to advise the Lender of its rights, the Lender shall be entitled to recover reasonable attorneys' fees, all court costs, and expenses attributable thereto (the "Expenses").

**CONSENT.** The Guarantor consents to all extensions, renewals, and modifications made by the Lender for, or on account of, any indebtedness of Borrower to Lender. Lender may proceed directly against Guarantor in the event of any default by Borrower without resorting to any other persons, to the assets of Borrower, to any collateral security granted by Borrower to Lender, or the liquidation of any collateral security given hereunder to secure this Guaranty. Furthermore, to the extent permitted by law, Guarantor hereby agrees and consents that the Lender may from time to time without notice to Guarantor and without affecting the liability of Guarantor (a) release, impair, sell or otherwise dispose of any security or collateral, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the obligations of Borrower or to proceed against Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest, (g) accept additional security or collateral, (h) determine the allocation

© 2004-2020 Compliance Systems, Inc. 1e363538-d309882e - 2019.302.1.5
Guaranty Of Specific Transaction - DL4011

Page 1 of 3

www.compliancesystems.com

CSi

and application of payments and credits and accept partial payments, (i) determine what, if anything, may at any time be done with reference to any security or collateral, and (j) settle or compromise the amount due or owing or claimed to be due or owing from any Borrower, guarantor, or surety, which settlement or compromise shall not affect the undersigned's liability for the full amount of the guaranteed obligations. To the extent permitted by law, Guarantor expressly consents to and waives notice of all of the above.

**REPRESENTATIONS.** Guarantor represents and warrants that Guarantor has established adequate means of obtaining from sources other than Lender, on a continuing basis, financial and other information pertaining to Borrower's financial condition, and the status of Borrower's performance of obligations imposed by the loan documents, and Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and Lender has made no representation to Guarantor as far as any such matters. Guarantor further represents and warrants that (i) neither this Guaranty nor any other Related Document to which Guarantor is a party will violate any provision of law, rule, or regulation, or any order of any court or other governmental agency to which Guarantor is subject, any provision of any agreement or instrument to which the Guarantor is a party or by which the Guarantor or any of the Guarantor's assets are bound, or be in conflict with, result in a breach of, or constitute a default under any such agreement or instrument; and (ii) no action, approval, filing, or registration with any governmental public body or authority, nor the consent of any other person or entity, nor any other legal formality, is required in connection with the entering into, performance, or enforcement of this Guaranty, except such as have already been obtained or taken and with respect to which a copy or other satisfactory evidence has been provided to Lender.

**SUBROGATION.** If the Guarantor shall make payment to the Lender of all or any part of the Obligations and all the Obligations shall be paid in full, the Lender will, at the Guarantor's request, execute and deliver to the Guarantor appropriate documents, without recourse and without representation or warranty, necessary to evidence the transfer by subrogation to the Guarantor of an interest in the Obligations resulting from such payment by the Guarantor. Notwithstanding any payment or payments made by the Guarantor hereunder, the Guarantor will not exercise any rights of the Lender against the Borrower, nor shall the Guarantor seek contribution from any other Guarantor until all the Obligations shall have been paid and performed in full. If any amount shall be paid to the Guarantor on account of such subrogation rights at any time when all the Obligations will not have been paid in full, such amount shall be held in trust for the benefit of the Lender and shall forthwith be paid to the Lender to be credited and applied to the Obligations, whether matured or unmatured.

**GENERAL WAIVERS.** Guarantor, to the extent permitted by law, hereby waives (a) notice of acceptance of this Guaranty and all notice of the creation, extension or accrual of any of the Obligations, (b) diligence, presentment, protest, demand for payment, notice of dishonor, notice of intent to accelerate, and notice of acceleration, (c) notice of any other nature whatsoever to the extent permitted by law, (d) any requirement that the Lender take any action whatsoever against the Borrower or any other party or file any claim in the event of the bankruptcy of the Borrower, or (e) failure to protect, preserve, or resort to any collateral, and (f) any and all defenses that could be asserted by Borrower or Guarantor, including, but not limited to, any defenses arising out of failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of capacity, statute of limitations, lender liability, unenforceability of any loan document, accord and satisfaction, or usury.

Guarantor, to the extent permitted by law, further waives and agrees not to assert any and all rights, benefits, and defenses that might otherwise be available under the provisions of the governing law that might operate, contrary to Guarantor's agreements in this Guaranty, to limit Guarantor's liability under, or the enforcement of, this Guaranty, including all defenses of suretyship.

**LENDER'S RIGHTS.** Any delay, failure, omission, or lack on the part of the Lender to enforce, assert, or exercise any provision or take any action pursuant to the Related Documents, including any right, power, or remedy conferred on Lender in any of the Related Documents or any action on the part of Lender granting indulgence or extension in any form Guaranty or any Related Documents does not operate as a waiver of the Lender's ability to exercise all of its rights. The Lender may choose to partially exercise rights under this Guaranty and any Related Documents, but that does not prevent the Lender from fully exercising these rights.

**SURVIVAL.** This Guaranty is binding on all heirs, executors, personal representatives, administrators, assigns, and successors of the Guarantor.

**ASSIGNABILITY.** The Lender may, without notice, assign the Obligations, in whole or in part, and each successive assignee of the Obligations so assigned may enforce this Guaranty for its own benefit with respect to the Obligations so assigned. In the event that any person other than the Lender shall become a holder of any of the Obligations, the reference to the Lender shall be construed to refer to each such holder.

**RIGHT OF SET-OFF.** To the extent permitted by law, Guarantor gives Lender the right to set-off any of Guarantor's accounts or property which may be in Lender's possession against any amount owed under this Guaranty. This right of set-off does not extend to any Keogh account, IRA, or similar tax deferred deposit. Further, the Lender shall have available all remedies under applicable state and federal laws, including the garnishment of wages, to the extent permitted by law.

**WAIVER OF JURY TRIAL. All parties to this Guaranty hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Guaranty or any other instrument, document or agreement executed or delivered in connection with this Guaranty or the Related Documents.**

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Guaranty is invalid or prohibited by applicable law, that term or provision will be ineffective, but only to the extent required to make it lawful. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Guaranty without invalidating the remainder of the provisions of this Guaranty.

**GOVERNING LAW.** This Guaranty shall be governed by and construed in accordance with the laws of the State of Kentucky except to the extent that federal law controls.

**HEADINGS AND GENDER.** The headings in this Guaranty are for convenience in identifying subject matter. The headings have no limiting effect on the text that follows any particular heading. As the context herein requires, the singular shall include the plural and one gender shall include one or both other genders.

**CSi**

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**ACKNOWLEDGMENT.** Guarantor hereby acknowledges that: (a) the Obligations hereunder shall be joint and several; (b) the liabilities undertaken by Guarantor in this Guaranty are complex in nature; and (c) numerous possible defenses to the enforceability of these liabilities may presently exist and/or may arise hereafter. As part of Lender's consideration for entering into this transaction, Lender has specifically bargained for the waiver and relinquishment by Guarantor of all such defenses, and Guarantor has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type contemplated herein. Given all of the above, Guarantor does hereby represent and confirm to Lender that Guarantor is fully informed regarding, and that Guarantor does thoroughly understand: (i) the nature of all such possible defenses, and (ii) the circumstances under which such defenses may arise, and (iii) the benefits which such defenses might confer upon Guarantor, and (iv) the legal consequences to Guarantor of waiving such defenses. Guarantor acknowledges that Guarantor makes this Guaranty with the intent that this Guaranty and all of the informed waivers herein shall each and all be fully enforceable by Lender, and that Lender is induced to enter into this transaction in material reliance upon the presumed full enforceability thereof.

By signing this Guaranty, Guarantor acknowledges reading, understanding, and agreeing to all its provisions.

CHRISTY N BARB                              Date
Individually

# EXHIBIT J



**003%0955%12232024%BAC2947***

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $492,799.97 | 12-23-2024 | 12-23-2025 | ████ 003 | 4A / 650 | BAC2947 | 1245 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  BARE ARMS LIMITED LIABILITY COMPANY
2134 5TH ST RD
HUNTINGTON, WV 25701

**Lender:**  Burke & Herbert Bank & Trust Company
2218 5TH AVE (HUNTINGTON)
2218 5th Avenue
Huntington, WV 25703

---

**Principal Amount: $492,799.97**                                    **Date of Note: December 23, 2024**

**PROMISE TO PAY.** BARE ARMS LIMITED LIABILITY COMPANY ("Borrower") promises to pay to Burke & Herbert Bank & Trust Company ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Hundred Ninety-two Thousand Seven Hundred Ninety-nine & 97/100 Dollars ($492,799.97), together with interest on the unpaid principal balance from December 23, 2024, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 8.000% per annum based on a year of 360 days, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 11 regular payments of $4,245.85 each and one irregular last payment estimated at $485,647.14. Borrower's first payment is due January 23, 2025, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on December 23, 2025, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. The payment amounts are based on an amortization over 228 monthly payments. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**RECEIPT OF PAYMENTS.** All payments must be made in U.S. dollars and must be received by Lender at:

Burke & Herbert Bank & Trust Company
310 North Main Street
Moorefield, WV 26836

All payments must be received by Lender consistent with any written payment instructions provided by Lender.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Burke & Herbert Bank & Trust Company, 310 North Main Street Moorefield, WV 26836.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $50.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 5.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or

## PROMISSORY NOTE
## (Continued)

**Loan No: ███8003**                                                                 **Page 2**

a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**DELINQUENT REAL ESTATE TAXES.** If the Lender is required to pay real estate taxes at any point during the term of the loan to protect its collateral position, Borrower acknowledges and accepts that the Lender shall charge an administrative fee of $500.00 per tax ticket and add that charge to the outstanding balance of the loan.  .

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of West Virginia without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of West Virginia.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $32.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Mortgage dated December 23, 2024, to Lender on real property described as "516 Oak Street, Wurtland, KY" and located in Greenup County, Commonwealth of Kentucky.

(B) a Deed of Trust dated December 23, 2024, to a trustee in favor of Lender on real property described as "2134 5th Street Road, Huntington, WV 25701" and located in Cabell County, State of West Virginia.

(C) a Mortgage dated December 23, 2024, to Lender on real property described as "11202 Private Drive 11202, Chesapeake, OH 45619" and located in Lawrence County, State of Ohio.

(D) a Mortgage dated December 23, 2024, to Lender on real property described as "Real Property located at 3502 Winchester Avenue, Ashland, KY 41101" and located in Boyd County, Commonwealth of Kentucky.

(E) an Assignment of All Rents to Lender on real property described as "Real Property located at 3502 Winchester Avenue, Ashland, KY 41101" and located in Boyd County, Commonwealth of Kentucky.

(F) a Commercial Security Agreement dated December 23, 2024 made and executed between BARE ARMS LIMITED LIABILITY COMPANY and Lender on collateral described as:

All business assets including all inventory, Chattel Paper, Accounts, Accounts Receivables, Equipment, Furniture, Fixtures and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

**PRIOR NOTE.** Note dated August 23, 2022 in the amount of $500,000.00 with a maturity date of August 23, 2023 which was extended with; Change in Terms Agreement dated December 26, 2023; Change in Terms Agreement dated May 22, 2024; and a Change in Terms Agreement dated August 23, 2024.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**SIGNATURE.** h This document is being signed on April 11, 2025.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**WEST VIRGINIA INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the

**PROMISSORY NOTE**
**(Continued)**

Loan No: ████8003

Page 3

collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

BARE ARMS LIMITED LIABILITY COMPANY

By: _Will H Bare_____
    WILLIAM H BARE, Member of BARE ARMS LIMITED
    LIABILITY COMPANY

# **EXHIBIT K**

RECORDATION REQUESTED BY:
Burke & Herbert Bank & Trust Company, 2218 5TH AVE (HUNTINGTON), 2218 5th Avenue, Huntington, WV 25703

WHEN RECORDED MAIL TO:
Burke & Herbert Bank & Trust Company, 2218 5TH AVE (HUNTINGTON), 2218 5th Avenue, Huntington, WV 25703

SEND TAX NOTICES TO:
Burke & Herbert Bank & Trust Company, 2218 5TH AVE (HUNTINGTON), 2218 5th Avenue, Huntington, WV 25703

FOR RECORDER'S USE ONLY



*###############%0745%12232024%#######*

## MORTGAGE

**MAXIMUM LIEN.** The lien of this Mortgage shall not exceed at any one time $492,799.97.

**MATURITY DATE.** The maturity date of the Note is December 23, 2025.

THIS MORTGAGE dated December 23, 2024, is made and executed between WILLIAM H BARE and CHRISTY N BARE, husband and wife, whose address is 94 Private Drive 11202, Chesapeake, OH 45619 (referred to below as "Grantor") and Burke & Herbert Bank & Trust Company, whose address is 2218 5th Avenue, Huntington, Cabell County, WV 25703 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages, grants, and conveys to Lender with covenant of GENERAL WARRANTY a security interest in and lien on all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas,

# GREENUP
# M1085    PG58

## MORTGAGE
## (Continued)

geothermal and similar matters, (the "Real Property") located in Greenup County, Commonwealth of Kentucky:

> See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 516 Oak Street, Wurtland, KY 41144.

INFORMATION REQUIRED BY KRS 382.290. The source from which Grantor derived title to the Real Property or the interest encumbered herein is as follows: Being the same property conveyed to Grantor by deed dated June 26, 2024, of record in Deed Book 677 at Page 718, in the Office of the Clerk of Greenup County, Kentucky.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S WAIVERS. Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

> Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

> Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

# GREENUP
# M1085    PG59

**MORTGAGE**
**(Continued)**                                                    Page 3

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the

**GREENUP**

**M1085     PG60**

# MORTGAGE
## (Continued)

Page 4

Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**No Prohibited Activities.** Grantor is not engaged in, and the Property shall not be used in connection with, any Prohibited Activities. Neither Borrower nor Grantor shall make any payments to Lender from funds derived from Prohibited Activities. Grantor will include in any agreement for the use, occupancy, or possession of the Property a provision expressly prohibiting any person using, occupying, or possessing the Property from engaging in or permitting others to engage in any Prohibited Activities on the Property. If Grantor becomes aware that any such person is likely engaged in or permitting Prohibited Activities on or at the Property, Grantor shall terminate the agreement and take all actions permitted by law to discontinue or cause the discontinuance of such Prohibited Activities. Borrower and Grantor shall keep Lender fully advised of actions and plans to comply with this section. Borrower and Grantor agree to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage. Notwithstanding any provision in this Mortgage or any Related Documents to the contrary, no direct or indirect disclosure to Lender and no knowledge of Lender of the existence of any Prohibited Activities shall estop Lender or waive any right of Lender to invoke any remedy under the Mortgage or any Related Documents for any Prohibited Activities.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or

## MORTGAGE
## (Continued)

**Page 5**

limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Kentucky law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional

# GREENUP

## M1085    PG62

## MORTGAGE
### (Continued)

Page 6

insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will

# GREENUP
## M1085    PG63

## MORTGAGE
### (Continued)

(A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the

**GREENUP**

**M1085     PG64**

## MORTGAGE
### (Continued)                                                         Page 8

award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page

# GREENUP
## M1085    PG65

MORTGAGE
(Continued)

of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of

**GREENUP**

**M1085     PG66**

**MORGAGE**
**(Continued)**                                                    **Page 10**

Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Borrower's or Grantor's existence as a going business or the death of any member, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**GREENUP**

**M1085    PG67**

## MORTGAGE
## (Continued)

Page 11

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Lender in Possession.** Upon acceleration of the Indebtedness or abandonment of the Property and at any time prior to the expiration of any period of redemption following judicial sale, Lender may, without regard to the adequacy of the security for the Indebtedness, enter into possession of and manage and operate, by itself or through a receiver, the Property and collect the Rents, including those past due. Lender may exercise all rights and powers of Lender with respect to the Property either in the name of Grantor or otherwise as Lender shall deem best. Lender shall be entitled to make, enforce, modify or accept surrender of any lease or leases of the Property. Any Rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of Rents, including but not limited to receiver's fees, premiums on the receiver's bonds and reasonable attorneys' fees and then to the other Indebtedness secured by this Mortgage.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender, at Lender's option, may take such steps to protect and enforce Lender's rights as Lender deems appropriate, whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note or in this Mortgage, or in aid of the execution of any power granted in this Mortgage, or for the enforcement of any other appropriate legal or equity remedy, or otherwise as Lender may elect, including the appointment of a receiver for the Property.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor

# GREENUP
## M1085    PG68

MORTGAGE
(Continued)                                                    Page 12

hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fifteen (15) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by

**GREENUP**

**M1085    PG69**

## MORTGAGE
## (Continued)

Page 13

Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the Commonwealth of Kentucky. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of West Virginia without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of West Virginia.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

# GREENUP

## M1085    PG70

## MORTGAGE
### (Continued)

Page 14

**Prohibited Activities.** Notwithstanding anything to the contrary in this Mortgage, neither Borrower nor Grantor shall be entitled to receive any notice of or right to cure an Event of Default related to any Prohibited Activities.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Dower/Homestead Rights.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the Kentucky as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means BARE ARMS LIMITED LIABILITY COMPANY and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or

# GREENUP
## M1085    PG71

**MORTGAGE**
**(Continued)**                                                      Page 15

other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means WILLIAM H BARE and CHRISTY N BARE.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Burke & Herbert Bank & Trust Company, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated December 23, 2024, in the original principal amount of $492,799.97 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is December 23, 2025.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Prohibited Activities.** The words "Prohibited Activities" mean any activity relating to the

GREENUP

M1085    PG72

## MORTGAGE
### (Continued)

Page 16

use, sale, possession, cultivation, manufacture, storage, distribution, or marketing of cannabis, marijuana, or marijuana-based products which constitutes in any manner a violation of any applicable federal, state, or local law or regulation, regardless of whether applicable conflicting law permits the same.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

X _____
WILLIAM H BARE

X _____
CHRISTY N BARE

This Mortgage prepared by: X _____

# GREENUP
## M1085    PG73

**MORTGAGE**
(Continued)

Page **17**

## INDIVIDUAL ACKNOWLEDGMENT

State oF WV
~~COMMONWEALTH OF KENTUCKY~~                                    )
                                                               ) SS
COUNTY OF Cabell_____                                  )

The foregoing instrument was acknowledged before me this _____18_____ day of _____
___April_____, 20 25 by WILLIAM H BARE and CHRISTY N BARE.

_____
(Signature of Person Taking Acknowledgment)

Notary
(Title or Rank)

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Terri Clay
Burke and Herbert Bank
2218 5th Avenue
Huntington, WV 25703
My Commission Expires January 10. 2029

_____
(Commission Number, if any)

1/10/2029
(My commission expires)

# GREENUP
# M1085    PG74

# RECORDING PAGE

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025.  All Rights Reserved.
- KY/WV  C:\LASERPRO\CFI\LPL\G03.FC  TR-1901  PR-23

**GREENUP**

**M1085      PG75**

## EXHIBIT A

Lots Nos. 7 and 8 of the Yates Addition to the City of Wurtland, Greenup County, Kentucky. Lot No. 7 being a lot 40 x 136.2 x 40 x 136.6 feet, and Lot No. 8 being 40 x 136.6 x 40 x 137 feet, in size, and for more particular description of said lots reference is hereby made to that certain plat recorded in Plat Book No. 2 and Deed Book 135, Page 401, Greenup County Court Clerk's Records.

Being the same real estate conveyed to William Bare and Christy Bare, husband and wife, from Sydnicate Labs, LLC, an Ohio limited liability company, by that certain deed dated June 26, 2024, and appearing of record in Deed Book 677, Page 718, in the Office of the Greenup County Court Clerk of Kentucky.

