UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 0:26-CV-00032-DLB-EBA

BURKE & HERBERT BANK & TRUST COMPANY,                    PLAINTIFF,

V.                          **REPORT AND RECOMMENDATION**

BARE ARMS LIMITED LIABILITY COMPANY, *et al.*,              DEFENDANTS.

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Burke & Herbert Bank & Trust Company (B&H) has filed an emergency motion for the appointment of a receiver and related relief pursuant to Fed. R. Civ. P. 66 and KRS § 425.600. [R. 6; R. 7]. It has also moved for an expedited hearing on its motion and memorandum in support. [R. 8]. Chief Judge David L. Bunning referred the motion to the undersigned for adjudication. [R. 18]. The undersigned held a hearing on the motion on March 6, 2026. [R. 19]. This matter stands ripe for review. For the reasons explained below, the motion will be granted.

**I.**

Between May 5, 2022, and December 23, 2024, B&H allegedly executed several different financial agreements (the Agreements) with Defendants Bare Arms Limited Liability Company (Bare Arms), William H. Bare, and Christy N. Bare (collectively, the Defendants). [R. 1 at pgs. 1–19]. The Agreements include numerous mortgages, Assignments of Leases and Rents, loan guarantees, and a Commercial Security Agreement (the Security Agreement). [*Id.*]. As collateral, the Defendants offered substantially all their assets, including the Defendants' real property and collateral associated with the operation of Bare Arms (collectively, the Collateral). [*Id.*; R. 7 at pg. 2]. Specifically, the Collateral comprises the following: (1) a gun range and restaurant, located at

2134 5th Street, Huntington, West Virginia 25701 (the Huntington Property); (2) a gun range, located at 3502 Winchester Avenue, Ashland, Kentucky 41101 (the Ashland Property); (3) rental properties, located at 516 Oak Street, Wurtland, Kentucky 41144 (the Wurtland Property) and 167 Lulu Street, Ashland, Kentucky 41102 (the Lulu Property); (4) the Bare's personal residence, located at 94 Private Drive, Chesapeake, Ohio 45619 (the Chesapeake Property); and (5) the Security Agreement, which covers all of Bare Arms's business assets. [*See* R. 6-1 at pgs. 1–2; R. 7]. The Agreements all appear to include language which state that, in the event of the Defendants' default, B&H has the right to have a receiver appointed to take possession of the Collateral. [R. 7 at pgs. 5–7].

B&H alleges that the Defendants have been in default under the Agreements since April 2025. [*Id.* at pg. 2]. On July 21, 2025, Bare Arms filed a voluntary petition for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Eastern District of Kentucky. [*Id.* at pgs. 2–3]. The case was ultimately dismissed, and Bare Arms was prohibited from filing any bankruptcy-related action until December 15, 2026. [*Id.* (citing *In Re Bare Arms Ltd. Liab. Co.*, No. 1:25-BK-10174 (Bankr. E.D. Ky. Dec. 15, 2025) [hereinafter Bare Arms Bankruptcy Proceedings])]. During those proceedings, Bare Arms represented that it "intends to cease operations on January 1, 2026." Bare Arms Bankruptcy Proceedings, ECF No. 170 at pg. 5. After the case was dismissed, and pursuant to the Agreements, B&H says that it attempted to reach an agreement with the Defendants regarding the appointment of a receiver. [R. 7 at pg. 3]. Defendants, however, apparently either failed or refused to respond to B&H. [*Id.*]. Later, B&H caught wind that, despite contrary representations in the Bankruptcy Court, Bare Arms remained in operation. [*Id.*].

On January 28, 2026, B&H filed suit against the Defendants for breaching the Agreements and to recover the unpaid amounts due thereunder. [R. 1]. B&H alleges that the unpaid amounts total approximately $2,750,000. [R. 7 at pg. 2]. B&H subsequently filed the present motion, seeking to have a receiver appointed under either the express terms of the Agreements, Rule 66 of the Federal Rules of Civil Procedure, or Ky. Rev. Stat. § 425.600. [R. 7]. The undersigned held a hearing on the motion on March 6, 2026. [R. 19]. The Defendants were notified of the time and location of the hearing, [*see* R. 11; R. 13; R. 14; R. 15], but they did not appear. [R. 19]. After hearing B&H's argument on the motion, which included an oral motion to remove the Chesapeake Property from the scope of the receivership, the undersigned took the matter under advisement. [*Id.*] This recommendation now follows.

## II.

Rule 66 "authorizes the appointment of a receiver if a person with an interest in the property provides sufficient justification." *PNC Bank, Nat. Ass'n v. Goyette Mech. Co., Inc.*, 15 F.Supp.3d 754, 758 (E.D. Mich. 2014). "A receiver is an indifferent person between the parties, appointed by the court to receive the rents, issue, or profits of land, or other thing in question, pending the suit, where it does not seem reasonable to the court that either party should do it." *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 n. 2 (6th Cir. 2006) (citation and internal quotation marks omitted). "A receivership is an 'extraordinary remedy' that a court should employ with the 'utmost caution' and grant 'only in cases of clear necessity to protect plaintiff's interests in the property.'" *Pension Ben. Guar. Corp. v. Evans Tempcon, Inc.*, 630 Fed.Appx. 410, 414 (6th Cir. 2015) (quoting 12 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2983 [hereinafter Wright & Miller]).