DOCUMENT NO: 656909

RECORDED: 4/24/2025 3:13:08 PM

VIA ERECORDING

TRANSFER TAX: $0.00

TOTAL FEES: S80.00

COUNTY CLERK: ANDREW IMEL

DEPUTY CLERK: Warren Lewis

COUNTY: GREENUP

BOOK: M1085    PAGES: 58-76

**GREENUP**

**M1085    PG76**

# EXHIBIT L

Cabell County
Scott Caserta, Clerk
Instrument 0230495
04/25/2025 @ 12:49:16 PM
TRUST DEED
Book 2993 @ Page 207
Pages Recorded 11
Recording Cost $        38.00

**RECORDATION REQUESTED BY:**
Burke & Herbert Bank & Trust Company
2218 5TH AVE (HUNTINGTON)
2218 5th Avenue
Huntington, WV  25703

**WHEN RECORDED MAIL TO:**
Burke & Herbert Bank & Trust Company
2218 5TH AVE (HUNTINGTON)
2218 5th Avenue
Huntington, WV  25703

**SEND TAX NOTICES TO:**
Burke & Herbert Bank & Trust Company
2218 5TH AVE (HUNTINGTON)
2218 5th Avenue
Huntington, WV  25703

<u>FOR RECORDER'S USE ONLY</u>



*\#\#\#\#\#\#\#\#\#\#\#\#\#\#\#\#\#\#%0340%12232024%\#\#\#\#\#\#*

## DEED OF TRUST

**MAXIMUM LIEN.  The lien of this Deed of Trust shall not exceed at any one time $492,799.97.**

**THIS DEED OF TRUST is dated December 23, 2024, among BARE ARMS LIMITED LIABILITY COMPANY, a Kentucky Limited Liability Company, whose address is 2134 5TH ST RD, HUNTINGTON, WV   25701 ("Grantor"); Burke & Herbert Bank & Trust Company, whose address is 2218 5TH AVE (HUNTINGTON), 2218 5th Avenue, Huntington, WV   25703 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Joshua Stickley, whose address is 310 North Main Street, Moorefield, WV   26836 and Jeremy Adams, whose address is 310 North Main Street, Moorefield, WV   26836 (referred to below as "Trustee").**

CONVEYANCE AND GRANT.  For and in consideration of the Indebtedness and trusts set forth in this Deed of Trust and the sum of ten dollars ($10.00) cash in hand paid, the receipt and sufficiency of which are hereby acknowledged, Grantor does hereby GRANT and CONVEY unto Trustee, with power of sale, the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation any right, title and interest of Grantor in all minerals, oil, gas, geothermal and similar matters, **(the "Real Property")** located in Cabell County, State of West Virginia:

> See **EXHIBIT A**, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

**The Real Property or its address is commonly known as  2134 5th Street Road, Huntington, WV  25701.**

The Property covered by this Deed of Trust specifically includes all fixtures, now or hereafter located on the Real Property, and this Deed of Trust shall serve as a fixture filing for purposes of West Virginia law.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE.  Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY.  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

> Possession and Use.  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

> Duty to Maintain.  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and

BURKE & HERBERT BANK
2218 FIFTH AVENUE
HUNTINGTON WV 25703-1226

maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**No Prohibited Activities.** Grantor is not engaged in, and the Property shall not be used in connection with, any Prohibited Activities. Grantor shall not make any payments to Lender from funds derived from Prohibited Activities. Grantor will include in any agreement for the use, occupancy, or possession of the Property a provision expressly prohibiting any person using, occupying, or possessing the Property from engaging in or permitting others to engage in any Prohibited Activities on the Property. If Grantor becomes aware that any such person is likely engaged in or permitting Prohibited Activities on or at the Property, Grantor shall terminate the agreement and take all actions permitted by law to discontinue or cause the discontinuance of such Prohibited Activities. Grantor shall keep Lender fully advised of actions and plans to comply with this section. Grantor agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust. Notwithstanding any provision in this Deed of Trust or any Related Documents to the contrary, no direct or indirect disclosure to Lender and no knowledge of Lender of the existence of any Prohibited Activities shall estop Lender or waive any right of Lender to invoke any remedy under the Deed of Trust or any Related Documents for any Prohibited Activities.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by West Virginia law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

# DEED OF TRUST
## (Continued)

Page 3

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment out of property not subject to this Deed of Trust before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a fair value basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring,

## DEED OF TRUST
### (Continued)

Page 4

maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**Excess Proceeds.** The lien of this Deed of Trust extends to the interest of Grantor in the proceeds from any sale of the Property pursuant to any prior existing lien, whether by foreclosure or otherwise, to the extent any such proceeds exceed the amount necessary to satisfy any such prior existing lien, and Grantor assigns, transfers and sets over any such excess proceeds to Lender and any trustee or other person conducting any such sale or foreclosure is directed to pay to Lender such excess proceeds to the extent necessary to pay all sums secured by this Deed of Trust in full, notwithstanding any provision to the contrary contained in any prior existing lien.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the

## DEED OF TRUST
## (Continued)

Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense to the extent permitted by law. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not

## DEED OF TRUST
## (Continued)

remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. The Trustee is not required to attend a foreclosure sale in person.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Real or Personal Property or of the time after which any private sale or other intended disposition of the Real or Personal Property is to be made. Reasonable notice shall mean notice given at least twenty (20) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property. A copy of a notice of foreclosure sale shall be served on the Grantor by certified mail, return receipt requested, directed to the address set forth near the beginning of this Deed of Trust, or such other address given to the Lender in writing, and such notice shall be deemed complete when such notice is mailed to the aforesaid address, notwithstanding the fact that such mail may be returned as refused or undeliverable. A copy of such notice shall be served by certified mail, at least twenty (20) days prior to the sale, upon any subordinate lienholder who has previously notified Lender at the address provided for in this Deed of Trust by certified mail of the existence of a subordinate lien. Grantor waives the posting of notice of sale at the courthouse and agrees that any sale made hereunder may be adjourned from time to time without notice other than oral proclamation of such adjournment at the time and place of sale, or at the time and place of any adjournment sale. If foreclosure proceedings are initiated but not completed, Grantor will immediately reimburse Trustee, to the extent permitted by law, for all costs and expenses incurred by them incident to such proceedings.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property. The Trustee or Lender may sell the Property for cash in hand on the day of sale or under any different, other, or additional sale terms as either, in his or its reasonable discretion, determines to be appropriate or advisable.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses

## DEED OF TRUST
## (Continued)

whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. Trustee is authorized to act by agent or attorney in the execution of this trust. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the Clerk of the County Commission of Cabell County, West Virginia. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES.** Except for any notice required under applicable law to be given in another manner, any notice, request, demand or other communication required or permitted to be given under this Deed of Trust shall be effective upon the deposit of such notice, request, demand or other communication, in writing, in the regular United States mail, postage prepaid, addressed to the party in question at its address shown near the beginning of this Deed of Trust. Addresses for notices, requests, demands or other communications may be changed by a notice mailed in the manner as provided above. Any notice of other liens which may be given to Lender pursuant to W. Va. Code Section 38-1-14 shall be in writing, addressed to Lender at Lender's address provided for in this Deed of Trust, which notice shall be effective when received by Lender. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of West Virginia without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of West Virginia.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Prohibited Activities.** Notwithstanding anything to the contrary in this Deed of Trust, Grantor shall not be entitled to receive any notice of or right to cure an Event of Default related to any Prohibited Activities.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If

## DEED OF TRUST
### (Continued)

Page 8

feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** To the extent permitted by applicable law, Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of West Virginia as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Burke & Herbert Bank & Trust Company, and its successors and assigns.

**Borrower.** The word "Borrower" means BARE ARMS LIMITED LIABILITY COMPANY and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Grantor.** The word "Grantor" means BARE ARMS LIMITED LIABILITY COMPANY.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Burke & Herbert Bank & Trust Company, its successors and assigns.

**Note.** The word "Note" means the promissory note dated December 23, 2024, **in the original principal amount of $492,799.97** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Prohibited Activities.** The words "Prohibited Activities" mean any activity relating to the use, sale, possession, cultivation, manufacture, storage, distribution, or marketing of cannabis, marijuana, or marijuana-based products which constitutes in any manner

## DEED OF TRUST
## (Continued)

Page 9

a violation of any applicable federal, state, or local law or regulation, regardless of whether applicable conflicting law permits the same.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Joshua Stickley, whose address is 310 North Main Street, Moorefield, WV 26836 and Jeremy Adams, whose address is 310 North Main Street, Moorefield, WV 26836 and any substitute or successor trustees.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

BARE ARMS LIMITED LIABILITY COMPANY

By: _WILL H Bare_

   **WILLIAM H BARE, Member of BARE ARMS LIMITED LIABILITY COMPANY**

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _West Virginia_                                         )
                                                                )  SS
COUNTY OF _Cabell_                                               )

This record was acknowledged before me on _April 18_____, 20_25_____ by WILLIAM H BARE, Member of
BARE ARMS LIMITED LIABILITY COMPANY.

_Terri Clay_
Notary Public in and for the State of _WV_____

My commission expires _1/10/2029_____

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Terri Clay
Burke and Herbert Bank
2218 5th Avenue
Huntington, WV 25703
My Commission Expires January 10, 2029

---

This Deed of Trust prepared by: X _Burke + Herbert Bank_

                         Name of Signer: _Terri Clay_

---

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025.   All Rights Reserved.   - WV   C:\LASERPRO\CFI\LPL\G01.FC
TR-1901 PR-23

EXHIBIT A

PARCEL ONE:

A piece or parcel of land situated in Guyandotte District, Cabell County, West Virginia, and described as follows, to-wit:

Beginning at an iron pipe in the eastern line of U.S. Route No. 52, said pipe bears N. 43°00' E. 102.00 feet from a concrete monument, and being in an old fence line, and being a corner to the Aaron Wood property and of record in the Cabell County Clerk's Office in Deed Book 280 at Page 391. Thence leaving said fence and said Wood property and with said road N. 43°00' E. 70.10 feet to a concrete monument. Thence with said road N. 18°16' E. 235.70 feet to an iron pipe, said pipe being at the junction of U.S. Route No. 52 and Local Service Route No. 52/2. Thence leaving said U.S. Route 52, and with said Local Service Route No. 52/2 S. 57°00' E 60.00 feet to an iron pipe; Thence with said road S. 45°58' E. 153.00 feet to an iron pipe in the center of Hisey Fork. Thence leaving said road and with the center of said creek S. 35°36' W. 54.20 feet to an iron pipe in the northern line of the Lighthouse Tabernacle Church Property. Thence leaving said creek and with said Church line N. 85°46' W. 20.60 feet to a corner fence post. Thence with said fence S. 68°03' W. 248.70 feet to the beginning containing 0.713 acres, more or less.

Being the same real estate conveyed to Bare Arms Limited Liability Company, a Kentucky limited liability company, from Trademark Properties, Inc., a West Virginia corporation, by that certain deed dated August 9, 2017, and appearing of record in Deed Book 1373, Page 85, in the Office of the Clerk of the County Commission of Cabell County, West Virginia

PARCEL TWO:

A certain tract of land situate in the State of West Virginia, Cabell County, Guyandotte District, on the waters of Hisey Fork of Four Pole Creek, and being more particularly bounded and described as follows:

BEGINNING at an iron pin with an orange plastic cap stamped "Thompson WV LS 746" (found), marking a corner common to the lands now or formerly owned by Red Dawson Construction Co., Inc., (D.B. 1028, Pg. 350), the lands now owned by Trademark Properties, Inc., (D.B. 1187, Pg. 60), Parcel "A" of this survey, and the lands now or formerly owned by James Ray Ross, Jr., et al, (D.B. 1308, Pg. 290), Parcel "B" of this survey, having a coordinate value of N. 509,376.23 and E. 1,551,856.60; thence, leaving the lands of the said Red Dawson Construction Co., Inc., and with the lands of the said Trademark Properties, Inc., and the line between the said Parcels "A" and "B" of this survey, as follows:

North 68° 21' 11" East 106.56 feet, South 87° 31' 29" East 15.65 feet, North 33° 32' 09" East 54.17 feet to a corner located on the east side of Hisey Fork, and being on the southwesterly right-of-way line of West Virginia Secondary State Route No. 52/2,

1

commonly known as Pleasant Valley Drive; thence, leaving the lands of the said Trademark Properties, Inc., and the said Parcel "A" of this survey, and with the southwesterly right-of-way line of the said State Route No. 52/2, continuing with the outside limits of the said Parcel "B" of this survey, as follows:

South 47° 14' 40" East 34.80 feet to a 5/8" reinforcing rod with a red plastic cap stamped "Eastham & Associates" (set), South 18° 13' 27" West 44.29 feet to a 5/8" iron pin (found), marking a corner common to the lands now or formerly owned by James L. Patterson, et ux, (D.B. 1214, Pg. 201); thence, leaving the southwesterly right-of-way line of the said State Route No. 52/2, and with the lands of the said James L. Patterson, et ux, continuing with the outside limits of the said Parcel "B" of this survey,

South 64° 53' 51" West 151.87 feet to an iron pin with an orange plastic cap stamped "Thompson WV LS 746" (found), marking a corner common to the lands of the said Red Dawson Construction Co., Inc.; thence, leaving the lands of the said James L. Patterson, et ux, and with the lands of the said Red Dawson Construction Co., Inc., continuing with the outside limits of the said Parcel "B" of this survey, North 22° 03' 13" West 50.00 feet to the BEGINNING, containing 0.185 acre, more or less, as surveyed under the supervision of Jeffrey M. Eastham, West Virginia Licensed Professional Surveyor No. 2067, on May 3, 2017, and being all of Parcel "B", as shown on the attached plat and made a part of this description.

The above bearings and distances are based on the West Virginia State Plane Coordinate System, South Zone, NAD '83, U.S. survey feet.

Being the same real estate conveyed to Bare Arms Limited Liability Company, a Kentucky limited liability company, from Bare Arms Indoor Range LLC, a West Virginia limited liability company, by that certain deed dated February 16, 2018, and appearing of record in Deed Book 1380, Page 305, in the Office of the Clerk of the County Commission of Cabell County, West Virginia.

2

{00954549-1}

## **EXHIBIT M**

Filed: 04/25/2025    08:39:28 AM
BK 1585    PG 255 - 274 (20)DOC# 10034999
Kevin Johnston, County Clerk
Boyd County, KY
Received By: BILLIE JOHNSON
Recording Fee Total: $80.00
Transfer Tax Paid: $0.00

**RECORDATION REQUESTED BY:**
Burke & Herbert Bank & Trust Company, 2218 5TH AVE (HUNTINGTON), 2218 5th Avenue, Huntington, WV  25703

**WHEN RECORDED MAIL TO:**
Burke & Herbert Bank & Trust Company, 2218 5TH AVE (HUNTINGTON), 2218 5th Avenue, Huntington, WV  25703

**SEND TAX NOTICES TO:**
Burke & Herbert Bank & Trust Company, 2218 5TH AVE (HUNTINGTON), 2218 5th Avenue, Huntington, WV  25703

**FOR RECORDER'S USE ONLY**



*#################%0745%12232024%#######*

## MORTGAGE

**MAXIMUM LIEN.** The lien of this Mortgage shall not exceed at any one time $492,799.97.

**MATURITY DATE.** The maturity date of the Note is December 23, 2025.

THIS MORTGAGE dated December 23, 2024, is made and executed between BARE ARMS LIMITED LIABILITY COMPANY, a Kentucky Limited Liability Company, whose address is 2134 5TH ST RD, HUNTINGTON, WV  25701 (referred to below as "Grantor") and Burke & Herbert Bank & Trust Company, whose address is 2218 5th Avenue, Huntington, Cabell County, WV 25703 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages, grants, and conveys to Lender with covenant of GENERAL WARRANTY a security interest in and lien on all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas,

BK 1585    PG 256                    DOC# 10034999

## MORTGAGE
### (Continued)                                    Page 2

geothermal and similar matters, (the "Real Property") located in Boyd County, Commonwealth of Kentucky:

See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 3502 Winchester Avenue, Ashland, KY 41101.

INFORMATION REQUIRED BY KRS 382.290. The source from which Grantor derived title to the Real Property or the interest encumbered herein is as follows: Being the same property conveyed to Grantor by deed dated June 22, 2016, of record in Deed Book 782 at Page 313 in the Office of the Clerk of Boyd County Kentucky.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all

## MORTGAGE
### (Continued)                                                    Page 3

applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**No Prohibited Activities.** Grantor is not engaged in, and the Property shall not be used in connection with, any Prohibited Activities. Grantor shall not make any payments to Lender

BK 1585   PG 258                    DOC# 10034999

## MORTGAGE
## (Continued)                                          Page 4

from funds derived from Prohibited Activities. Grantor will include in any agreement for the use, occupancy, or possession of the Property a provision expressly prohibiting any person using, occupying, or possessing the Property from engaging in or permitting others to engage in any Prohibited Activities on the Property. If Grantor becomes aware that any such person is likely engaged in or permitting Prohibited Activities on or at the Property, Grantor shall terminate the agreement and take all actions permitted by law to discontinue or cause the discontinuance of such Prohibited Activities. Grantor shall keep Lender fully advised of actions and plans to comply with this section. Grantor agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage. Notwithstanding any provision in this Mortgage or any Related Documents to the contrary, no direct or indirect disclosure to Lender and no knowledge of Lender of the existence of any Prohibited Activities shall estop Lender or waive any right of Lender to invoke any remedy under the Mortgage or any Related Documents for any Prohibited Activities.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Kentucky law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

BK 1585   PG 259                    DOC# 10034999

## MORTGAGE
## (Continued)                                                      Page 5

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance

BK 1585   PG 260                          DOC# 10034999

## MORTGAGE
## (Continued)                                              Page 6

may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear

BK 1585   PG 261                    DOC# 10034999

## MORTGAGE
### (Continued)                                                                 Page 7

Interest at the rate charged under the Note from the date Incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be In addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property In fee simple, free and clear of all liens and encumbrances other than those set forth In the Real Property description or In the Existing Indebtedness section below or in any title Insurance policy, title report, or final title opinion Issued In favor of, and accepted by, Lender In connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the Interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party In such proceeding, but Lender shall be entitled to participate In the proceeding and to be represented In the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor In this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing In nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid In full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such Indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter Into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement Is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances

BK 1585   PG 262                    DOC# 10034999

## MORTGAGE
## (Continued)                                                    Page 8

under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured

BK 1585   PG 263                 DOC# 10034999

## MORTGAGE
### (Continued)                                                    Page 9

party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

BK 1585   PG 264                    DOC# 10034999

## MORTGAGE
### (Continued)                                                    Page 10

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any

BK 1585    PG 265                DOC# 10034999

## MORTGAGE
### (Continued)                                                              Page 11

suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Lender In Possession.** Upon acceleration of the Indebtedness or abandonment of the Property and at any time prior to the expiration of any period of redemption following judicial sale, Lender may, without regard to the adequacy of the security for the Indebtedness, enter into possession of and manage and operate, by itself or through a receiver, the Property and collect the Rents, including those past due. Lender may exercise all rights and powers of Lender with respect to the Property either in the name of Grantor or otherwise as Lender shall deem best. Lender shall be entitled to make, enforce, modify or accept surrender of any lease or leases of the Property. Any Rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of Rents, including but not limited to receiver's fees, premiums on the receiver's bonds and reasonable attorneys' fees and then to the other Indebtedness secured by this Mortgage.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

BK 1585   PG 266                    DOC# 10034999

## MORTGAGE
### (Continued)                                    Page 12

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender, at Lender's option, may take such steps to protect and enforce Lender's rights as Lender deems appropriate, whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note or in this Mortgage, or in aid of the execution of any power granted in this Mortgage, or for the enforcement of any other appropriate legal or equity remedy, or otherwise as Lender may elect, including the appointment of a receiver for the Property.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fifteen (15) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and

BK 1585  PG 267                    DOC# 10034999

## MORTGAGE
## (Continued)                                                        Page 13

expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the Commonwealth of Kentucky. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of West Virginia without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of West Virginia.

BK 1585  PG 268                    DOC# 10034999

## MORTGAGE
### (Continued)                                         Page 14

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Prohibited Activities.** Notwithstanding anything to the contrary in this Mortgage, Grantor shall not be entitled to receive any notice of or right to cure an Event of Default related to any Prohibited Activities.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Dower/Homestead Rights.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the Kentucky as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as

BK 1585    PG 269                          DOC# 10034999

## MORTGAGE
### (Continued)

Page 15

the context may require.  Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.**  The word "Borrower" means BARE ARMS LIMITED LIABILITY COMPANY and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.**  The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.**  The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.**  The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.**  The word "Grantor" means BARE ARMS LIMITED LIABILITY COMPANY.

**Guarantor.**  The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.**  The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.**  The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled.  The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws.  The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.**  The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.**  The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.**  The word "Lender" means Burke & Herbert Bank & Trust Company, its successors and assigns.

BK 1585   PG 270                    DOC# 10034999

# MORTGAGE
## (Continued)                                            Page 16

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated December 23, 2024, in the original principal amount of $492,799.97 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is December 23, 2025.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Prohibited Activities.** The words "Prohibited Activities" mean any activity relating to the use, sale, possession, cultivation, manufacture, storage, distribution, or marketing of cannabis, marijuana, or marijuana-based products which constitutes in any manner a violation of any applicable federal, state, or local law or regulation, regardless of whether applicable conflicting law permits the same.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

BK 1585   PG 271          DOC# 10034999

## MORTGAGE
### (Continued)

Page 17

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

BARE ARMS LIMITED LIABILITY COMPANY

By: _William H Bare_

WILLIAM H BARE, Member of BARE ARMS LIMITED LIABILITY COMPANY

This Mortgage prepared by: X _____

BK 1585    PG 272                    DOC# 10034999

## MORTGAGE
## (Continued)                                                    Page 18

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

State of WV
~~COMMONWEALTH OF KENTUCKY~~                            )
                                                       ) SS
COUNTY OF ___Cabell_____                         )

The foregoing instrument was acknowledged before me this ____18_____ day of _____
___April_____, 20_25_ by WILLIAM H BARE, Member of BARE ARMS LIMITED
LIABILITY COMPANY, on behalf of BARE ARMS LIMITED LIABILITY COMPANY, a limited
liability company.