"For courts sitting in diversity, 'an appointment of [a] receiver generally will be governed by federal, not state, law.'" *Grayiel v. AIO Holdings*, LLC, No. 3:15-CV-821-CHB, 2023 WL 5281933, at *22 (W.D. Ky. Aug. 16, 2023) (collecting cases). Courts "enjoy[] broad equitable powers to appoint a receiver over assets disputed in litigation before" them. *Liberte*, 462 F.3d at 551. Moreover, "the form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." Wright & Miller § 2983.

> Courts consider several factors when determining whether to appoint a receiver, including:
>
> (1) the adequacy of the security; (2) the financial position of the borrower; (3) any fraudulent conduct on the defendant's part; (4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (5) inadequacy of legal remedies; (6) the probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment; (7) the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and (8) whether the plaintiff's interests sought to be protected will in fact be well-served by a receivership.

*PNC Bank*, 15 F.Supp.3d at 758 (citation omitted); *see also Evans Tempcon*, 630 Fed.Appx. at 414–15. Another important consideration is the parties' advance consent to the appointment of a receiver in the event of a default. *PNC Bank*, 15 F.Supp.3d at 758.

### III.

The undersigned will recommend that a receiver be appointed because the factors substantially weigh in favor of it.

First, B&H alleges that the Defendants' current Collateral is undersecured and the Defendants are "hopelessly insolvent." [R. 7 at pg. 3]. These assertions are uncontested, and the Defendants' bankruptcy proceedings tend to support B&H's assertions. *See* Bare Arms Bankruptcy Proceedings, ECF No. 170 at pg. 5. "Courts have found 'the adequacy of the security and the financial position of the borrower to be the most important' factors in evaluating whether to appoint a receiver." *PNC Bank*, 15 F.Supp.3d at 758–59 (collecting cases); *see also Evans*

*Tempcon*, 630 Fed.Appx. at 414–15 (collecting cases) ("District courts also consider whether there is inadequate security for a debt and whether a debtor is insolvent."). These important factors, therefore, weigh in favor of appointing a receiver.

Second, the Agreements indicate that the parties were in advance agreement that the appointment of a receiver is appropriate should the Defendants default, [*see* R. 7 at pgs. 5–7], and it is uncontested that the Defendants are currently in default. These realities thus lend themselves to finding that a receiver is appropriate under three different factors: (1) the parties' advance consent to the appointment of a receiver, *PNC Bank*, 15 F.Supp.3d at 758; (2) any harm to the Defendants caused by the receivership is minimal, as "there is little harm in enforcing the terms of the parties' bargain," *see PNC Bank, Nat'l Ass'n v. Jeffrey Land Co.*, LLC, No. 24-13315, 2025 WL 942834, at *3 (E.D. Mich. Mar. 28, 2025) (citation and internal quotation marks omitted); and (3) B&H is likely to succeed on the merits. *See id.* (citation omitted) (Plaintiff "has a high likelihood of success on the merits" because "[t]he existence of numerous breaches of the obligations under" certain loan agreements was "not in dispute").

Third, there is an imminent danger that the Collateral may be lost, concealed, injured, diminished in value, or squandered. At the March 6, 2026, hearing, B&H alleged that the Defendants continue to operate the Huntington Property, and that the rental properties—the Wurtland Property and the Lulu Property—appear to be occupied.[1] These properties are thus presumably generating proceeds, yet B&H asserts that the Defendants have not made any payments since April 2025. [R. 7 at pg. 2]. B&H also contends that the value of the properties is continually decreasing, and it does not believe that any of the properties are currently insured. B&H is thus concerned that, given the nature of the business located at the Huntington Property,

---

[1] B&H does not believe that the Ashland Property is still in operation.

the potential for additional liability is real, and the Defendants' lack of insurance could further diminish the value of its collateral. Based on these undisputed assertions, the undersigned agrees that, without a receiver, B&H's Collateral is in imminent danger of being lost, concealed, injured, diminished in value, or squandered.

Finally, the Court must also consider whether any conflicts would arise from the appointment of a receiver. *See Grayiel*, 2023 WL 5281933, at *23 (citing *Liberte*, 462 F.3d at 551 n. 2). B&H requests that Southeast Property Management and Mark A. Rubin be appointed. [R. 7 at pgs. 8–9]. It represents that Rubin—while a client of B&H's counsel's firm—has no relationship with B&H and does not otherwise have any conflicts. B&H also asserts that Rubin has property management experience, is substantially familiar with the Collateral, and has experience as a court-appointed receiver such that he can properly execute his duties. [*Id.*]. Based on his experience and neutrality in this matter, the undersigned finds that Rubin's appointment would be appropriate.

Accordingly, for all the foregoing reasons, the factors weigh substantially in favor of appointing a receiver under Rule 66. Therefore, having considered the matter, and being otherwise sufficiently advised,

**IT IS RECOMMENDED** that Plaintiff B&H's emergency motion to appoint a receiver, [R. 6], be **GRANTED**. The undersigned further recommends that B&H's proposed order, [R. 6-1], be granted, with the exception that the Chesapeake Property be removed from the scope of the proposed order without prejudice.

**IT IS FURTHER RECOMMENDED** that B&H's oral motion to remove the Chesapeake Property from the Scope of Receivership Order, [R. 6-1], without prejudice be **GRANTED**.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing

this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. FED. R. CIV. P. 72(b)(2).

Signed March 10, 2026.



Signed By:

*Edward B. Atkins*  *EBA*

United States Magistrate Judge