_____
(Signature of Person Taking Acknowledgment)

___Notary_____
(Title or Rank)

_____
(Commission Number, if any)

___1/10/2029_____
(My commission expires)

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Terri Clay
Burke and Herbert Bank
2218 5th Avenue
Huntington, WV 25703
My Commission Expires January 10, 2029

BK 1585    PG 273                    DOC# 10034999

## RECORDING PAGE

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025.   All Rights Reserved.
- KY/WV  C:\LASERPRO\CFI\LPL\G03.FC  TR-1901  PR-23

BK 1585    PG 274                    DOC# 10034999

## EXHIBIT A

**PARCEL I:**

Lying, being and situated in Ashland, Boyd County, Kentucky, and being a tract of land fronting on the Ashland-Catlettsburg Turnpike (now known as Winchester Avenue) and bounded as follows:

Beginning at a stake two hundred (200) feet from Henderson's northeast corner; thence east with line of said Winchester Avenue fifty-one (51) feet to the northwest corner of the property of John Weinfurtner; thence south two hundred and seven (207) feet along the line of said Weinfurtner's property to line of Chesapeake and Ohio Railway's right-of-way; thence west along said Chesapeake and Ohio Railway fifty-one (51) feet to a stake; thence north two hundred and thirty (230) feet to the Beginning.

**PARCEL II:**

Situated in Ashland, Boyd County, Kentucky, and being more particularly described as follows:

Beginning at a point in the southwesterly line of Winchester Avenue, which point is S. 38-42 E., a distance of 150 feet along said line of Winchester Avenue from an iron pipe, which iron pipe is a common corner to property of Humble Oil & Refining Company and the Kroger Company; thence leaving Winchester Avenue and with lines of property of Humble Oil & Refining Company, (2 calls), S 49-45 W., a distance of 165 feet, and thence N. 38-42 W., a distance of 72.65 feet to the line of property of Harlan Mullins; thence with the rear line of the Harlan Mullins' property, and such line extended, southwesterly a distance of 111 feet, more or less, to the right-of-way line of the Chesapeake and Ohio Railway Company; thence with the northeasterly line of said right-of-way line, southeasterly a distance of 125 feet, more or less, to a point, corner to property of Charles C. Ruggles; thence with the northwesterly property line of the Charles C. Ruggles property N. 50-48 E., a distance of 230 feet to Winchester Avenue; thence with the southwesterly line of Winchester Avenue, N 38-42 W., a distance of 50 feet to the point of beginning, but subject to a right-of-way and easement granted by Rex Real Estate Exchange and Development Company to Humble Oil & Refining Company in Deed of record in Deed Book 388, Page 310, in the Office of the Clerk of the Boyd County Court of Kentucky.

Being the same real estate conveyed to Bare Arms Limited Liability Company, a Kentucky limited liability company, from Dale L. Hensley and Patricia Hensley, husband and wife, by deed dated June 22, 2016, and appearing of record in Deed Book 782, Page 313 in the Office of the Boyd County Court Clerk of Kentucky.

**EXHIBIT N**

Filed: 04/25/2025    08:39:29 AM
BK 1585    PG 275 - 287 (13)DOC# 10035000
Kevin Johnston, County Clerk
Boyd County, KY
Received By: BILLIE JOHNSON
Recording Fee Total: $74.00
Transfer Tax Paid: $0.00

**RECORDATION REQUESTED BY:**
Burke & Herbert Bank & Trust Company, 2218 5TH AVE (HUNTINGTON), 2218 5th Avenue, Huntington, WV  25703

**WHEN RECORDED MAIL TO:**
Burke & Herbert Bank & Trust Company, 2218 5TH AVE (HUNTINGTON), 2218 5th Avenue, Huntington, WV  25703

**SEND TAX NOTICES TO:**
Burke & Herbert Bank & Trust Company, 2218 5TH AVE (HUNTINGTON), 2218 5th Avenue, Huntington, WV  25703

**FOR RECORDER'S USE ONLY**



*#################%0115%12232024%#######*

## ASSIGNMENT OF RENTS

**MATURITY DATE.** The maturity date of the Note is December 23, 2025.

THIS ASSIGNMENT OF RENTS dated **December 23, 2024,** is made and executed between **BARE ARMS LIMITED LIABILITY COMPANY,** a Kentucky Limited Liability Company, whose address is **2134 5TH ST RD, HUNTINGTON, WV  25701** (referred to below as "Grantor") and **Burke & Herbert Bank & Trust Company,** whose address is **2218 5th Avenue, Huntington, Cabell County, WV  25703** (referred to below as "Lender").

**ASSIGNMENT.** For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Boyd County, Commonwealth of Kentucky:

See Exhibit A, which is attached to this Assignment and made a part of this Assignment as if fully set forth herein.

BK 1585   PG 276              DOC# 10035000

## ASSIGNMENT OF RENTS
### (Continued)                                    Page 2

The Property or its address is commonly known as **3502 Winchester Avenue, Ashland, KY 41101.**

**INFORMATION REQUIRED BY KRS 382.290.** The source from which Grantor derived title to the Property or the interest encumbered herein is as follows: Being the same property conveyed to Grantor by deed dated June 22, 2016, of record in Deed Book 782 at Page 313 in the Office of the Clerk of Boyd County Kentucky.

**COLLATERAL DESCRIPTION.** The word "Rents" as used in this Assignment means all of Grantor's present and future rights, title and interest in, to and under the following described specific Lease of all or a portion of the property described in the "Assignment" section herein.

The following is a general description of the specific lease:

| | |
|---|---|
| **LEASE TYPE:** | Term |
| Lease Date: | June 4, 2024 |
| Start Date: | September 1, 2024 |
| End Date: | August 31, 2027 |
| Lessee(s): | Armco Armament, LLC; 3502 Winchester Avenue; Ashland, KY 41101 |
| Description of the Premises: | 3502 Winchester Avenue, Ashland, KY |
| Rental Amount: | 5050.84 |
| Deposit Amount: | |
| Lease Terms: | Three Years |
| Recording Data: | |

**THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:

**Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of

BK 1585    PG 277                    DOC# 10035000

## ASSIGNMENT OF RENTS
### (Continued)                                         Page 3

Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the Commonwealth of Kentucky and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

BK 1585    PG 278                    DOC# 10035000

## ASSIGNMENT OF RENTS
### (Continued)

Page 4

**NO PROHIBITED ACTIVITIES.** Grantor is not engaged in, and the Property shall not be used in connection with, any Prohibited Activities. Grantor shall not make any payments to Lender from funds derived from Prohibited Activities. Grantor will include in any agreement for the use, occupancy, or possession of the Property a provision expressly prohibiting any person using, occupying, or possessing the Property from engaging in or permitting others to engage in any Prohibited Activities on the Property. If Grantor becomes aware that any such person is likely engaged in or permitting Prohibited Activities on or at the Property, Grantor shall terminate the agreement and take all actions permitted by law to discontinue or cause the discontinuance of such Prohibited Activities. Grantor shall keep Lender fully advised of actions and plans to comply with this section. Grantor agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Assignment. Notwithstanding any provision in this Assignment or any Related Documents to the contrary, no direct or indirect disclosure to Lender and no knowledge of Lender of the existence of any Prohibited Activities shall estop Lender or waive any right of Lender to invoke any remedy under the Assignment or any Related Documents for any Prohibited Activities.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

    **Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

    **Other Defaults.** Grantor fails to comply with or to perform any other term, obligation,

BK 1585   PG 279                    DOC# 10035000

## ASSIGNMENT OF RENTS
### (Continued)

Page 5

covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default on Other Payments.** Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Assignment or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

BK 1585   PG 280                 DOC# 10035000

## ASSIGNMENT OF RENTS
### (Continued)                                         Page 6

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors'

BK 1585    PG 281                    DOC# 10035000

## ASSIGNMENT OF RENTS
### (Continued)                                    Page 7

reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law.  Grantor also will pay any court costs, in addition to all other sums provided by law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Assignment will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the Commonwealth of Kentucky. In all other respects, this Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of West Virginia without regard to its conflicts of law provisions.  However, if there ever is a question about whether any provision of this Assignment is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable.  The loan transaction that is evidenced by the Note and this Assignment has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of West Virginia.

**Merger.** There shall be no merger of the interest or estate created by this Assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1)  In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require.  (2)  If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several.  This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors.  If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit.  (3)  The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment.  No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's

BK 1585   PG 282                DOC# 10035000

## ASSIGNMENT OF RENTS
### (Continued)                                         Page 8

rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Prohibited Activities.** Notwithstanding anything to the contrary in this Assignment, Grantor shall not be entitled to receive any notice of or right to cure an Event of Default related to any Prohibited Activities.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**Waive Jury.** All parties to this Assignment hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words

BK 1585   PG 283                    DOC# 10035000

## ASSIGNMENT OF RENTS
### (Continued)                                                         Page 9

and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means BARE ARMS LIMITED LIABILITY COMPANY.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means BARE ARMS LIMITED LIABILITY COMPANY.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment.

**Lease.** The word "Lease" means the lease of the Property dated June 4, 2024, between Landlord, as defined in Related Documents, and Grantor.

**Lender.** The word "Lender" means Burke & Herbert Bank & Trust Company, its successors and assigns.

**Note.** The word "Note" means the promissory note dated December 23, 2024, in the original principal amount of $492,799.97 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is December 23, 2025.

**Prohibited Activities.** The words "Prohibited Activities" mean any activity relating to the use, sale, possession, cultivation, manufacture, storage, distribution, or marketing of cannabis, marijuana, or marijuana-based products which constitutes in any manner a violation of any applicable federal, state, or local law or regulation, regardless of whether applicable conflicting law permits the same.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BK 1585    PG 284                    DOC# 10035000

## ASSIGNMENT OF RENTS
### (Continued)                                          Page 10

Rents. The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

**THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON DECEMBER 23, 2024.**

**GRANTOR:**


**BARE ARMS LIMITED LIABILITY COMPANY**

By: _William H Bare_____
    **WILLIAM H BARE, Member of BARE ARMS LIMITED LIABILITY COMPANY**


This ASSIGNMENT OF RENTS prepared by: X _____

BK 1585   PG 285                    DOC# 10035000

## ASSIGNMENT OF RENTS
### (Continued)                                        Page 11

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

State OF WV
~~COMMONWEALTH OF KENTUCKY~~                          )
                                                     ) SS
COUNTY OF __Cabell_____                 )

The foregoing instrument was acknowledged before me this ____*18*____ day of _____ __April_____, 20*25* by WILLIAM H BARE, Member of BARE ARMS LIMITED LIABILITY COMPANY, on behalf of BARE ARMS LIMITED LIABILITY COMPANY, a limited liability company.

_____
(Signature of Person Taking Acknowledgment)

__Notary_____
(Title or Rank)

_____
(Commission Number, if any)

__1/10/2029_____
(My commission expires)

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Terri Clay
Burke and Herbert Bank
2218 5th Avenue
Huntington, WV 25703
My Commission Expires January 10, 2029

BK 1585   PG 286                    DOC# 10035000

**RECORDING PAGE**

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025.   All Rights Reserved.
- KY/WV  C:\LASERPRO\CFI\LPL\G14.FC  TR-1901  PR-23

BK 1585   PG 287                    DOC# 10035000

## EXHIBIT A

**PARCEL I:**
Lying, being and situated in Ashland, Boyd County, Kentucky, and being a tract of land fronting on the Ashland-Catlettsburg Turnpike (now known as Winchester Avenue) and bounded as follows:

Beginning at a stake two hundred (200) feet from Henderson's northeast corner; thence east with line of said Winchester Avenue fifty-one (51) feet to the northwest corner of the property of John Weinfurtner; thence south two hundred and seven (207) feet along the line of said Weinfurtner's property to line of Chesapeake and Ohio Railway's right-of-way; thence west along said Chesapeake and Ohio Railway fifty-one (51) feet to a stake; thence north two hundred and thirty (230) feet to the Beginning.

**PARCEL II:**
Situated in Ashland, Boyd County, Kentucky, and being more particularly described as follows:

Beginning at a point in the southwesterly line of Winchester Avenue, which point is S. 38-42 E., a distance of 150 feet along said line of Winchester Avenue from an iron pipe, which iron pipe is a common corner to property of Humble Oil & Refining Company and the Kroger Company; thence leaving Winchester Avenue and with lines of property of Humble Oil & Refining Company, (2 calls), S 49-45 W., a distance of 165 feet, and thence N. 38-42 W., a distance of 72.65 feet to the line of property of Harlan Mullins; thence with the rear line of the Harlan Mullins' property, and such line extended, southwesterly a distance of 111 feet, more or less, to the right-of-way line of the Chesapeake and Ohio Railway Company; thence with the northeasterly line of said right-of-way line, southeasterly a distance of 125 feet, more or less, to a point, corner to property of Charles C. Ruggles; thence with the northwesterly property line of the Charles C. Ruggles property N. 50-48 E., a distance of 230 feet to Winchester Avenue; thence with the southwesterly line of Winchester Avenue, N 38-42 W., a distance of 50 feet to the point of beginning, but subject to a right-of-way and easement granted by Rex Real Estate Exchange and Development Company to Humble Oil & Refining Company in Deed of record in Deed Book 388, Page 310, in the Office of the Clerk of the Boyd County Court of Kentucky.

Being the same real estate conveyed to Bare Arms Limited Liability Company, a Kentucky limited liability company, from Dale L. Hensley and Patricia Hensley, husband and wife, by deed dated June 22, 2016, and appearing of record in Deed Book 782, Page 313 in the Office of the Boyd County Court Clerk of Kentucky.

**EXHIBIT O**

Doc ID: 004741090024 Type: MTG
Recorded: 04/23/2025 at 01:40:06 PM
Fee Amt: $215.00 Page 1 of 24
Lawrence County, OH
Lori A. Morris County Recorder
File# 2025-00001943

BK **1262** PG**499-522**

RECORDATION REQUESTED BY:
Burke & Herbert Bank & Trust Company, 2218 5TH AVE (HUNTINGTON), 2218 5th Avenue, Huntington, WV  25703

WHEN RECORDED MAIL TO:
Burke & Herbert Bank & Trust Company, 2218 5TH AVE (HUNTINGTON), 2218 5th Avenue, Huntington, WV  25703

SEND TAX NOTICES TO:
Burke & Herbert Bank & Trust Company, 2218 5TH AVE (HUNTINGTON), 2218 5th Avenue, Huntington, WV  25703

FOR RECORDER'S USE ONLY



*##################%0745%12232024%#######*

## MORTGAGE

**MAXIMUM LIEN.** The maximum amount of loan indebtedness secured by this Mortgage shall not exceed at any one time $492,799.97.

THIS MORTGAGE dated December 23, 2024, is made and executed between WILLIAM H BARE, whose address is 94 Private Drive 11202, Chesapeake, OH  45619 (referred to below as "Grantor") and Burke & Herbert Bank & Trust Company, whose address is 2218 5th Avenue, Huntington, WV  25703 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor grants, mortgages and conveys to Lender, with mortgage covenants and upon the statutory condition, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Lawrence County, State of Ohio:

**MORTGAGE**
**(Continued)**                                                                        Page 2

See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

**The Real Property or its address is commonly known as  94 Private Drive 11202, Chesapeake, OH  45619.**

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.**  Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.**  Grantor warrants that:  (a) this Mortgage is executed at Borrower's request and not at the request of Lender;  (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor;  (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and  (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and (3)  collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use,

**MORTGAGE**
**(Continued)**                                                          Page 3

---

Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the

**MORTGAGE**
**(Continued)**                                                    **Page 4**

Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**No Prohibited Activities.** Grantor is not engaged in, and the Property shall not be used in connection with, any Prohibited Activities. Neither Borrower nor Grantor shall make any payments to Lender from funds derived from Prohibited Activities. Grantor will include in any agreement for the use, occupancy, or possession of the Property a provision expressly prohibiting any person using, occupying, or possessing the Property from engaging in or permitting others to engage in any Prohibited Activities on the Property. If Grantor becomes aware that any such person is likely engaged in or permitting Prohibited Activities on or at the Property, Grantor shall terminate the agreement and take all actions permitted by law to discontinue or cause the discontinuance of such Prohibited Activities. Borrower and Grantor shall keep Lender fully advised of actions and plans to comply with this section. Borrower and Grantor agree to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage. Notwithstanding any provision in this Mortgage or any Related Documents to the contrary, no direct or indirect disclosure to Lender and no knowledge of Lender of the existence of any Prohibited Activities shall estop Lender or waive any right of Lender to invoke any remedy under the Mortgage or any Related Documents for any Prohibited Activities.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any

# MORTGAGE
## (Continued)

Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Ohio law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable

**MORTGAGE**
**(Continued)**                                                      **Page 6**

value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance

**MORTGAGE**
**(Continued)**                                                        **Page 7**

with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of

## MORTGAGE
## (Continued)

Page 8

governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording,

**MORTGAGE**
**(Continued)**                                                                    Page 9

---

perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or

## MORTGAGE
## (Continued)

rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the

## MORTGAGE
## (Continued)

Page 11

Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Borrower's or Grantor's existence as a going business or the death of any member, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**MORTGAGE**
**(Continued)** Page 12

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

## MORTGAGE
## (Continued)

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its

**MORTGAGE**
**(Continued)** Page 14

address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Ohio. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of West Virginia without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of West Virginia.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any

## MORTGAGE
### (Continued)

course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Prohibited Activities.** Notwithstanding anything to the contrary in this Mortgage, neither Borrower nor Grantor shall be entitled to receive any notice of or right to cure an Event of Default related to any Prohibited Activities.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Release of Dower.** Grantor, by executing this Mortgage, releases to Lender all of Grantor's right and expectancy of dower in the Property.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means BARE ARMS LIMITED LIABILITY COMPANY and

## MORTGAGE
## (Continued)

includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means WILLIAM H BARE.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Burke & Herbert Bank & Trust Company, its successors and assigns.

## MORTGAGE
## (Continued)

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated December 23, 2024, in the original principal amount of **$492,799.97** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Prohibited Activities.** The words "Prohibited Activities" mean any activity relating to the use, sale, possession, cultivation, manufacture, storage, distribution, or marketing of cannabis, marijuana, or marijuana-based products which constitutes in any manner a violation of any applicable federal, state, or local law or regulation, regardless of whether applicable conflicting law permits the same.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**MORTGAGE**
**(Continued)**                                                   **Page 18**

═══════════════════════════════════════════════════════════════

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X WILLIAM H BARE
**WILLIAM H BARE**

────────────────────────────────────────────────────────────

This instrument was prepared by Terri Clay, Commercial Banking Administrator, Burke & Herbert Bank & Trust Company.

────────────────────────────────────────────────────────────

**MORTGAGE**
**(Continued)**

Page 19

## INDIVIDUAL ACKNOWLEDGMENT

State of _West Virginia_                    )
                                             ) SS
County of _Cabell_                          )

This instrument was acknowledged before me on _April 18_ , 20_25_
by **WILLIAM H BARE.** No oath or affirmation was administered to the foregoing with regard to
this notarial act.

_____
Notary Public in and for the State of ~~Ohio~~ WV

_Terri Clay_
_____
(Printed Name)

My commission expires: _1/10/2029_

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Terri Clay
Burke and Herbert Bank
2218 5th Avenue
Huntington, WV 25703
My Commission Expires January 10, 2029

**MORTGAGE**
**(Continued)**                                                                    **Page 20**

## SATISFACTION AND DISCHARGE OF MORTGAGE

**(To be used only when obligations have been paid in full)**

_____, **Ohio**

_____, 20_____

The conditions and obligations of this Mortgage have been complied with, and therefore this Mortgage is hereby satisfied and discharged.

**Attest:**                                                                    **Burke  &  Herbert  Bank  &  Trust**
**Company**

_____                                **By:**

_____

LaserPro, Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025.   All Rights Reserved. - OH/WV  C:\LASERPRO\CFI\LPL\G03.FC  TR-1901  PR-23

## EXHIBIT A

### TRACT ONE

#### PARCEL ONE:

The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio, being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 1, more particularly described as follows:

BEGINNING at an Iron Rod (found) on the Lot line between Lots 4 and 5 of the Joseph Brown Estate, said Iron Rod bearing S 9° 28' E a distance of 596.63 feet from a R.R. Spike (found) on the South right of way line of the said County Road, thence S. 9° 30' E passing an iron rod (set) at 165.78 feet, continuing 295.42 feet, in all 461.20 feet to the low water mark of the Ohio River; thence S 77° 01' 38" W with the low water mark 87.16 feet; thence N. 9° 30' W a distance of 466.40 feet; thence N. 80° 27' E a distance of 87.00 feet to the point of BEGINNING, containing 0.93 acres, more or less.

PARCEL NO.: 23-175-0100.002

#### PARCEL TWO:

The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 2, more particularly described as follows:

BEGINNING at a point on the Lot line between Lots 4 and 5 of the said Joseph Brown Estate, said point bearing S 9° 28' E distance of 576.63 feet and S 80° 27' W a distance of 87.00 feet from a R.R. Spike (found) on the South right of way line of the said County Road, thence S 9° 30' E a distance of 486.40 feet to the low water mark of the Ohio River, thence S 77° 01' 38" W with the low water mark 87.15 feet to a point; thence N 9° 30' W a distance of 491.61 feet to the North line of a 20 foot road right of way, thence N. 80° 27' E distance of 87.00 feet to the point of BEGINNING, containing 0.98 acres, more or less.

PARCEL NO.: 23-175-0100.003

#### PARCEL THREE:

The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 3, more particularly described as follows:

BEGINNING at a point on the Lot line between Lots 4 and 5 of the said Joseph Brown Estate, said point bearing S 9° 28' E a distance of 567.63 feet and S 80° 27' W a distance of 174.00 feet from a R.R. Spike (found) on the South right of way line of the said County Road. thence S 9° 30' E a distance of 491.61 feet to the low water mark of the Ohio River; thence S 77° 01' 38" W with the low water mark of the Ohio River 87.16 feet to a point; thence N 9° 30' W a distance of 496.81 feet to the North line of a 20 foot road right of way; thence N 80° 27' E distance of 87.00 feet to the point of BEGINNING, containing 0.99 acres, more or less.

PARCEL NO.: 23-175-0100.004

**PARCEL FOUR:**

The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 4, more particularly described as follows:

BEGINNING at a point on the Lot line between Lots 4 and 5 of the said Joseph Brown Estate, said point bearing S 9° 28' E a distance of 576.63 feet and S 80° 27' W a distance of 261 feet from a R.R. Spike (found) on the South right-of-way of the said County Road, thence S 9° 30' E a distance of 496.81 feet to the low water mark of the Ohio River; thence S 77° 01' 38" W with the low water mark of the Ohio River 87.15 feet to a point thence N 9° 30' W a distance of 502.01 feet to the North line of a 20 foot road right of way: thence N 80° 27' E a distance of 87.00 feet to the point of BEGINNING, containing 1.00 acre, more or less.

PARCEL NO.: 23-175-0100.005

**PARCEL FIVE:**

The following described real estate situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio being the South part of Lot No. 5 of the Joseph Brown Estate lying North of the Ohio River and South of County Road No. C-1, being a part of the former Price lands and a 0.57 acre parcel of the Lawrence County Recreation Center for Crippled Children, Inc. conveyed to Andrew and Yolanda Williamson, to be known as Lot 5, more particularly described as follows:

BEGINNING at a point on the Lot line between Lots 4 and 5 of the said Joseph Brown Estate, said point bearing S 9° 28' E a distance of 576.63 feet and S 80° 27' W a distance of 348.00 feet from R.R. Spike (found) on the South right of way of the said County Road, thence S 9° 30' E a distance of 502.01 feet to the low water mark of the Ohio River, thence S 77° 01' 38" W with the low water mark of the Ohio River 41.66 feet to a point; thence N 81° 01' W a distance of 510.06 feet to the North line of a 20 foot road right of way, thence N 80° 27' E a distance of 117.12 feet to the point of BEGINNING, containing 0.907 acres, more or less carried on Auditor's duplicate as 0.90 acres.

PARCEL NO.: 23-175-0100.000

**PARCEL SIX:**

Situate in the Township of Union, County of Lawrence and State of Ohio.

Being in Section 32, T1, R16. Being on 0.33 acre tract of land and part of 0.85 acre tract of land which same was recorded by plat in Vol. 466, Page 191. The above real estate was transferred on the 1980 Auditor's Duplicate on Page 339, Line 10, and Page 340, Line 7, into what is now known as Riverside Condominiums and shown and delineated in Nat Book 8, Page 16, and real estate being shown as follows:

BEGINNING at NW corner of 0.33 acre tract; thence N 78° 55' E 94 feet to NE corner of tract; thence S 11° 05' E 30.14 feet to NW corner of 0.85 acre tract; thence N 80° 27' E 104.46 feet to point on north line of 0.85 acre tract; thence S 8° 10' E passing between condominiums numbered 5-6-7-8 and 9-10-11-12, 127.49 feet to point on south line of 0.85 acre tract; thence S 80° 27' N 192 feet to SW corner of 0.33 acre tract, and 0.30 acre of 0.85 acre tract.

The described real estate being formerly listed as follows:

Unit 9  - 23-174-1410
Unit 10 - 23-174-1411
Unit 11 - 23-174-1412
Unit 12 - 23-174-1413

Unit 13 - 23-174-1414
Unit 14 - 23-174-1415
Unit 15 - 23-174-1416

Unit 16 - 23-174-1417
Unit 17 - 23-174-1418
Unit 18 - 23-174-1419

This real estate was formerly Riverside Condominiums 9 through 18, but is now vacated to 0.63 acres.

PARCEL NO.: 23-174-1410

**TRACT TWO**

**PARCEL ONE:**

Situated in Range 16, Township 1, Section 32, Union Township, Lawrence County, Ohio, and being described as follows:

BEGINNING at a stake 230 feet South 11 deg. 05' East from the southerly right-of-way line of State Highway 7 and in the Mary Brown line, thence with Brown line South 11 deg. 05' East 223 feet, thence South 78 deg. 55' West 94 feet, thence South 11 deg. 05' East 155 feet, thence, South 78 deg. 55' West 109 feet, thence South 11 deg. 05' East 69 feet, thence South 78 deg. 55' West 253 feet to 20 foot county road, thence with county road North 17 deg. 13' West 442 feet, thence North 74 deg. 25' East 512 feet to the point of beginning, containing 4.27 acres. Being part of Tract 4. EXCEPTING AND RESERVING that certain 0.57 acre parcel of real estate conveyed to Andrew Williamson by The Lawrence County Recreation Center for Crippled Children, Inc., by deed dated July 20, 2005 and recorded in the Office of the Clerk of the County Commission of Cabell County, West Virginia, In Deed Book 600 at page 547. EXCEPTING AND RESERVING that certain parcel containing .14 Ac. Conveyed in Deed Book 597, at page 521.

PARCEL NO.: 23-175-0401.000

**PARCEL TWO:**

Situate in Section 32, T1, R16, Union Township, Lawrence County, Ohio, lying West of a 20 foot road right of way South of County Road No. C-1, being a part of Tract 5 of the Joseph Brown Estates and more particularly described as follows:

1. Beginning at an Iron Rod (set) in a drainage ditch on the West line of a 20 foot road right of way, said Iron Rod bearing S 9 degrees 41' E. a distance of 112.14 feet from an Iron Pin (found) on the 20 foot road right of way West line at the SE corner of a Cemetery lot, thence S 9 degrees 41' E. with the said West line 60 feet to an Iron Rod (set);
2. Thence S 70 degrees 50' W a distance of 100 feet to an Iron Rod (set);
3. Thence N 9 degrees 41' W a distance of 60 feet to an Iron Rod (set) in a Drainage Ditch'
4. Thence N 70 degrees 50' E a distance of 100 feet to the point of BEGINNING, containing 0.14 acres, more or less.

Also: the right to use the 20 foot road right of way lying along the East line if the said Tract-5.

PARCEL NO.: 23-175-0401.001

Being the same real estate conveyed to William Bare, married, from MVB Bank, Inc., a West Virginia Banking corporation, by Deed dated July 27, 2021, and appearing of record in Official Record Book 1097, Page 159, in the Office of the Lawrence County Recorder of Ohio. Tract Two more particularly described in that certain deed dated September 24, 2021, from Kelly Marcum, married, to William Bare, married, and appearing of record in Official Record Book 1107, Page 228, in the Office of the Lawrence County Recorder of Ohio.

{00954546-1}

## EXHIBIT P

8003%0235%12232024%BAC2947*

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $492,799.97 | 12-23-2024 | 12-23-2025 | 8003 | 4A / 650 | 2947 | 1245 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Grantor:**  BARE ARMS LIMITED LIABILITY COMPANY
2134 5TH ST RD
HUNTINGTON, WV  25701

**Lender:**  Burke & Herbert Bank & Trust Company
2218 5TH AVE (HUNTINGTON)
2218 5th Avenue
Huntington, WV  25703

---

THIS COMMERCIAL SECURITY AGREEMENT dated December 23, 2024, is made and executed between BARE ARMS LIMITED LIABILITY COMPANY ("Grantor") and Burke & Herbert Bank & Trust Company ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All business assets including all Inventory, Chattel Paper, Accounts, Accounts Receivables, Equipment, Furniture, Fixtures and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above, or at the location specified in the Collateral definition in this Agreement, or at such other locations as are acceptable to

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

Removal of the Collateral. Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

Transactions Involving Collateral. Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

Title. Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

Repairs and Maintenance. Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

Inspection of Collateral. Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

Taxes, Assessments and Liens. Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

Compliance with Governmental Requirements. Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

No Prohibited Activities. Grantor is not engaged in and none of the Collateral is now or will at any time be created by or used in connection with any Prohibited Activities. Grantor shall not make any payments to Lender from funds derived from Prohibited Activities. Grantor agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement. Notwithstanding any provision in this Agreement or any Related Documents to the contrary, no direct or indirect disclosure to Lender and no knowledge of Lender of the existence of any Prohibited Activities shall estop Lender or waive any right of Lender to invoke any remedy under the Agreement or any Related Documents for any Prohibited Activities.

Hazardous Substances. Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

Maintenance of Casualty Insurance. Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

Application of Insurance Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to

Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 4

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the West Virginia Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of West Virginia without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of West Virginia.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of

Loan No: ████8003                                                                              Page 5

dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Prohibited Activities.** Notwithstanding anything to the contrary in this Agreement, Grantor shall not be entitled to receive any notice of or right to cure an Event of Default related to any Prohibited Activities.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means BARE ARMS LIMITED LIABILITY COMPANY and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means BARE ARMS LIMITED LIABILITY COMPANY.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Burke & Herbert Bank & Trust Company, its successors and assigns.

**Note.** The word "Note" means the Note dated December 23, 2024 and executed by BARE ARMS LIMITED LIABILITY COMPANY in the principal amount of $492,799.97, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: 3003                 Page 6

substitutions for the note or credit agreement.

**Prohibited Activities.** The words "Prohibited Activities" mean any activity relating to the use, sale, possession, cultivation, manufacture, storage, distribution, or marketing of cannabis, marijuana, or marijuana-based products which constitutes in any manner a violation of any applicable federal, state, or local law or regulation, regardless of whether applicable conflicting law permits the same.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED DECEMBER 23, 2024.

GRANTOR:

BARE ARMS LIMITED LIABILITY COMPANY

By: _Will H Bare_____
WILLIAM H BARE, Member of BARE ARMS LIMITED
LIABILITY COMPANY

LaserPro, Ver 75.1.10.001 Copr. Finastra USA Corporation 1997, 2025. All Rights Reserved. - KY C:\LASERPRO\CFI\LPL\E40.FC TR-1101 PR-23

## **EXHIBIT Q**

## UCC FINANCING STATEMENT

Name and address of filer:

Burke & Herbert Bank & Trust Company
2218 Fifth Avenue
Huntington, WV 25703

**2025-3360571-94.01**
Kentucky Secretary of State
File Date    4/22/2025 1:43:27 PM
Status      Active
Fee         $5.00

This document is a representation of a filing made electronically at the Kentucky Secretary of State's web site

DEBTOR'S EXACT FULL LEGAL NAME

| a. ORGANIZATION'S NAME Bare Arms Limited Liability Company | | | |
|---|---|---|---|
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| c. MAILING ADDRESS 2134 5th Street Road | CITY Huntington | WV POSTAL CODE 25701 | COUNTRY United St |

SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY)

| a. ORGANIZATION'S NAME Burke & Herbert Bank & Trust Company | | | |
|---|---|---|---|
| b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| c. MAILING ADDRESS 2218 Fifth Avenue | CITY Huntington | WV POSTAL CODE 25703 | COUNTRY United St |

4. This FINANCING STATEMENT covers the following collateral:

All business assets including all Inventory, Chattel Paper, Accounts, Accounts Receivables, Equipment, Furniture, Fixtures and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general Intangibles and other accounts proceeds).

## EXHIBIT R



# COMMERCIAL GUARANTY

| Borrower: | BARE ARMS LIMITED LIABILITY COMPANY | Lender: | Burke & Herbert Bank & Trust Company |
|---|---|---|---|
| | 2134 5TH ST RD | | 2218 5TH AVE (HUNTINGTON) |
| | HUNTINGTON, WV  25701 | | 2218 5th Avenue |
| | | | Huntington, WV  25703 |

| Guarantor: | WILLIAM H BARE |
|---|---|
| | 94 Private Drive 11202 |
| | Chesapeake, OH  45619 |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A)  prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower;  (B)  to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term;  (C)  to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral;  (D)  to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose;  (E)  to determine how, when and what application of payments and credits shall be made on the Indebtedness;  (F)  to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine;  (G)  to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and  (H)  to assign or transfer this

# COMMERCIAL GUARANTY
## (Continued)                                                    Page 2

Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

## COMMERCIAL GUARANTY
### (Continued)

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Ohio without regard to its conflicts of law provisions.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**THE FOLLOWING NOTICE IS REQUIRED BY WEST VIRGINIA LAW:** Unless Guarantor provides Lender with evidence of the insurance coverage required by Guarantor's agreement with Lender, Lender may purchase insurance at Guarantor's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Guarantor's interests. The coverage that Lender purchases may not pay any claim that Guarantor makes or any claim that is made against Guarantor in connection with the collateral. Guarantor may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Guarantor has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Guarantor will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Guarantor's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Guarantor may be able to obtain on Guarantor's own.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means BARE ARMS LIMITED LIABILITY COMPANY and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation WILLIAM H BARE, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means Burke & Herbert Bank & Trust Company, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

# COMMERCIAL GUARANTY
## (Continued)

Page 4

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED DECEMBER 23, 2024.

GUARANTOR:

x _WILLIAM H BARE_____

**WILLIAM H BARE**

LaserPro. Ver. 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025. All Rights Reserved. - OH-WV C:\LASERPRO.CFI\LPL\E20.FC TR-1901 PR-23

**EXHIBIT S**



# COMMERCIAL GUARANTY

| Borrower: | BARE ARMS LIMITED LIABILITY COMPANY<br>2134 5TH ST RD<br>HUNTINGTON, WV 25701 | Lender: | Burke & Herbert Bank & Trust Company<br>2218 5TH AVE (HUNTINGTON)<br>2218 5th Avenue<br>Huntington, WV 25703 |
|---|---|---|---|
| Guarantor: | CHRISTY N BARE<br>94 Private Drive 11202<br>Chesapeake, OH 45619 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this

# COMMERCIAL GUARANTY
## (Continued)

Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

## COMMERCIAL GUARANTY
### (Continued)                                                                Page 3

**Governing Law.** This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Ohio without regard to its conflicts of law provisions.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**THE FOLLOWING NOTICE IS REQUIRED BY WEST VIRGINIA LAW:** Unless Guarantor provides Lender with evidence of the insurance coverage required by Guarantor's agreement with Lender, Lender may purchase insurance at Guarantor's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Guarantor's interests. The coverage that Lender purchases may not pay any claim that Guarantor makes or any claim that is made against Guarantor in connection with the collateral. Guarantor may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Guarantor has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Guarantor will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Guarantor's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Guarantor may be able to obtain on Guarantor's own.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means BARE ARMS LIMITED LIABILITY COMPANY and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation CHRISTY N BARE, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means Burke & Herbert Bank & Trust Company, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

# COMMERCIAL GUARANTY
## (Continued)

Page 4

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED DECEMBER 23, 2024.

GUARANTOR:

CHRISTY N BARE

LaserPro, Ver 25.1.20.003 Copr. Finastra USA Corporation 1997, 2025   All Rights Reserved   - OH-WV  C LASERPRO CFI_PL E20 FC  TR-1001  PR-23

**EXHIBIT T**



## BUSINESS LOAN AGREEMENT



310 North Main Street Moorefield, WV 26836
Phone number: (877) 776-9722

| AGREEMENT DATE | LOAN NUMBER | AGREEMENT/ACCOUNT NUMBER |
|---|---|---|
| February 8, 2023 | 9380 | 9380 |

### BORROWER INFORMATION
BARE ARMS LIMITED LIABILITY COMPANY
3502 WINCHESTER AVENUE
ASHLAND, KY 41101

Type of Business Entity: Limited Liability Company
State of Organization/Formation: Kentucky

### GUARANTOR INFORMATION

WILLIAM H BARE
RIVE

Type of Entity: Individual
State of Residence: Kentucky

CHRISTY BARE
IVE

Type of Entity: Individual
State of Residence: Kentucky

### HYPOTHECATOR INFORMATION
WILLIAM H BARE
RIVE

Type of Entity: Individual
State of Residence: Kentucky

CHRISTY BARE
RIVE

Type of Entity: Individual
State of Residence: Kentucky

**AGREEMENT.** This Business Loan Agreement will be referred to in this document as the "Agreement." This Agreement is made by SUMMIT COMMUNITY BANK, INC (Lender), BARE ARMS LIMITED LIABILITY COMPANY (Borrower), WILLIAM H BARE and CHRISTY BARE (Guarantor), WILLIAM H BARE and CHRISTY BARE (Hypothecator). The consideration is the promises, representations, and warranties made in this Agreement and the Related Documents.

**DEFINITIONS.** These definitions are used in this Agreement.

"Collateral" means the Property that any Party to this Agreement or the Related Documents may pledge, mortgage, or give Lender a security interest in, regardless of where the Property is located and regardless of when it was or will be acquired, together with all replacements, substitutions, proceeds, and products of the Property.

"Events of Default" means any of the events described in the "Events of Default" section of this Agreement.

"Financial Statements" mean the balance sheets, earnings statements, and other financial information that any Party has, is, or will be giving to Lender.

"Indebtedness" means the Loan and all other loans and indebtedness of Borrower to Lender, including but not limited to Lender's payments of insurance or taxes, all amounts Lender pays to protect its interest in the Collateral, overdrafts in deposit accounts with Lender, and all other indebtedness, obligations, and liabilities of Borrower to Lender, whether matured or unmatured, liquidated or unliquidated, direct or indirect, absolute or contingent, joint or several, due or to become due, now existing or hereafter arising.

"Loan" means any loan or loans described in the "Identification of Loan" section of this Agreement.

"Parties" means any Borrower, Guarantor, and Hypothecator signing this Agreement.

"Party" means any Borrower, Guarantor, and Hypothecator signing this Agreement.

"Property" means the Parties' assets, regardless of what kind of assets they are.

"Related Documents" means all documents, promissory notes, security agreements, leases, mortgages, deeds of trust, construction loan agreements, assignments of leases and rents, guaranties, pledges, and all other documents or agreements executed in connection with this Agreement as such documents may be modified, amended, substituted, or renewed from time to time. The term includes both documents existing at the time of execution of this Agreement and documents executed after the date of this Agreement.

**IDENTIFICATION OF LOAN.** The following loan and all other indebtedness, obligations, and liabilities of Borrower to Lender, due or to become due, now existing or hereafter arising, as well as any and all amendments, modifications, extensions, and renewals thereof are subject to this Agreement:

© 2004-2023 Compliance Systems, LLC ef4fc2 24-a366-0799 - 2023.162.0.4
Business Loan Agreement - DL4004

Page 1 of 4

CSi

• Loan Number ▊9380 with a principal amount of $86,700.00

**BORROWER'S REPRESENTATIONS AND WARRANTIES.** The statements made in this section will continue and remain in effect until all of the Indebtedness is fully paid to Lender. Each Borrower represents and warrants to Lender the following:

**Borrower's Existence and Authority.** Each Borrower is duly formed and in good standing under all laws governing the Borrower and the Borrower's business, and each Borrower executing this Agreement has the power and authority to execute this Agreement and the Related Documents and to bind that Borrower to the obligation created in this Agreement and the Related Documents.

**Financial Information and Filing.** All Financial Statements provided to Lender have been prepared and will continue to be prepared in accordance with generally accepted accounting principles, consistently applied, and fully and fairly present the financial condition of each Borrower, and there has been no material adverse change in Borrower's business, Property, or condition, either financial or otherwise, since the date of Borrower's latest Financial Statements. Each Borrower has filed all federal, state, and local tax returns and other reports and filings required by law to be filed before the date of this Agreement and has paid all taxes, assessments, and other charges that are due and payable prior to the date of this Agreement. Each Borrower has made reasonable provision for these types of payments that are accrued but not yet payable. The Borrower does not know of any deficiency or additional assessment not disclosed in the Borrower's books and records.

All financial statements or records submitted to Lender via electronic means, including, but not limited to, facsimile, open internet communications or other telephonic or electronic methods, including, but not limited to, documents in Tagged Image Format Files ("TIFF") and Portable Document Format ("PDF") shall be treated as originals, and will be fully binding with full legal force and effect. Parties waive any right they may have to object to such treatment. Lender may rely on all such records in good faith as complete and accurate records produced or maintained by or on behalf of the Party submitting such records.

**Title and Encumbrances.** Borrower has good title to all of the Borrower's assets. All encumbrances on any part of the Property were disclosed to Lender in writing prior to the date of this Agreement.

**Compliance with General Law.** Each Borrower is in compliance with and will conduct its business and use its assets in compliance with all laws, regulations, ordinances, directives, and orders of any level of governmental authority that has jurisdiction over the Borrower, the Borrower's business, or the Borrower's assets.

**Environmental Laws.** Each Borrower is in compliance with all applicable laws and rules of federal, state, and local authorities affecting the environment, as all have been or are amended.

**No Litigation/No Misrepresentations.** There are no existing or pending suits or proceedings before any court, government agency, arbitration panel, administrative tribunal, or other body, or threatened against Borrower that may result in any material adverse change in the Borrower's business, property, or financial condition, and all representations and warranties in this Agreement and the Related Documents are true and correct and no material fact has been omitted.

**COVENANTS.** On the date of this Agreement and continuing until the Indebtedness is repaid and Borrower's obligations are fully performed, Borrower covenants as follows.

**Notices of Claims and Litigation/Notice of Adverse Events.** Borrower will promptly notify Lender in writing of all threatened and actual litigation, governmental proceeding, default, and every other occurrence that may have a material adverse effect on Borrower's business, financial condition, or the Property.

**Insurance.** Borrower will maintain adequate fire and extended risk insurance coverage, business interruption, workers' compensation, commercial general liability, and other insurance required by law or as may be required by Lender. All insurance policies will be in amounts, upon terms, and in a form acceptable to Lender. All policies must be carried with insurers acceptable to Lender. Borrower will provide evidence satisfactory to Lender of all insurance and that the policies are in full force and effect and all insurance on the Collateral will name Lender as a mortgagee and loss payee, will include a lender's loss payable endorsement, and will require 10 days advance written notice to Lender of any cancellation of coverage. If the Borrower fails to maintain required insurance, the absence of the required insurance will be an Event of Default. If this happens, Lender may buy the insurance, but will have no obligation to buy it. These amounts paid by Lender will be added to the Indebtedness or will be payable on demand, at Lender's option.

**Payment of Taxes.** Borrower will pay all taxes, levies, and assessments required by all local, state, and federal agencies. Borrower will make these payments when the amounts are due but before any penalty for late payment is imposed. Borrower's failure to promptly pay any tax, levy, or assessment due will be an Event of Default unless Borrower is diligently disputing the amount and Borrower has established a reserve account for the payment of the taxes if Borrower does not prevail in the dispute.

**EVENTS OF DEFAULT.** The occurrence of any of the following events will be an Event of Default.

**Noncompliance with Lender Agreements.** Default by Borrower, Guarantor, or Hypothecator under any provision of this Agreement, the Related Documents, or any other agreement with Lender.

**False Statements.** If a Party made or makes a false or misleading misrepresentation in this Agreement, in the Related Documents, in any supporting material submitted to Lender or to third parties providing reports to Lender, or in Financial Statements given or to be given to Lender.

**Material Adverse Change.** Any material adverse change in the Borrower's business, financial condition, or the Property has occurred or is imminent; if the full performance of the obligations of any Party is materially impaired; or if the Collateral and its value or Lender's rights with respect thereto are materially impaired in any way. The existence or reasonable likelihood of litigation, governmental proceeding, default, or other event that may materially and adversely affect a Party's business, financial condition, or the Property.

**Insolvency or Liquidation.** A Party voluntarily suspends transaction of its business or does not generally pay debts as they mature. If a Party has or will make a general assignment for the benefit of creditors or will file, or have filed against it, any petition under federal bankruptcy law or under any other state or federal law providing for the relief of debtors if the resulting proceeding is not discharged within thirty days after filing. If a receiver, trustee, or custodian is or will be appointed for a Party.

**CSi**

**Default on Unrelated Debt.** If Borrower, Guarantor, or Hypothecator materially defaults under a provision of an agreement with a third party or if the indebtedness under such an agreement is accelerated.

**Judgments or Attachments.** If there is entered against a Party a judgment that materially affects the Borrower's business, financial condition, or the Property, or if a tax lien, levy, writ of attachment, garnishment, execution, or similar item is or will be issued against the Collateral or which materially affects Borrower's business, financial condition, or the Property, and which remains unpaid, unstayed on appeal, undischarged, unbonded, or undismissed for thirty days after it was issued.

**Collateral Impairment.** Lender has a good-faith belief that Lender's rights in the Collateral are or will soon be impaired or that the Collateral itself is or soon will be impaired.

**Termination of Existence or Change in Control.** If Borrower or Borrower's business is sold or merged or if Borrower or Borrower's business suspends business or ceases to exist.

**Insecurity.** If Lender has a good-faith belief that any Party is unable or will soon be unable to perform that Party's duties under this Agreement or under the Related Documents.

**Death.** The death of an individual who is a Party, a partner in a partnership that is a Party, a member in a limited liability company that is a Party, an officer of a corporation that is a Party, or an individual of similar position in any other type of business organization that is a Party.

**Change In Management.** Any change in management or ownership of Borrower outside of the current shareholder group unacceptable to Bank.

**REMEDIES ON DEFAULT.**

**Remedies, No Waiver.** The remedies provided for in this Agreement, the Related Documents, and by law are cumulative and not exclusive. Lender reserves the right to exercise some, all, or none of its rights and reserves the right to exercise any right at any time that Lender has the right, without regard to how much time has passed since the right arose. Lender may exercise its rights in its sole, absolute discretion.

**Acceleration, Setoff.** Upon an Event of Default, the Loan and the Indebtedness may, at Lender's sole option, be declared immediately due and payable. Lender may apply the Parties' bank accounts and any other property held by Lender against the Indebtedness.

**ATTORNEYS' FEES AND OTHER COSTS.** Borrower agrees to pay all of Lender's costs and expenses incurred in connection with the enforcement of this Agreement, including without limitation, reasonable attorneys' fees, to the extent permitted by law.

**EXPENSES.** The Parties agree to pay all of Lender's reasonable expenses incidental to perfecting Lender's security interests and liens, all insurance premiums, Uniform Commercial Code search fees, and all reasonable fees incurred by Lender for audits, inspection, and copying of the Parties' books and records. The Parties also agree to pay all reasonable costs and expenses of Lender in connection with the enforcement of Lender's rights and remedies under this Agreement, the Related Documents, and any other agreement between one or more Parties and Lender, and in connection with the preparation of all amendments, modifications, and waivers of consent with respect to this Agreement, including reasonable attorneys' fees.

**GOVERNING LAW/PARTIAL ILLEGALITY.** This Agreement and the Related Documents are and will be governed by, and the rights of the Parties will be determined by the laws of the state of Kentucky except to the extent that federal law controls. If any part, term, or provision of this Agreement is determined to be illegal or in conflict with state or federal law, the validity of the remaining portion or provisions of this Agreement will not be affected, unless the stricken portion or provision adversely affects Lender's risk of realizing Lender's anticipated return, in which case Lender may, in its sole discretion, deem the Loan matured.

**NOTICES.** All notices required under this Agreement must be in writing and will be considered given: (i) on the day of personal delivery, or (ii) one business day after deposit with a nationally recognized overnight courier service, or (iii) three business days after deposit with the United States Postal Service sent certified mail, return receipt requested. Any of these methods may be used to give notice. All notices must be sent to the party or parties entitled to notice at the addresses first set forth in this Agreement. Any Party may change its address for notice purposes on five days prior written notice to the other Parties.

**INTEGRATION AND AMENDMENT.** This Agreement and other written agreements among the Parties, including but not limited to the Related Documents, are the entire agreement of the Parties and will be interpreted as a group, one with the others. None of the Parties will be bound by anything not expressed in writing, and this Agreement cannot be modified except by a writing executed by those Parties burdened by the modification.

**FURTHER ACTION.** The Parties will, upon request of Lender, make, execute, acknowledge, and deliver to Lender the modified and additional instruments, documents, and agreements, and will take the further action that is reasonably required, to carry out the intent and purpose of this transaction.

**CONTINUING EFFECT.** Unless superseded by a later Business Loan Agreement, this Agreement will continue in full force and effect until all of the Parties' obligations to Lender are fully satisfied and the Loan and Indebtedness are fully repaid.

**HEADINGS.** All headings in this Agreement are included for reference only and do not have any effect on the interpretation of this Agreement.

**COUNTERPARTS.** This Agreement may be executed by the Parties using any number of copies of the Agreement. All executed copies taken together will be treated as a single Agreement.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Agreement.

**TRANSFERS.** Borrower may not assign or transfer its rights or obligations under this Agreement without Lender's prior written consent. Lender may transfer its interest in Lender's sole discretion. Borrower waives all rights of offset and counterclaim Borrower has against Lender. The purchaser of a participation in the loan may enforce its interest regardless of any claims or defenses Borrower has against Lender.

**CSi**

**JURISDICTION.** The Parties agree to waive any objection to jurisdiction or venue on the ground that the Parties are not residents of Lender's locality. The Parties authorize any action brought to enforce the Parties' obligations to be instituted and prosecuted in any state court having jurisdiction or in the United States District Court for the District that includes Lender's location as set forth at the beginning of this Agreement. The Parties authorize Lender to elect the court at Lender's sole discretion.

**WAIVER OF JURY TRIAL.** All parties to this Agreement hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Agreement or any other instrument, document or agreement executed or delivered in connection with this Agreement or the Related Documents.

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

By signing this Agreement, Borrower acknowledges reading, understanding and agreeing to all its provisions and receipt of a copy hereof.

**BARE ARMS LIMITED LIABILITY COMPANY**

By: WILLIAM H BARE     Date 2/8/23
Its: Managing Member

By: CHRISTY BARE     Date 2/8/23
Its: Member

## AGREEMENT OF HYPOTHECATOR

Hypothecator (i) acknowledges reading and understanding this Agreement; (ii) consents to the provisions of this Agreement relating to Borrower; (iii) agrees to those portions of this Agreement that apply to Hypothecator; (iv) acknowledges that this Agreement has been freely executed without duress and after an opportunity to consult with counsel; and (v) confirms that Hypothecator received a copy of this Agreement, the Hypothecation Agreement, and the other documents Hypothecator requested.

WILLIAM H BARE     Date 2/8/23
Individually

CHRISTY BARE     Date 2/8/23
Individually

## AGREEMENT OF GUARANTOR

Guarantor (i) acknowledges reading and understanding this Agreement; (ii) consents to the provisions of this Agreement relating to Borrower; (iii) agrees to furnish the Financial Statements to Lender that Lender reasonably requests; (iv) agrees to those portions of this Agreement that apply to Guarantor; (v) acknowledges that this Agreement has been freely executed without duress and after an opportunity to consult with counsel; and (vi) confirms that Guarantor received a copy of this Agreement, the Guaranty, and the other documents Guarantor requested.

WILLIAM H BARE     Date 2/8/23
Individually

CHRISTY BARE     Date 2/8/23
Individually

**CSi**

**EXHIBIT U**



## COMMERCIAL PROMISSORY NOTE



310 North Main Street Moorefield, WV 26836
Phone number: (877) 776-9722

| LOAN NUMBER | NOTE DATE | PRINCIPAL AMOUNT | MATURITY DATE |
|---|---|---|---|
| 9380 | February 8, 2023 | $86,700.00 | February 6, 2043 |

**LOAN PURPOSE:** This loan request is to reimburse cash flow on 2 parcels of R/E previously purchased, renovated and currently unencumbered.

**BORROWER INFORMATION**
BARE ARMS LIMITED LIABILITY COMPANY
3502 WINCHESTER AVENUE
ASHLAND, KY 41101

**NOTE.** This Commercial Promissory Note will be referred to in this document as the "Note."

**LENDER.** "Lender" means SUMMIT COMMUNITY BANK, INC whose address is 1000 ASHLAND DRIVE, SUITE 501, Ashland, Kentucky 41101, its successors and assigns.

**BORROWER.** "Borrower" means each person or legal entity who signs this Note.

**PROMISE TO PAY.** For value received, receipt of which is hereby acknowledged, on or before February 6, 2043 (the "Maturity Date"), the Borrower promises to pay the principal amount of Eighty-six Thousand Seven Hundred and 00/100 Dollars ($86,700.00) and all interest on the outstanding principal balance and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.

**PAYMENT SCHEDULE.** This Note will be paid according to the following schedule: 240 consecutive payments of principal and interest beginning on March 6, 2023 and continuing on the same day of each month thereafter. The initial payment will be in the amount of $703.26. This amount may change on March 8, 2028 and every 5 YEAR thereafter. The unpaid principal balance of this Note, together with all accrued interest and charges owing in connection therewith, shall be due and payable on the Maturity Date.

**APPLICATION OF PAYMENTS.** All payments received by the Lender from the Borrower for application to this Note may be applied to the Borrower's obligations under this Note in such order as determined by the Lender.

**INTEREST.**

Interest Rate and Scheduled Payment Changes. Interest will begin to accrue on February 8, 2023 . The initial variable interest rate on this Note will be 7.490 % per annum. This interest rate may change on February 8, 2028 and every 5 YEAR thereafter. Each date on which the interest rate may change is called the "Change Date." Prior to each Change Date, Lender will calculate the new interest rate based on 5-year Federal Home Loan Bank Classic Advance Rate in effect on the Change Date (the "Index") plus 3.000 percentage points (the "Margin"). The interest rate will never be less than 3.990%.

Index Replacement. If the Index is Unavailable on the Change Date, the interest rate will be calculated using a "Replacement Index" and a new commercially reasonable "Replacement Margin."

*Index Unavailability.* The Index is considered "Unavailable" when one or more of the following events occurs:

(1) A public statement by or on behalf of the administrator of the Index, or supervisor thereof or a relevant governmental authority, that (a) the administrator will cease publishing the Index and there is no successor administrator that will continue publication of the Index, or (b) that the Index has been discontinued, is no longer reliable or representative, or may no longer be used;

(2) The Index is not published by the administrator of the Index for five consecutive business days without advance announcement that the disruption is temporary; or

(3) Lender reasonably determines that the Index no longer reflects the Lender's cost of funding.

*Replacement Index and Replacement Margin.* Lender will select the Replacement Index and determine an associated Replacement Margin. Lender shall make a reasonable effort to select a Replacement Index and a Replacement Margin that, when added together, Lender reasonably expects will minimize any change to the cost of the loan. The Replacement Index shall be (a) a replacement Index selected or recommended by a relevant governmental authority or a committee endorsed or convened thereby, (b) a comparable successor or alternative Index and Margin that is, at such time, broadly viewed as acceptable market practice for similar loans in lieu of the Index, or (c) a successor or alternative Index rate as Lender may reasonably determine. The Replacement Margin shall be determined by utilizing a margin adjustment method which is, at such time, (a) selected or recommended by a relevant governmental authority or a committee endorsed or convened thereby, (b) broadly viewed as acceptable market practice, or (c) any other method as the Lender may reasonably determine.

Compliance with Law. Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law.

**CSi**

such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law. An increase in the interest rate will result in a higher payment amount.

Accrual Method. Interest on this Note is calculated on an Actual/360 day basis. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**LATE PAYMENT CHARGE.** If any required payment is more than 10 days late, then at Lender's option, Lender will assess a late payment charge of 5.000% of the amount of the regularly scheduled payment then past due, subject to a maximum charge of $1,000.00 and a minimum charge of $30.00.

**PREPAYMENT PENALTY.** This Note may be prepaid, in full or in part, at any time, without penalty.

**SECURITY TO NOTE.** Security for this Note is granted pursuant to the following security document(s):

- Assignment of Leases and Rents dated February 8, 2023 evidencing an assignment of leases and rents on the property located at 167 Lulu St, Ashland KY 41102.
- Security Instrument (Mortgage/Deed of Trust/Security Deed) in the amount of $86,700.00, dated February 8, 2023 evidencing a lien on the property located at 167 Lulu St, Ashland KY 41102.

**RIGHT OF SET-OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set-off any amount due and payable under this Note, whether matured or unmatured, against any amount owing by Lender to Borrower including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of set-off may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower or such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set-off has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or of notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant. Lender will not be liable for the dishonor of any check when the dishonor occurs because Lender set-off a debt against Borrower's account. Borrower agrees to hold Lender harmless from any claim arising as a result of Lender exercising Lender's right to set-off.

**DISHONORED ITEM FEE.** If Borrower makes a payment on the loan with a check or preauthorized charge which is later dishonored, a fee in the amount of $32.00 will be charged.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments, and any other documents or agreements executed in connection with the indebtedness evidenced hereby this Note whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The Related Documents are hereby made a part of this Note by reference thereto, with the same force and effect as if fully set forth herein.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Lender's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Note immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Note or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by Borrower under the terms of this Note or any other Related Documents; (c) any default by Borrower under the terms of any other agreement between Lender and Borrower; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Related Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any Related Documents terminates, attempts to terminate or defaults under any such Related Documents; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower. Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest, and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Note shall be joint and several, to the extent of their respective obligations.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Note is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Note without invalidating the remainder of either the affected provision or this Note.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Note shall be binding on all heirs, executors, administrators, assigns, and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Note or any of its rights and powers under this Note without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Note or any benefit accruing to it hereunder without the express written consent of the Lender.

**CSi**

**DUTY TO NOTIFY.** Borrower agrees to notify Lender if there is any change in the beneficial ownership information provided to Lender. Additionally, Borrower agrees to provide Lender with updated beneficial ownership information in the event there is any change in the beneficial ownership information provided to Lender.

**ORAL AGREEMENTS DISCLAIMER.** This Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**GOVERNING LAW.** This Note is governed by the laws of the state of Kentucky except to the extent that federal law controls.

**HEADING AND GENDER.** The headings preceding text in this Note are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Note shall be construed to be of such gender or number as the circumstances require.

**ATTORNEY'S FEES, COSTS, AND EXPENSES.** Borrower agrees to pay all of Lender's costs, fees, and expenses arising out of or related to the enforcement of this Note or the relationship between the parties. Included in the fees that Lender may recover from Borrower are the reasonable attorney's fees that Lender incurs, including all fees incurred in the course of representing Lender before, during, or after any lawsuit, arbitration, or other proceeding and those incurred in appeals, whether the issues arise out of contract, tort, bankruptcy, or any other area of law. Included in the costs and expenses which Lender may recover are all court, alternative dispute resolution or other collection costs, and all expenses incidental to perfecting Lender's security interests and liens, preserving the collateral (including payment of taxes and insurance), records searches, and expenses related to audits, inspection, and copying. All costs and expenses Lender is entitled to recover shall accrue interest at the highest rate set forth hereunder or in any of the Related Documents.

**ADDITIONAL PROVISIONS.**

**AUTOMATIC PAYMENT.** If your account is paid by automatic payment the following will apply. You understand that should regular scheduled debit or transfer date fall on a non-processing date (weekend or federal holiday), the debit or transfer will be made on the first processing day after the scheduled debit or transfer date. I understand that for an adjustable rate mortgage loan, the payment will adjust when the rate changes and that I will be notified of the rate change 30 days in advance. I understand that for a loan that includes escrow that my payment will change as my insurances and taxes increase or decrease. I will be notified of the change 15 days in advance.

**DIFFERENCE BETWEEN ANY COMMITMENT LETTER AND NOTE** For commercial loans, shall there be any conflict in the terms and conditions of the term sheet (if any) and the terms and conditions of this note and related documents, then the terms and conditions of this note and related documents shall prevail.

**DELINQUENT REAL ESTATE TAXES FOR COMMERCIAL LOANS ONLY** If the bank has to pay real estate taxes at any point in time to protect its collateral position, Borrower acknowledges and accepts that the Bank shall charge an administrative fee of $500 per tax ticket and add that charge to the balance of the loan. This only applies to Commercial Real Estate loans.

**WAIVER OF JURY TRIAL.** All parties to this Note hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Note or any other instrument, document or agreement executed or delivered in connection with this Note or the Related Documents.

By signing this Note, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt hereof.

BARE ARMS LIMITED LIABILITY COMPANY

_____  2/8/83
By: WILLIAM H BARE            Date
Its: Managing Member

_____  2/8/83
By: CHRISTY BARE              Date
Its: Member

CSi

# **EXHIBIT V**

Filed: 02/09/2023    11:41:10 AM
BK 1528    PG 679 - 687 (9)  DOC# 10017736
Kevin Johnston, County Clerk
Boyd County, KY
Received By: BILLIE JOHNSON
Recording Fee Total: $80.00
Transfer Tax Paid: $0.00

(Space Above This Line For Recording Data)

# COMMERCIAL REAL ESTATE MORTGAGE
## FUTURE ADVANCES AND FUTURE OBLIGATIONS ARE SECURED BY THIS REAL ESTATE MORTGAGE

This COMMERCIAL REAL ESTATE MORTGAGE ("Security Instrument") is made on February 8, 2023 between the mortgagor(s) WILLIAM H BARE and CHRISTY BARE, whose address is 111 LOST CANYON DRIVE, RACELAND, Kentucky 41169 ("Mortgagor"), and SUMMIT COMMUNITY BANK, INC whose mailing address is 1000 ASHLAND DRIVE, SUITE 501, Ashland, County of GREENUP, Kentucky 41101-0000 ("Lender"), which is organized and existing under the laws of the State of West Virginia. Mortgagor in consideration of loans extended by Lender and for other valuable consideration, the receipt of which is acknowledged, hereby mortgages, grants, and conveys to Lender, its successors and assigns, forever, the following described property located in the County of BOYD, State of Kentucky:

Address: 167 Lulu St, Ashland, Kentucky 41102
Legal Description: See attached Exhibit A for further description

Together with all easements, appurtenances abutting streets and alleys, improvements, buildings, fixtures, tenements, hereditaments, equipment, rents, income, profits and royalties, personal goods of whatever description and all other rights and privileges including all minerals, oil, gas, water (whether groundwater, subterranean or otherwise), water rights (whether riparian, appropriate or otherwise, and whether or not appurtenant to the above-described real property), wells, well permits, ditches, ditch rights, reservoirs, reservoir rights, reservoir sites, storage rights, dams and water stock that may now, or at any time in the future, be located on and/or used in connection with the above-described real property, payment awards, amounts received from eminent domain, amounts received from any and all insurance payments, and timber which may now or later be located, situated, or affixed on and used in connection therewith (hereinafter called the "Property").

Being the same property conveyed to Mortgagor by deed dated April 21, 2015, of record in Deed Book 772, page 405, BOYD County Clerk's office.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with the Indebtedness and Security Instrument, whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the

© 2004-2021 Compliance Systems, LLC 67af0480-cdb08dc1 - 2021.162.0.4
Commercial Real Estate Security Instrument - DL4007          Page 1 of 8          www.compliancesystems.com

foregoing. The Related Documents are hereby made a part of this Security Instrument by reference thereto, with the same force and effect as if fully set forth herein.

**INDEBTEDNESS.** This Security Instrument secures the amounts as may be evidenced by a promissory note or notes of even, prior or subsequent date hereto, including future advances and every other indebtedness of any and every kind now or hereafter owing from BARE ARMS LIMITED LIABILITY COMPANY ("Borrower") to SUMMIT COMMUNITY BANK, INC, howsoever created or arising, whether primary, secondary or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the agreements and covenants of this Security Instrument and all Related Documents (hereinafter all referred to as the "Indebtedness"). Without limiting the foregoing, Indebtedness expressly includes the following:

**Promissory Note.** The principal amount of $86,700.00 evidenced by the promissory note dated February 8, 2023 made by Borrower payable to the order of Lender, and all interest, charges, and other amounts which may be or may become owed as provided under the terms of said promissory note, and any and all amendments, modifications, renewals, extensions, reamortizations, or substitutions thereof.

**Protective Advances.** All amounts advanced by or on behalf of Lender, its successors or assigns, to preserve or protect the Property or fulfill any of the obligations of Mortgagor, under this Security Instrument or any of the Related Documents, including without limitation, any protective advances made with respect to the Property for the payment of taxes, assessments, insurance premiums, costs incurred for the protection of the Property and other costs which Lender is authorized by this Security Instrument or any of the Related Documents to pay on behalf of Mortgagor or Borrower.

**Future Advances.** Pursuant to KRS § 382.520, this Security Instrument secures all future advances and all other additional indebtedness, whether direct, indirect, existing, future, contingent, or otherwise, and the maximum additional indebtedness secured hereby shall in no event exceed the principal sum of $0.00. Mortgagor hereby waives any right which Mortgagor may have under KRS § 382.520(2) to have the lien of this Security Instrument released as to any of the Indebtedness prior to the payment of the Indebtedness in full to the Lender.

**Consumer Purpose Loan Exclusion.** Notwithstanding anything to the contrary, Indebtedness specifically excludes any obligation pursuant to a credit transaction which was offered or extended primarily for personal, family, or household purposes.

**MATURITY DATE.** The Indebtedness, if not paid earlier, shall be due on February 8, 2043.

**WARRANTIES.** Mortgagor, for itself, its heirs, personal representatives, successors, and assigns, represents, warrants, covenants and agrees with Lender, its successors and assigns, as follows:

**Performance of Obligations.** Mortgagor promises to perform all terms, conditions, and covenants of this Security Instrument and Related Documents in accordance with the terms contained therein.

**Defense and Title to Property.** At the time of execution and delivery of this instrument, Mortgagor is lawfully seised of the estate hereby conveyed and has the exclusive right to mortgage, grant, convey and assign the Property. Mortgagor covenants that the Property is unencumbered and free of all liens except for encumbrances of record acceptable to Lender. Further, Mortgagor covenants that Mortgagor will warrant and defend generally the title to the Property against any and all claims and demands whatsoever, subject to the easements, restrictions, or other encumbrances of record acceptable to Lender, as may be listed in the schedule of exceptions to coverage in any abstract of title or title insurance policy insuring Lender's interest in the Property.

**Condition of Property.** Mortgagor promises at all times to preserve and to maintain the Property and every part thereof in good repair, working order, and condition and will from time to time, make all needful and proper repairs so that the value of the Property shall not in any way be impaired.

**Removal of any Part of the Property.** Mortgagor promises not to remove any part of the Property from its present location, except for replacement, maintenance and relocation in the ordinary course of business.

**Alterations to the Property.** Mortgagor promises to abstain from the commission of any waste on or in connection with the Property. Further, Mortgagor shall make no material alterations, additions, or

BK 1528    PG 681    DOC# 10017736

improvements of any type whatsoever to the Property, regardless of whether such alterations, additions, or improvements would increase the value of the Property, nor permit anyone to do so except for tenant improvements and completion of items pursuant to approved plans and specifications, without Lender's prior written consent, which consent may be withheld by Lender in its sole discretion. Mortgagor will comply with all laws and regulations of all public authorities having jurisdiction over the Property including, without limitation, those relating to the use, occupancy and maintenance thereof and shall upon request promptly submit to Lender evidence of such compliance.

**Due on Sale - Lender's Consent.** Mortgagor shall not sell, further encumber or otherwise dispose of, except as herein provided, any or all of its interest in any part of or all of the Property without first obtaining the written consent of Lender. If any encumbrance, lien, transfer or sale or agreement for these is created, Lender may declare immediately due and payable, the entire balance of the Indebtedness.

**Insurance.** Mortgagor promises to keep the Property insured against such risks and in such form as may within the sole discretion of Lender be acceptable, causing Lender to be named as loss payee or if requested by Lender, as mortgagee. If requested by Lender, all insurance policies shall include a lender's loss payable endorsement. The insurance company shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. All insurance policies must provide that Lender will get a minimum of 10 days' notice prior to cancellation. At Lender's discretion, Mortgagor may be required to produce receipts of paid premiums and renewal policies. If Mortgagor fails to obtain the required coverage, Lender may do so at Mortgagor's expense. Mortgagor hereby directs each and every insurer of the Property to make payment of loss to Lender with the proceeds to be applied, only at Lender's option, to the repair and replacement of the damage or loss or to be applied to the Indebtedness with the surplus, if any, to be paid by Lender to Mortgagor.

**Payment of Taxes and Other Applicable Charges.** Mortgagor promises to pay and to discharge liens, encumbrances, taxes, assessments, lease payments and any other charges relating to the Property when levied or assessed against Mortgagor or the Property.

**Environmental Laws and Hazardous or Toxic Materials.** Mortgagor and every tenant have been, are presently and shall continue to be in strict compliance with any applicable local, state and federal environmental laws and regulations. Further, neither Mortgagor nor any tenant shall manufacture, store, handle, discharge or dispose of hazardous or toxic materials as may be defined by any state or federal law on the Property, except to the extent the existence of such materials has been presently disclosed in writing to Lender. Mortgagor will immediately notify Lender in writing of any assertion or claim made by any party as to the possible violation of applicable state and federal environmental laws including the location of any hazardous or toxic materials on or about the Property. Mortgagor indemnifies and holds Lender harmless from, without limitation, any liability or expense of whatsoever nature incurred directly or indirectly out of or in connection with: (a) any environmental laws affecting all or any part of the Property or Mortgagor; (b) the past, present or future existence of any hazardous materials in, on, under, about, or emanating from or passing through the Property or any part thereof or any property adjacent thereto; (c) any past, present or future hazardous activity at or in connection with the Property or any part thereof; and (d) the noncompliance by Mortgagor or Mortgagor's failure to comply fully and timely with environmental laws.

**Financial Information.** Mortgagor agrees to supply Lender such financial and other information concerning its affairs and the status of any of its assets as Lender, from time to time, may reasonably request. Mortgagor further agrees to permit Lender to verify accounts as well as to inspect, copy and to examine the books, records, and files of Mortgagor.

**Lender's Right to Enter.** Lender or Lender's agents shall have the right and access to inspect the Property at all reasonable times in order to attend to Lender's interests and ensure compliance with the terms of this Security Instrument. If the Property, or any part thereof, shall require inspection, repair or maintenance which Mortgagor has failed to provide, Lender, after reasonable notice, may enter upon the Property to effect such obligation; and the cost thereof shall be added to the Indebtedness and paid on Lender's demand by Mortgagor.

BK 1528    PG 682

**ASSIGNMENT OF LEASES AND RENTS.** As additional security for the payment of the Indebtedness and the performance of the covenants contained herein, Mortgagor hereby assigns and transfers over to Lender any present or future leases, subleases, or licenses of the Property, including any guaranties, extensions, amendments, or renewals thereof, and all rents, income, royalties, and profits derived from the use of the Property or any portion of it, whether due or to become due (collectively the "Rents"). So long as Mortgagor is not in default, Mortgagor may receive, collect and enjoy all Rents accruing from the Property, but not more than one month in advance of the due date. Lender may also require Mortgagor, tenant and any other user of the Property to make payments of Rents directly to Lender. However, by receiving any such payments, Lender is not, and shall not be considered, an agent for any party or entity. Any amounts collected may, at Lender's sole discretion, be applied to protect Lender's interest in the Property, including but not limited to the payment of taxes and insurance premiums and to the Indebtedness. At Lender's sole discretion, all leases, subleases and licenses must first be approved by Lender.

**CONDEMNATION.** Mortgagor shall give Lender notice of any action taken or threatened to be taken by private or public entities to appropriate the Property or any part thereof, through condemnation, eminent domain or any other action. Further, Lender shall be permitted to participate or intervene in any of the above described proceedings in any manner it shall at its sole discretion determine. Lender is hereby given full power, right and authority to receive and receipt for any and all damages awarded as a result of the full or partial taking or appropriation and in its sole discretion, to apply said awards to the Indebtedness, whether or not then due or otherwise in accordance with applicable law. Unless Lender otherwise agrees in writing, any application of proceeds to the Indebtedness shall not extend or postpone the due date of the payments due under the Indebtedness or change the amount of such payments.

**MORTGAGOR'S ASSURANCES.** At any time, upon a request of Lender, Mortgagor will execute and deliver to Lender, and if appropriate, cause to be recorded, such further mortgages, assignments, assignments of leases and rents, security agreements, pledges, financing statements, or such other document as Lender may require, in Lender's sole discretion, to effectuate, complete and to perfect as well as to continue to preserve the Indebtedness, or the lien or security interest created by this Security Instrument.

**ATTORNEY-IN-FACT.** Mortgagor appoints Lender as attorney-in-fact on behalf of Mortgagor. If Mortgagor fails to fulfill any of Mortgagor's obligations under this Security Instrument or any Related Documents, including those obligations mentioned in the preceding paragraph, Lender as attorney-in-fact may fulfill the obligations without notice to Mortgagor. This power of attorney shall not be affected by the disability of the Mortgagor.

**EVENTS OF DEFAULT.** The following events shall constitute default under this Security Instrument (each an "Event of Default"):

    (a)   Failure to make required payments when due under Indebtedness;

    (b)   Failure to perform or keep any of the covenants of this Security Instrument or a default under any of the Related Documents;

    (c)   The making of any oral or written statement or assertion to Lender that is false or misleading in any material respect by Mortgagor or any person obligated on the Indebtedness;

    (d)   The death, dissolution, insolvency, bankruptcy or receivership proceeding of Mortgagor or of any person or entity obligated on the Indebtedness;

    (e)   Any assignment by Mortgagor for the benefit of Mortgagor's creditors;

    (f)   A material adverse change occurs in the financial condition, ownership, or management of Mortgagor or any person obligated on the Indebtedness; or

    (g)   Lender deems itself insecure for any reason whatsoever.

**REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, Lender may, without demand or notice, pay any or all taxes, assessments, premiums, and liens required to be paid by Mortgagor, effect any insurance provided for herein, make such repairs, cause the abstracts of title or title insurance policy and tax histories of the Property to be certified to date, or procure new abstracts of title or title insurance and tax histories in case none were furnished to it, and procure title reports covering the Property, including surveys. The amounts paid for any such purposes will be added to the Indebtedness and will bear interest at the rate of interest otherwise accruing on the Indebtedness until paid. In the event of foreclosure, the abstracts of title or title insurance shall

BK 1528   PG 683   DOC# 10017736

become the property of Lender. All abstracts of title, title insurance, tax histories, surveys, and other documents pertaining to the Indebtedness will remain in Lender's possession until the Indebtedness is paid in full.

IN THE EVENT OF THE SALE OF THIS PROPERTY UNDER THE PROCEDURE FOR FORECLOSURE OF A SECURITY INSTRUMENT BY ADVERTISEMENT, AS PROVIDED BY APPLICABLE LAW, OR IN THE EVENT LENDER EXERCISES ITS RIGHTS UNDER THE ASSIGNMENT OF LEASES AND RENTS, THE MORTGAGOR HEREBY WAIVES ANY RIGHT TO ANY NOTICE OTHER THAN THAT PROVIDED FOR SPECIFICALLY BY STATUTE, OR TO ANY JUDICIAL HEARING PRIOR TO SUCH SALE OR OTHER EXERCISE OF RIGHTS.

Upon the occurrence of an Event of Default, Lender may, without notice unless required by law, and at its option, declare the entire Indebtedness due and payable, as it may elect, regardless of the date or dates of maturity thereof and, if permitted by state law, is authorized and empowered to cause the Property to be sold at public auction, and to execute and deliver to the purchaser or purchasers at such sale any deeds of conveyance good and sufficient at law, pursuant to the statute in such case made and provided, and out of the proceeds of the sale to retain the sums then due hereunder and all costs and charges of the sale, including attorneys' fees, rendering any surplus to the party or parties entitled to it. Any such sale or a sale made pursuant to a judgment or a decree for the foreclosure hereof may, at the option of Lender, be made en masse. The commencement of proceedings to foreclose this Security Instrument in any manner authorized by law shall be deemed as exercise of the above option.

Upon the occurrence of an Event of Default, Lender shall immediately be entitled to make application for and obtain the appointment of a receiver for the Property and of the earnings, income, issue and profits of it, with the powers as the court making the appointments confers. Mortgagor hereby irrevocably consents to such appointment and waives notice of any application therefor.

The parties agree that the remedies available may be inadequate compensation for any loss. Therefore, to the extent allowed by applicable law, in Lender's sole discretion, Lender may seek specific performance of any promise, obligation, or covenant contained in this Security Instrument. Any defense in any action for specific performance that the remedy at law would be adequate is waived.

To the extent allowed by law, all of Lender's rights and remedies, however evidenced and from whichever source they derive, are cumulative in nature. Lender is entitled to exercise any remedy in any order it determines appropriate. Lender may exercise remedies singularly or concurrently.

**NO WAIVER.** No delay or failure of Lender to exercise any right, remedy, power or privilege hereunder shall affect that right, remedy, power or privilege nor shall any single or partial exercise thereof preclude the exercise of any right, remedy, power or privilege. No Lender delay or failure to demand strict adherence to the terms of this Security Instrument shall be deemed to constitute a course of conduct inconsistent with Lender's right at any time, before or after an event of default, to demand strict adherence to the terms of this Security Instrument and the Related Documents.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Security Instrument shall be joint and several, to the extent of their respective obligations.

**SURVIVAL.** Lender's rights in this Security Instrument will continue in its successors and assigns. This Security Instrument is binding on all heirs, executors, administrators, assigns, and successors of Mortgagor.

**NOTICES.** Unless otherwise required by applicable law or provided under this Security Instrument, any notice or demand given by Lender to any party is considered effective when: (i) it is deposited in the United States Mail with the appropriate postage; (ii) when it is sent via electronic mail; (iii) when it is sent via facsimile; (iv) when it is deposited with a nationally recognized overnight courier service; (v) on the day of personal delivery; or (vi) any other commercially reasonable means. Such notice or demand shall be sent to the party at the address contained herein or at an alternative address, e-mail address, or facsimile number as may be provided to Lender in writing. Any notice given to Lender must be addressed to Lender at the address contained herein or at an alternative address as may be provided by Lender in writing.

**GENERAL WAIVERS.** Mortgagor, to the extent permitted by law, hereby waives (a) notice of acceptance of this Security Instrument, and all notice of the creation, extension of, or accrual of any of the Indebtedness; (b) diligence, presentment, protest, demand for payment, notice of dishonor, notice of intent to accelerate, and notice of acceleration in connection with the Indebtedness or any other obligations now existing or hereafter owing

BK 1528    PG 684    DOC# 10017736

which are secured by this Security Instrument; (c) any requirement that Lender proceed against or pursue any other collateral securing or any other party responsible for some or all of the Indebtedness; (d) any requirement that Lender pursue or exhaust any other remedy available to Lender; (e) any right to request that Lender marshal any other collateral; (f) failure to protect, preserve, or resort to any collateral; and (g) any and all defenses that could be asserted by Mortgagor, including, but not limited to, any defenses arising out of failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of capacity, statute of limitations, Lender liability, unenforceability of any loan document, accord and satisfaction, usury, or the extension, renewal, and modification of the Indebtedness.

Mortgagor, to the extent permitted by law, further waives and agrees not to assert any and all rights, benefits, and defenses that might otherwise be available under the provisions of the governing law that might operate, contrary to any agreements between Mortgagor, and Lender, to limit Mortgagor's liability to Lender, including all defenses of suretyship.

**TO THE EXTENT PERMITTED BY LAW, MORTGAGOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN ANY NOTICE REQUIRED HEREIN, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO LENDER EXERCISING ITS RIGHTS UNDER THIS SECURITY INSTRUMENT.**

**WAIVER OF APPRAISEMENT RIGHTS.** Mortgagor waives all appraisement rights relating to the Property to the extent permitted by law.

**LENDER'S EXPENSES.** Mortgagor agrees to pay all expenses incurred by Lender in connection with enforcement of its rights under the Indebtedness, this Security Instrument or in the event Lender is made party to any litigation because of the existence of the Indebtedness or this Security Instrument, as well as court costs, collection charges and reasonable attorneys' fees and disbursements.

**ASSIGNABILITY.** Lender may assign or otherwise transfer this Security Instrument or any of Lender's rights under this Security Instrument without notice to Mortgagor. Mortgagor may not assign this Security Instrument or any part of the Security Instrument without the express written consent of Lender.

**GOVERNING LAW.** This Security Instrument is governed by the laws of the State of Kentucky except to the extent that federal law controls.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Security Instrument is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of the Security Instrument without invalidating the remainder of either the affected provision or this Security Instrument.

**WAIVER OF JURY TRIAL. All parties to this Security Instrument hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Security Instrument or any other instrument, document or agreement executed or delivered in connection with this Security Instrument or the Related Documents.**

**ORAL AGREEMENTS DISCLAIMER.** This Security Instrument represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**DEFEASANCE.** If Mortgagor keeps, observes and performs all of the covenants and conditions of this Security Instrument and pays, or causes to be paid, to Lender all of the Indebtedness owing pursuant to the Related Documents, then this Security Instrument will be void, otherwise it will remain in effect.

**By signing this Security Instrument, each Mortgagor acknowledges that all provisions have been read and understood.**

WILLIAM H BARE                          Date
Individually

CHRISTY BARE                            Date
Individually

© 2004-2021 Compliance Systems, LLC 67af0480-edb08dc1 - 2021.162 0.4
Commercial Real Estate Security Instrument - DL4007                Page 6 of 8                www.compliancesystems.com

BK 1528    PG 685    DOC# 10017736

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF    KENTUCKY    )
                        )
COUNTY OF    GREENUP    )

The foregoing instrument was acknowledged by WILLIAM H BARE and CHRISTY BARE,    before me on February 8, 2023. In witness whereof, I hereunto set my hand and, if applicable, my official seal.

My commission expires: 8/24/24

residing in

GREENUP County.    Identification Number    10823

(Official Seal)

Sharon Blum
NOTARY PUBLIC
STATE AT LARGE
KENTUCKY
ID. # 10823
MY COMMISSION EXPIRES 08-24-2024

BK 1528    PG 686    DOC# 10017736

THIS INSTRUMENT WAS PREPARED BY:
SUMMIT COMMUNITY BANK, INC
COMMERCIAL LOAN PROCESSOR
1000 ASHLAND DRIVE, SUITE 501
Ashland KY 411010000

AFTER RECORDING RETURN TO:
SUMMIT COMMUNITY BANK, INC
310 North Main Street
Moorefield WV 268360000

*2-8-23*

SUMMIT COMMUNITY          Date
BANK, INC
COMMERCIAL LOAN PROCESSOR

© 2004-2021 Compliance Systems, LLC 67af0480-edb08dc1 - 2021.162 0.4
Commercial Real Estate Security Instrument - DL4007          Page 8 of 8          www.compliancesystems.com

BK 1528    PG 687    DOC# 10017736

## EXHIBIT A

Situated on the waters of Little Hoods Creek in Boyd County, Kentucky, and being Lot No. 6 and the easterly one-half in width by the entire depth of Lot No. 5 adjoining Lot No. 6 of the Charles Weis Subdivision, as shown on plat recorded in the Office of the Clerk of the Boyd County Court, Kentucky, in Plat Book 8, Page 28, and being more particularly described as follows:

Beginning at a point in the northerly right of way of Lulu Street, said point being S 86-09 E, 225 feet from the southwest corner of Lot No. 1; thence with the northerly right of way of Lulu Street S 86-09 E, 75 feet to a point, said point being common comer to Lots Nos. 6 and 7; thence with the line between Lots Nos. 6 and 7, N 3-51 E, 123.39 feet to a point; thence S 89-48 W. 75.18 feet to a point; thence S 3-51 W, 118.08 feet to the point of beginning.

Being the same property conveyed to William H. Bare, from Nationstar Mortgage LLC, a Delaware limited liability company, by that certain deed dated April 21, 2015, and appearing of record in Deed Book 772, Page 405, in the office of the Boyd County Court Clerk of Kentucky.

{01004844-1}

**EXHIBIT W**

Filed: 02/09/2023  11:41:31 AM
BK 1528    PG 688 - 694 (7)  DOC# 10017737
Received By: BILLIE JOHNSON
Recording Fee Total: $56.00
Transfer Tax Paid: $0.00

(Space Above This Line For Recording Data)

LOAN NUMBER: ███9380

# ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT OF LEASES AND RENTS ("Assignment") is made on February 8, 2023, between WILLIAM H BARE and CHRISTY BARE, whose address is 111 LOST CANYON DRIVE, RACELAND, Kentucky 41169 ("Assignor") and the assignee, SUMMIT COMMUNITY BANK, INC, whose address is 1000 ASHLAND DRIVE, SUITE 501, Ashland, Kentucky 41101 ("Lender"), which is organized and existing under the laws of the State of West Virginia. Assignor, in consideration of loans extended by Lender and for other valuable consideration, the receipt of which is acknowledged, hereby grants, transfers, assigns, and sets over to Lender's all right, title and interest in and to (a) all leases, rental agreements, use agreements, and any other contracts, agreements, arrangements, or understandings, whether oral or written, whether now existing or hereafter entered into, for any lease, occupancy, renting, or other use arising from or relating to all or any party of the Property; (b) any and all extensions, renewals, modifications, and amendments thereto or thereof; (c) any guaranties for the payment and/or performance thereof; and (d) any and all rights, benefits, payments, products, and proceeds therefrom, including without limitation, Assignor's right to enforce any and all rights thereunder and receive and collect any payments or amounts owing therefrom (singularly referred to as a "Lease" and collectively referred to as the "Leases"); and rents, issues, profits, privileges revenue, income, royalties, cash, accounts receivable, security deposits, advance rentals, and any other benefit, amounts, payments, or proceeds, due and to become due under the Leases (the "Rents") arising from or relating to all or any part of the following described real property:

Address: 167 Lulu St, Ashland, Kentucky 41102
Legal Description: See attached Exhibit A for further description

("Property") which secures the following:

• Loan with a principal amount of $86,700.00

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, prior mortgages, prior deeds of trust, prior deeds to secure debt, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with this Assignment whether now or hereafter existing, including any modifications, extensions, substitutions or renewals of any of the foregoing. The

CSi

BK 1528    PG 689

DOC# 10017737

Related Documents are hereby made a part of this Assignment by reference thereto, with the same force and effect as if fully set forth herein.

**INDEBTEDNESS.** *This Assignment secures the amounts as may be evidenced by a promissory note or notes of even, prior or subsequent date hereto, including future advances and every other indebtedness of any and every kind now or hereafter owing from* BARE ARMS LIMITED LIABILITY COMPANY to SUMMIT COMMUNITY BANK, INC, *howsoever created or arising, whether primary, secondary or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the agreements and covenants of this Assignment and all Related Documents (hereinafter all referred to as the "Indebtedness").*

**MATURITY DATE.** The Indebtedness, if not paid earlier, shall be due on February 8, 2043.

**OBLIGATIONS OF ASSIGNOR.** Assignor shall provide true and accurate copies of any or all Leases, as well as any such other documents or information as may be requested by Lender. Assignor shall operate and perform its obligations under the Leases consistent with the terms and provisions of this Assignment and shall not take or fail to take such actions which may result in a default or termination of the Leases or otherwise reduce, impair, or diminish the value of any Lease or the Rents thereunder. Assignor shall notify Lender immediately in writing upon any default, cancellation, termination, or any other notices received or provided in accordance with the terms of any Lease. So long as the Indebtedness remains unpaid, Assignor shall not, without the written consent of Lender: (a) cancel any Leases; (b) accept the surrender of any Leases; (c) modify or alter any Leases in any way, either orally or in writing; (d) reduce the rent set forth in any Leases; (e) consent to the assignment of any lessee's interest under any Leases, or to any subletting thereunder; or (f) make any other assignment, pledge, encumbrance, or any other disposition of any Leases, or of the Rents. Any of the above acts, if done without the written consent of Lender shall be null and void, and shall constitute a default under the Assignment and the Related Documents. Upon request by Lender, Assignor will notify any lessees, sublessees, or other obligors under the Leases in writing, in such form and substance as Lender deems acceptable, of the assignment of the obligations under the Leases to Lender. Should Assignor fail to provide such notices, Lender may send or forward any such notices, either in Lender's name or in Assignor's name, to any or all lessees, sublessees, or obligors under the Leases.

**REPRESENTATIONS OF ASSIGNOR.** Assignor hereby represents: (a) Assignor is, and for the duration of this Assignment, will continue to be the legal and beneficial owner of the Leases and Rents; (b) there are currently no leases, subleases or agreements to lease or sublease all of or any part of the Property other than any existing leases, subleases or agreements to lease or sublease all of or any part of the Property, which Assignor has disclosed in writing to Lender (c) the Leases are valid and enforceable and no default exists under the Leases; (d) Assignor is entitled to receive all the Rents and to enjoy all the Rents and benefits mentioned herein and assigned hereby; (e) said Rents have not been sold, assigned, transferred, or set over by any instrument now in force and shall not at any time during the life of this Assignment be sold, assigned, transferred, or set over by Assignor, or any other person taking under or through Assignor except as pursuant to this Assignment; and (f) Assignor has the sole right to sell, assign, transfer, and set over the same and to grant and confer upon Lender the rights, interests, powers, and authorities herein granted and conferred.

**NO LIABILITY OF LENDER.** Lender shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or under or by reason of this Assignment and Assignor shall, and hereby agrees, to indemnify Lender for, and to hold Lender harmless from, any and all liability, loss or damage which may or might be incurred under the Leases or under or by any reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Lender by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases. This Assignment shall not operate to place any obligation or liability for the control, care, management, or repair of the Property upon Lender, nor for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Lender responsible or liable for any waste committed on the Property, including without limitation the presence of any hazardous substances, or for any negligence in the management, upkeep, repair, or control of the Property resulting in loss or injury or death to any lessee, licensee, employee, or stranger. Assignor's obligations and liabilities pursuant to this provision shall survive the cancellation of this Assignment and shall survive Lender's exercise of any of its rights and remedies provided for under this Assignment or otherwise provided by law.

CSi

**COLLECTION OF RENTS.** Provided no Event of Default exists under the Indebtedness or any of the Related Documents, Lender agrees not to demand from any lessor or lessee under the Leases or from any other persons liable therefor, any of the Rents hereby assigned, but shall permit Assignor to collect all such Rents from the Property and the Leases, so long as not collected more than one (1) month in advance of their due date.

**EVENTS OF DEFAULT.** The following events shall constitute default under this Assignment (each an "Event of Default"):

(a)  Failure to make required payments when due under Indebtedness;

(b)  Failure to perform or keep any of the covenants of this Assignment or a default under any of the Related Documents;

(c)  Assignor or any person or entity obligated on the Indebtedness materially defaults under a provision of an agreement with a third party or if the indebtedness under such an agreement is accelerated;

(d)  The making of any oral or written statement or assertion to Lender that is false or misleading in any material respect by Assignor or any person obligated on the Indebtedness;

(e)  If there is entered against Assignor, or any person or entity obligated on the Indebtedness, a judgment which materially affects the business or financial condition of such party, or materially affects the Property or the Leases and Rents, or if a tax lien, writ of attachment, garnishment, execution, or similar item is or will be issued against the Property, and which remains unpaid, unstayed on appeal, undischarged, unbonded, or undismissed within such time and manner as deemed acceptable by Lender, in its sole discretion;

(f)  The death, dissolution, insolvency, bankruptcy or receivership proceeding of Assignor or of any person or entity obligated on the Indebtedness;

(g)  Any assignment by Assignor for the benefit of Assignor's creditors;

(h)  Lender has a good-faith belief that Lender's rights in the Property or the Leases and Rents are or will soon be impaired;

(i)  A material adverse change occurs in the financial condition, ownership, or management of Borrower or any person obligated on the Indebtedness; or

(j)  Lender deems itself insecure for any reason whatsoever.

**REMEDIES.** Upon the occurrence of an Event of Default under this Assignment, the Indebtedness or the Related Documents, Lender may declare all sums secured hereby immediately due and payable and may, at Lender's option, without notice, either in Lender's person or by agent and with or without bringing any action or proceeding, or by any receiver appointed by the court, enter upon, take possession of, and manage and operate the Property, and each and every part thereof, and in connection therewith, Lender may make, enforce, and modify any of the Leases; fix or modify Rents; repair, maintain and improve the Property; employ contractors, subcontractors, and workmen in and about the Property; obtain and evict tenants; in its own name, sue for and otherwise collect or reserve any and all Rents, including those past due and unpaid; employ leasing agents, managing agents, attorneys, and accountants in connection with the enforcement of Lender's rights hereunder and pay the reasonable fees and expenses thereof; and otherwise do and perform any and all acts which Lender may deem necessary and appropriate in and about the Property for the protection thereof and of Lender's rights hereunder and under the Related Documents, and any and all amounts expended by Lender in connection with the foregoing shall constitute additional Indebtedness secured hereby to the extent permitted by law. Lender shall apply any moneys collected, as aforesaid, less costs and expenses incurred, upon any Indebtedness secured hereby in such order and manner as Lender may determine and to the extent permitted by law.

The parties agree that the remedies available may be inadequate compensation for any loss. Therefore, to the extent allowed by applicable law, in Lender's sole discretion, Lender may seek specific performance of any promise, obligation, or covenant contained in this Assignment. Any defense in any action for specific performance that the remedy at law would be adequate is waived.

To the extent allowed by law, all of Lender's rights and remedies, however evidenced and from whichever source they derive, are cumulative in nature. Lender is entitled to exercise any remedy in any order it determines appropriate. Lender may exercise remedies singularly or concurrently. This Assignment is continuing, irrevocable, and shall remain in full force and effect until such time as Lender executes a written cancellation of this Assignment.

© 2004-2021 Compliance Systems, LLC 3a5c410e-a9a25489 - 2021 155 0 2
Assignment of Leases and Rents - DL4001                 Page 3 of 6                 www.compliancesystems.com

**CSi**

**NOTICES.** Unless otherwise required by applicable law or provided under this Assignment, any notice or demand given by Lender to any party is considered effective when: (i) it is deposited in the United States Mail with the appropriate postage; (ii) when it is sent via electronic mail; (iii) when it is sent via facsimile; (iv) when it is deposited with a nationally recognized overnight courier service; (v) on the day of personal delivery; or (vi) any other commercially reasonable means. Such notice or demand shall be sent to the party at the address contained herein or at an alternative address, e-mail address, or facsimile number as may be provided to Lender in writing. Any notice given to Lender must be addressed to Lender at the address contained herein or at an alternative address as may be provided by Lender in writing.

**GENERAL WAIVERS.** To the extent permitted by law, Assignor waives notice of Lender's acceptance of this Assignment, defenses based on suretyship, any defense arising from any election by Lender under the United States Bankruptcy Code, Uniform Commercial Code, as enacted in the state where Lender is located or other applicable law or in equity, demand, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor and any other notice.

**TO THE EXTENT PERMITTED BY LAW, ASSIGNOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN ANY NOTICE REQUIRED HEREIN, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO THE LENDER EXERCISING ITS RIGHTS UNDER THIS ASSIGNMENT.**

**PAYMENT OF RENTS TO LENDER.** All tenants or occupants of any part of the Property (including without limitation, all persons claiming any interest as lessor or lessee under any Leases) are hereby authorized to recognize the claims and demands of Lender without investigation as to the reason for any action taken by Lender or the validity of the amount of indebtedness owing to or the existence of any default hereunder or under the Related Documents, or the application of payments made by Lender, of any amounts to be paid to Lender. Lender's sole signature shall be sufficient for the exercise of any right under this Assignment and Lender's sole receipt given for any sums received shall be a full discharge and release therefor to any such tenant or occupant of the Property. Checks for all or any part of the rental collected under this Assignment shall be made to the exclusive order of Lender.

**ASSIGNABILITY.** Lender may assign or otherwise transfer this Assignment or any of Lender's rights under this Assignment without notice to Assignor. Assignor may not assign this Assignment or any part of the Assignment without the express written consent of Lender.

**SUCCESSORS AND ASSIGNS.** All covenants and agreements contained in this Assignment shall bind, and the rights hereunder shall inure to the respective successors and assigns of the Assignor and the Lender.

**ENTIRE AGREEMENT** This Assignment, along with any of the Related Documents, encompasses the entire agreement of the parties and supersedes all prior oral or written agreements, commitments, and understandings between the parties relating to the subject matter of this Assignment. This Assignment cannot be modified except by a writing executed by those parties burdened by the modification.

**SEVERABILITY.** If any term is illegal, invalid, or unenforceable, the term shall be excluded and ineffective to the extent of such invalidity or unenforceability. All other terms shall remain in full force and effect.

**HEADINGS.** The headings are for the general convenience of the parties in identifying subject matter. The headings have no limiting effect on the text that follows any particular heading.

**SINGULAR AND PLURAL TERMS.** All words in the singular shall include the plural and the plural shall include the singular.

**ATTORNEY'S FEES, COSTS, AND EXPENSES.** Assignor agrees to pay all of Lender's costs, fees, and expenses arising out of or related to the enforcement of this Assignment or the relationship between the parties. Included in the fees that Lender may recover from Assignor are the reasonable attorney's fees that Lender incurs, including all fees incurred in the course of representing Lender before, during, or after any lawsuit, arbitration, or other proceeding and those incurred in appeals, whether the issues arise out of contract, tort, bankruptcy, or any other area of law. Included in the costs and expenses which Lender may recover are all court, alternative dispute resolution or other collection costs, and all expenses incidental to perfecting Lender's security interests and liens, preserving the collateral (including payment of taxes and insurance), records searches, and expenses related to

CSi

audits, inspection, and copying. All costs and expenses Lender is entitled to recover shall accrue interest at the highest rate set forth in any of the Related Documents.

**GOVERNING LAW.** This Assignment will be governed by the laws of the State of Kentucky including all proceedings arising from this Assignment.

**COUNTERPARTS.** This Assignment may be executed by the parties using any number of copies. All executed copies taken together will be treated as a single Assignment.

**WAIVER OF JURY TRIAL. All parties to this Assignment hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Assignment or any other instrument, document or agreement executed or delivered in connection with this Assignment or the Related Documents.**

**ORAL AGREEMENTS DISCLAIMER.** This Assignment represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

By signing this Assignment, Assignor acknowledges reading, understanding, and agreeing to all its provisions.

WILLIAM H BARE                    Date                CHRISTY BARE              Date
Individually                                          Individually

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF    KENTUCKY          )
                             )
COUNTY OF   GREENUP           )

The foregoing instrument was acknowledged by WILLIAM H BARE and CHRISTY BARE,          before me on February 8, 2023. In witness whereof, I hereunto set my hand and, if applicable, my official seal.

My commission expires: 7/24/24

                        residing in
GREENUP County.                              Identification Number   10823

(Official Seal)

Sharon Blum
NOTARY PUBLIC
STATE AT LARGE
KENTUCKY
ID. # 10823
MY COMMISSION EXPIRES 08-24-2024

© 2004-2021 Compliance Systems, LLC 3a5c410c-a9a25489 - 2021.155.0.2
Assignment of Leases and Rents - DL4001                    Page 5 of 6                    www.compliancesystems.com

**CSi**

BK 1528    PG 693

DOC# 10017737

THIS INSTRUMENT WAS PREPARED BY:
SUMMIT COMMUNITY BANK, INC
COMMERCIAL LOAN PROCESSOR
1000 ASHLAND DRIVE, SUITE 501
Ashland KY 411010000

AFTER RECORDING RETURN TO:
SUMMIT COMMUNITY BANK, INC
310 North Main Street
Moorefield WV 268360000

_____  2-8-23

SUMMIT COMMUNITY        Date
BANK, INC
COMMERCIAL LOAN PROCESSOR

© 2004-2021 Compliance Systems, LLC 3a5c410e-a9a25489 - 2021.155.0.2
Assignment of Leases and Rents - DL4001          Page 6 of 6          www.compliancesystems.com

CSi

BK 1528    PG 694    DOC# 10017737

## EXHIBIT A

Situated on the waters of Little Hoods Creek in Boyd County, Kentucky, and being Lot No. 6 and the easterly one-half in width by the entire depth of Lot No. 5 adjoining Lot No. 6 of the Charles Weis Subdivision, as shown on plat recorded in the Office of the Clerk of the Boyd County Court, Kentucky, in Plat Book 8, Page 28, and being more particularly described as follows:

Beginning at a point in the northerly right of way of Lulu Street, said point being S 86-09 E, 225 feet from the southwest corner of Lot No. 1; thence with the northerly right of way of Lulu Street S 86-09 E, 75 feet to a point, said point being common corner to Lots Nos. 6 and 7; thence with the line between Lots Nos. 6 and 7, N 3-51 E, 123.39 feet to a point; thence S 89-48 W. 75.18 feet to a point; thence S 3-51 W, 118.08 feet to the point of beginning.

Being the same property conveyed to William H. Bare, from Nationstar Mortgage LLC, a Delaware limited liability company, by that certain deed dated April 21, 2015, and appearing of record in Deed Book 772, Page 405, in the office of the Boyd County Court Clerk of Kentucky.

{01004844-1}

## EXHIBIT X



## GUARANTY OF SPECIFIC TRANSACTION



310 North Main Street Moorefield, WV 26836
Phone number: (877) 776-9722

| LOAN NUMBER | GUARANTY DATE | |
|---|---|---|
| ■9380 | February 8, 2023 | |

### GUARANTOR INFORMATION

WILLIAM H BARE
111 LOST CANYON DRIVE
RACELAND, KY 41169

**Type of Entity:** Individual
**State of Residence:** Kentucky

### BORROWER INFORMATION

BARE ARMS LIMITED LIABILITY COMPANY
3502 WINCHESTER AVENUE
ASHLAND, KY 41101

**Type of Business Entity:** Limited Liability Company
**State of Organization/Formation:** Kentucky

**GUARANTY OF SPECIFIC TRANSACTION.** This Guaranty Of Specific Transaction will be referred to in this document as the "Guaranty."

**LENDER.** "Lender" means SUMMIT COMMUNITY BANK, INC whose address is 1000 ASHLAND DRIVE, SUITE 501, Ashland, Kentucky 41101, its successors and assigns.

**BORROWER.** "Borrower" means each party identified above to whom Lender has extended credit and financial accommodations.

**GUARANTOR.** "Guarantor" means the party identified above that is undertaking certain liabilities to the Lender, as specified herein.

**OBLIGATIONS.** "Obligations" means any and all indebtedness, obligations, undertakings, covenants, agreements, and liabilities of the Borrower to the Lender, and all claims of the Lender against the Borrower, now existing or hereafter arising, direct or indirect (including participations or any interest of the Lender in indebtedness of the Borrower to others), acquired outright, conditionally, or as collateral security from another, absolute or contingent, joint or several, secured or unsecured, matured or not matured, monetary or nonmonetary, arising out of contract or tort, liquidated or unliquidated, arising by operation of law or otherwise and all extensions, renewals, refundings, replacements, and modifications of any of the foregoing.

**NOTICE TO GUARANTOR.** Lender has agreed to extend credit and financial accommodations to Borrower pursuant to a promissory note executed on even date herewith (the "Note"), and all agreements, instruments, and documents executed or delivered in connection with the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "Related Documents").

Guarantor is affiliated with Borrower, and as such, shall be benefited directly by the transaction contemplated by the Related Documents, and shall execute this Guaranty in order to induce Lender to enter the transaction.

In consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby guarantees, promises and undertakes, both jointly and severally, as follows:

**GUARANTY OF SPECIFIC TRANSACTION.** Guarantor hereby unconditionally, absolutely, and irrevocably guarantees to Lender the full and prompt payment and performance when due (whether at the maturity date or by required prepayment, acceleration, or otherwise) of an Obligation of the Borrower to the Lender as evidenced by a note or agreement dated February 8, 2023, in the principal amount of $86,700.00, plus interest, charges, and fees as provided for, including all extensions and renewals thereof, until the Obligation of Borrower is fully paid. Guarantor's liability for future obligations ends on February 8, 2043 ("Termination Date"). After the Termination Date, Guarantor remains liable with respect to an Obligation of Borrower created or incurred prior to the Termination Date or extensions or renewals of, interest accruing on, or fees, costs or expenses incurred with respect to, such Obligation of Borrower on or after the Termination Date.

This is a guaranty of payment and not of collection.

**EXPENSES.** Guarantor hereby agrees, to the extent permitted by law, to pay any and all expenses incurred in enforcing any rights under this Guaranty. Without limiting the foregoing, Guarantor agrees that whenever any attorney is used by the Lender to obtain payment hereunder, to enforce this Guaranty, to adjudicate the rights of the parties hereunder, or to advise the Lender of its rights, the Lender shall be entitled to recover reasonable attorneys' fees, all court costs, and expenses attributable thereto (the "Expenses").

**CONSENT.** The Guarantor consents to all extensions, renewals, and modifications made by the Lender for, or on account of, any indebtedness of Borrower to Lender. Lender may proceed directly against Guarantor in the event of any default by Borrower without resorting to any other persons, to the assets of Borrower, to any collateral security granted by Borrower to Lender, or the liquidation of any collateral security given hereunder to secure this Guaranty. Furthermore, to the extent permitted by law, Guarantor hereby agrees and consents that the Lender may from time to time without notice to Guarantor and without affecting the liability of Guarantor (a) release, impair, sell or otherwise dispose of any security or collateral, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the obligations of Borrower or to proceed against Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest, (g) accept additional security or collateral, (h) determine the allocation

CSi

and application of payments and credits and accept partial payments, (i) determine what, if anything, may at any time be done with reference to any security or collateral, and (j) settle or compromise the amount due or owing or claimed to be due or owing from any Borrower, guarantor, or surety, which settlement or compromise shall not affect the undersigned's liability for the full amount of the guaranteed obligations. To the extent permitted by law, Guarantor expressly consents to and waives notice of all of the above.

**REPRESENTATIONS.** Guarantor represents and warrants that Guarantor has established adequate means of obtaining from sources other than Lender, on a continuing basis, financial and other information pertaining to Borrower's financial condition, and the status of Borrower's performance of obligations imposed by the loan documents, and Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and Lender has made no representation to Guarantor as far as any such matters. Guarantor further represents and warrants that (i) neither this Guaranty nor any other Related Document to which Guarantor is a party will violate any provision of law, rule, or regulation, or any order of any court or other governmental agency to which Guarantor is subject, any provision of any agreement or instrument to which the Guarantor is a party or by which the Guarantor or any of the Guarantor's assets are bound, or be in conflict with, result in a breach of, or constitute a default under any such agreement or instrument; and (ii) no action, approval, filing, or registration with any governmental public body or authority, nor the consent of any other person or entity, nor any other legal formality, is required in connection with the entering into, performance, or enforcement of this Guaranty, except such as have already been obtained or taken and with respect to which a copy or other satisfactory evidence has been provided to Lender.

**SUBROGATION.** Until the Obligations are irrevocably paid and discharged in full, Guarantor waives all rights of subrogation, reimbursement, indemnity, contribution, and any other right of recourse against or with respect to Borrower or any other person. Notwithstanding any payment or payments made by the Guarantor hereunder, the Guarantor will not exercise any rights of the Lender against the Borrower, nor shall the Guarantor seek contribution from any other Guarantor until all the Obligations shall have been paid and performed in full. If any amount shall be paid to the Guarantor on account of such subrogation rights at any time when all the Obligations will not have been paid in full, such amount shall be held in trust for the benefit of the Lender and shall forthwith be paid to the Lender to be credited and applied to the Obligations, whether matured or unmatured.

**GENERAL WAIVERS.** Guarantor, to the extent permitted by law, hereby waives (a) notice of acceptance of this Guaranty and all notice of the creation, extension or accrual of any of the Obligations, (b) diligence, presentment, protest, demand for payment, notice of dishonor, notice of intent to accelerate, and notice of acceleration, (c) notice of any other nature whatsoever to the extent permitted by law, (d) any requirement that the Lender take any action whatsoever against the Borrower or any other party or file any claim in the event of the bankruptcy of the Borrower, or (e) failure to protect, preserve, or resort to any collateral, and (f) any and all defenses that could be asserted by Borrower or Guarantor, including, but not limited to, any defenses arising out of failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of capacity, statute of limitations, Lender liability, unenforceability of any loan document, accord and satisfaction, or usury.

Guarantor, to the extent permitted by law, further waives and agrees not to assert any and all rights, benefits, and defenses that might otherwise be available under the provisions of the governing law that might operate, contrary to Guarantor's agreements in this Guaranty, to limit Guarantor's liability under, or the enforcement of, this Guaranty, including all defenses of suretyship.

**LENDER'S RIGHTS.** Any delay, failure, omission, or lack on the part of the Lender to enforce, assert, or exercise any provision or take any action pursuant to the Related Documents, including any right, power, or remedy conferred on Lender in any of the Related Documents or any action on the part of Lender granting indulgence or extension in any form Guaranty or any Related Documents does not operate as a waiver of the Lender's ability to exercise all of its rights. The Lender may choose to partially exercise rights under this Guaranty and any Related Documents, but that does not prevent the Lender from fully exercising these rights.

**SURVIVAL.** This Guaranty is binding on all heirs, executors, personal representatives, administrators, assigns, and successors of the Guarantor.

**ASSIGNABILITY.** The Lender may, without notice, assign the Obligations, in whole or in part, and each successive assignee of the Obligations so assigned may enforce this Guaranty for its own benefit with respect to the Obligations so assigned. In the event that any person other than the Lender shall become a holder of any of the Obligations, the reference to the Lender shall be construed to refer to each such holder.

**RIGHT OF SET-OFF.** To the extent permitted by law, Guarantor gives Lender the right to set-off any of Guarantor's accounts or property which may be in Lender's possession against any amount owed under this Guaranty. This right of set-off does not extend to any Keogh account, IRA, or similar tax deferred deposit. Further, the Lender shall have available all remedies under applicable state and federal laws, including the garnishment of wages, to the extent permitted by law.

**WAIVER OF JURY TRIAL. All parties to this Guaranty hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Guaranty or any other instrument, document or agreement executed or delivered in connection with this Guaranty or the Related Documents.**

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Guaranty is invalid or prohibited by applicable law, that term or provision will be ineffective, but only to the extent required to make it lawful. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Guaranty without invalidating the remainder of the provisions of this Guaranty.

**GOVERNING LAW.** This Guaranty shall be governed by and construed in accordance with the laws of the State of Kentucky except to the extent that federal law controls.

**HEADINGS AND GENDER.** The headings in this Guaranty are for convenience in identifying subject matter. The headings have no limiting effect on the text that follows any particular heading. As the context herein requires, the singular shall include the plural and one gender shall include one or both other genders.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Guaranty shall be joint and several, to the extent of their respective obligations.

**CSi**

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**ACKNOWLEDGMENT.** Guarantor hereby acknowledges that: (a) the liabilities undertaken by Guarantor in this Guaranty are complex in nature; and (b) numerous possible defenses to the enforceability of these liabilities may presently exist and/or may arise hereafter. As part of Lender's consideration for entering into this transaction, Lender has specifically bargained for the waiver and relinquishment by Guarantor of all such defenses, and Guarantor has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type contemplated herein. Given all of the above, Guarantor does hereby represent and confirm to Lender that Guarantor is fully informed regarding, and that Guarantor does thoroughly understand: (i) the nature of all such possible defenses, and (ii) the circumstances under which such defenses may arise, and (iii) the benefits which such defenses might confer upon Guarantor, and (iv) the legal consequences to Guarantor of waiving such defenses. Guarantor acknowledges that Guarantor makes this Guaranty with the intent that this Guaranty and all of the informed waivers herein shall each and all be fully enforceable by Lender, and that Lender is induced to enter into this transaction in material reliance upon the presumed full enforceability thereof.

By signing this Guaranty, Guarantor acknowledges reading, understanding, and agreeing to all its provisions.

_____    2/8/23
WILLIAM H BARE                      Date
Individually

© 2004-2021 Compliance Systems, LLC b0733070-4b302ed9 - 2021.163.0.4
Guaranty Of Specific Transaction - DL4011                    Page 3 of 3                    www.compliancesystems.com

**CSi**

## **EXHIBIT Y**



# GUARANTY OF SPECIFIC TRANSACTION



**COMMUNITY BANK.**

310 North Main Street Moorefield, WV 26836
Phone number: (877) 776-9722

| LOAN NUMBER | GUARANTY DATE | |
|---|---|---|
| ███9380 | February 8, 2023 | |

## GUARANTOR INFORMATION
CHRISTY BARE
111 LOST CANYON DRIVE
RACELAND, KY 41169

**Type of Entity:** Individual
**State of Residence:** Kentucky

## BORROWER INFORMATION
BARE ARMS LIMITED LIABILITY COMPANY
3502 WINCHESTER AVENUE
ASHLAND, KY 41101

**Type of Business Entity:** Limited Liability Company
**State of Organization/Formation:** Kentucky

**GUARANTY OF SPECIFIC TRANSACTION.** This Guaranty Of Specific Transaction will be referred to in this document as the "Guaranty."

**LENDER.** "Lender" means SUMMIT COMMUNITY BANK, INC whose address is 1000 ASHLAND DRIVE, SUITE 501, Ashland, Kentucky 41101, its successors and assigns.

**BORROWER.** "Borrower" means each party identified above to whom Lender has extended credit and financial accommodations.

**GUARANTOR.** "Guarantor" means the party identified above that is undertaking certain liabilities to the Lender, as specified herein.

**OBLIGATIONS.** "Obligations" means any and all indebtedness, obligations, undertakings, covenants, agreements, and liabilities of the Borrower to the Lender, and all claims of the Lender against the Borrower, now existing or hereafter arising, direct or indirect (including participations or any interest of the Lender in indebtedness of the Borrower to others), acquired outright, conditionally, or as collateral security from another, absolute or contingent, joint or several, secured or unsecured, matured or not matured, monetary or nonmonetary, arising out of contract or tort, liquidated or unliquidated, arising by operation of law or otherwise and all extensions, renewals, refundings, replacements, and modifications of any of the foregoing.

**NOTICE TO GUARANTOR.** Lender has agreed to extend credit and financial accommodations to Borrower pursuant to a promissory note executed on even date herewith (the "Note"), and all agreements, instruments, and documents executed or delivered in connection with the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "Related Documents").

Guarantor is affiliated with Borrower, and as such, shall be benefited directly by the transaction contemplated by the Related Documents, and shall execute this Guaranty in order to induce Lender to enter the transaction.

In consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby guarantees, promises and undertakes, both jointly and severally, as follows:

**GUARANTY OF SPECIFIC TRANSACTION.** Guarantor hereby unconditionally, absolutely, and irrevocably guarantees to Lender the full and prompt payment and performance when due (whether at the maturity date or by required prepayment, acceleration, or otherwise) of an Obligation of the Borrower to the Lender as evidenced by a note or agreement dated February 8, 2023, in the principal amount of $86,700.00, plus interest, charges, and fees as provided for, including all extensions and renewals thereof, until the Obligation of Borrower is fully paid. Guarantor's liability for future obligations ends on February 8, 2043 ("Termination Date"). After the Termination Date, Guarantor remains liable with respect to an Obligation of Borrower created or incurred prior to the Termination Date or extensions or renewals of, interest accruing on, or fees, costs or expenses incurred with respect to, such Obligation of Borrower on or after the Termination Date.

This is a guaranty of payment and not of collection.

**EXPENSES.** Guarantor hereby agrees, to the extent permitted by law, to pay any and all expenses incurred in enforcing any rights under this Guaranty. Without limiting the foregoing, Guarantor agrees that whenever any attorney is used by the Lender to obtain payment hereunder, to enforce this Guaranty, to adjudicate the rights of the parties hereunder, or to advise the Lender of its rights, the Lender shall be entitled to recover reasonable attorneys' fees, all court costs, and expenses attributable thereto (the "Expenses").

**CONSENT.** The Guarantor consents to all extensions, renewals, and modifications made by the Lender for, or on account of, any indebtedness of Borrower to Lender. Lender may proceed directly against Guarantor in the event of any default by Borrower without resorting to any other persons, to the assets of Borrower, to any collateral security granted by Borrower to Lender, or the liquidation of any collateral security given hereunder to secure this Guaranty. Furthermore, to the extent permitted by law, Guarantor hereby agrees and consents that the Lender may from time to time without notice to Guarantor and without affecting the liability of Guarantor (a) release, impair, sell or otherwise dispose of any security or collateral, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the obligations of Borrower or to proceed against Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest, (g) accept additional security or collateral, (h) determine the allocation

CSi

and application of payments and credits and accept partial payments, (i) determine what, if anything, may at any time be done with reference to any security or collateral, and (j) settle or compromise the amount due or owing or claimed to be due or owing from any Borrower, guarantor, or surety, which settlement or compromise shall not affect the undersigned's liability for the full amount of the guaranteed obligations. To the extent permitted by law, Guarantor expressly consents to and waives notice of all of the above.

**REPRESENTATIONS.** Guarantor represents and warrants that Guarantor has established adequate means of obtaining from sources other than Lender, on a continuing basis, financial and other information pertaining to Borrower's financial condition, and the status of Borrower's performance of obligations imposed by the loan documents, and Guarantor agrees to keep adequately informed from such means of any facts, events or circumstances which might in any way affect Guarantor's risks hereunder, and Lender has made no representation to Guarantor as far as any such matters. Guarantor further represents and warrants that (i) neither this Guaranty nor any other Related Document to which Guarantor is a party will violate any provision of law, rule, or regulation, or any order of any court or other governmental agency to which Guarantor is subject, any provision of any agreement or instrument to which the Guarantor is a party or by which the Guarantor or any of the Guarantor's assets are bound, or be in conflict with, result in a breach of, or constitute a default under any such agreement or instrument; and (ii) no action, approval, filing, or registration with any governmental public body or authority, nor the consent of any other person or entity, nor any other legal formality, is required in connection with the entering into, performance, or enforcement of this Guaranty, except such as have already been obtained or taken and with respect to which a copy or other satisfactory evidence has been provided to Lender.

**SUBROGATION.** Until the Obligations are irrevocably paid and discharged in full, Guarantor waives all rights of subrogation, reimbursement, indemnity, contribution, and any other right of recourse against or with respect to Borrower or any other person. Notwithstanding any payment or payments made by the Guarantor hereunder, the Guarantor will not exercise any rights of the Lender against the Borrower, nor shall the Guarantor seek contribution from any other Guarantor until all the Obligations shall have been paid and performed in full. If any amount shall be paid to the Guarantor on account of such subrogation rights at any time when all the Obligations will not have been paid in full, such amount shall be held in trust for the benefit of the Lender and shall forthwith be paid to the Lender to be credited and applied to the Obligations, whether matured or unmatured.

**GENERAL WAIVERS.** Guarantor, to the extent permitted by law, hereby waives (a) notice of acceptance of this Guaranty and all notice of the creation, extension or accrual of any of the Obligations, (b) diligence, presentment, protest, demand for payment, notice of dishonor, notice of intent to accelerate, and notice of acceleration, (c) notice of any other nature whatsoever to the extent permitted by law, (d) any requirement that the Lender take any action whatsoever against the Borrower or any other party or file any claim in the event of the bankruptcy of the Borrower, or (e) failure to protect, preserve, or resort to any collateral, and (f) any and all defenses that could be asserted by Borrower or Guarantor, including, but not limited to, any defenses arising out of failure of consideration, breach of warranty, fraud, payment, statute of frauds, bankruptcy, lack of capacity, statute of limitations, Lender liability, unenforceability of any loan document, accord and satisfaction, or usury.

Guarantor, to the extent permitted by law, further waives and agrees not to assert any and all rights, benefits, and defenses that might otherwise be available under the provisions of the governing law that might operate, contrary to Guarantor's agreements in this Guaranty, to limit Guarantor's liability under, or the enforcement of, this Guaranty, including all defenses of suretyship.

**LENDER'S RIGHTS.** Any delay, failure, omission, or lack on the part of the Lender to enforce, assert, or exercise any provision or take any action pursuant to the Related Documents, including any right, power, or remedy conferred on Lender in any of the Related Documents or any action on the part of Lender granting indulgence or extension in any form Guaranty or any Related Documents does not operate as a waiver of the Lender's ability to exercise all of its rights. The Lender may choose to partially exercise rights under this Guaranty and any Related Documents, but that does not prevent the Lender from fully exercising these rights.

**SURVIVAL.** This Guaranty is binding on all heirs, executors, personal representatives, administrators, assigns, and successors of the Guarantor.

**ASSIGNABILITY.** The Lender may, without notice, assign the Obligations, in whole or in part, and each successive assignee of the Obligations so assigned may enforce this Guaranty for its own benefit with respect to the Obligations so assigned. In the event that any person other than the Lender shall become a holder of any of the Obligations, the reference to the Lender shall be construed to refer to each such holder.

**RIGHT OF SET-OFF.** To the extent permitted by law, Guarantor gives Lender the right to set-off any of Guarantor's accounts or property which may be in Lender's possession against any amount owed under this Guaranty. This right of set-off does not extend to any Keogh account, IRA, or similar tax deferred deposit. Further, the Lender shall have available all remedies under applicable state and federal laws, including the garnishment of wages, to the extent permitted by law.

**WAIVER OF JURY TRIAL. All parties to this Guaranty hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Guaranty or any other instrument, document or agreement executed or delivered in connection with this Guaranty or the Related Documents.**

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Guaranty is invalid or prohibited by applicable law, that term or provision will be ineffective, but only to the extent required to make it lawful. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Guaranty without invalidating the remainder of the provisions of this Guaranty.

**GOVERNING LAW.** This Guaranty shall be governed by and construed in accordance with the laws of the State of Kentucky except to the extent that federal law controls.

**HEADINGS AND GENDER.** The headings in this Guaranty are for convenience in identifying subject matter. The headings have no limiting effect on the text that follows any particular heading. As the context herein requires, the singular shall include the plural and one gender shall include one or both other genders.

**JOINT AND SEVERAL LIABILITY.** The liability of all parties obligated in any manner under this Guaranty shall be joint and several, to the extent of their respective obligations.

CSi

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**ACKNOWLEDGMENT.** Guarantor hereby acknowledges that: (a) the liabilities undertaken by Guarantor in this Guaranty are complex in nature; and (b) numerous possible defenses to the enforceability of these liabilities may presently exist and/or may arise hereafter. As part of Lender's consideration for entering into this transaction, Lender has specifically bargained for the waiver and relinquishment by Guarantor of all such defenses, and Guarantor has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type contemplated herein. Given all of the above, Guarantor does hereby represent and confirm to Lender that Guarantor is fully informed regarding, and that Guarantor does thoroughly understand: (i) the nature of all such possible defenses, and (ii) the circumstances under which such defenses may arise, and (iii) the benefits which such defenses might confer upon Guarantor, and (iv) the legal consequences to Guarantor of waiving such defenses. Guarantor acknowledges that Guarantor makes this Guaranty with the intent that this Guaranty and all of the informed waivers herein shall each and all be fully enforceable by Lender, and that Lender is induced to enter into this transaction in material reliance upon the presumed full enforceability thereof.

**By signing this Guaranty, Guarantor acknowledges reading, understanding, and agreeing to all its provisions.**

CHRISTY BARE                    Date 2/8/23
Individually

**CSi**